POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Bezeyem Lemou and Proposed Lead Counsel for the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JACOB W. CRAVEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>Defendants. | Case No.: 3:23-cv-05544-RFL<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF BEZEYEM LEMOU FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION<br><br><u>CLASS ACTION</u><br><br>Date:  January 30, 2024<br>Time:  10:00 a.m.<br>Judge:  Hon. Rita F. Lin<br>Courtroom:  15 – 18th Floor |

| | |
|---|---|
| MATTHEW SIMPSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>Defendants. | Case No.: 3:23-cv-06302-RFL<br><br><u>CLASS ACTION</u> |

Movant Lemou[1] respectfully submits this memorandum of law in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 23); and in opposition to the competing motion of Ozlem Yetim ("Yetim") (Dkt. No. 19).[2]

## I. PRELIMINARY STATEMENT

The Action is a putative securities class action lawsuit on behalf of investors in SunPower securities. As with all federal class action securities lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Lemou. First, Lemou has alleged a larger financial interest than Yetim, the only other competing movant. Although the PSLRA does not define "financial interest," courts in the Ninth Circuit generally assess financial interest with reference to the four *Lax* factors: (1) securities purchased; (2) funds expended; (3) net shares purchased (*i.e.*, shares retained); and (4) monetary loss. *See, e.g.*, *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (emphasizing loss in assessing financial interest); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (same). Among the *Lax* factors, courts generally consider monetary loss to be the most significant with respect to financial interest. *Id.* In addition to monetary loss, courts will sometimes consider the number of shares a movant retained at the time of a corrective disclosure in assessing financial interest. *See, e.g.*, *Mulligan v. Impax Labs, Inc.*, No. C-13-1038 EMC, 2013 WL 3354420, at *6 (N.D. Cal. July 2, 2013) (assessing financial interest by considering number of retained shares because doing so "has the advantage of looking to losses experienced due to the shares that the

---

[1] All capitalized terms herein are defined in Lemou's moving brief, unless otherwise indicated. *See* Dkt. No. 23.

[2] Initially, one other putative Class member, Preston A. Ross ("Ross"), filed a competing motion. Dkt. No. 15. On January 9, 2024, Ross filed a notice of withdrawal of motion. Dkt. No. 28.

plaintiff was holding at the time the fraud was disclosed, and thus focusing on losses caused when stock purchased at artificially inflated prices decreases in value to the disclosure of the fraud"). Under either metric, Lemou has alleged a larger financial interest than Yetim.  The table below sets forth the respective financial interests of the competing movants:

| Movant | Shares Retained | | Loss |
| --- | --- | --- | --- |
| | 7/26/2023 | 10/24/2023 | |
| Lemou | 119,237 | 0 | $368,460 |
| Yetim | 15,508 | 25,508 | $162,320 |

As the table reflects, Lemou's loss is significantly larger than that of Yetim.  Indeed, Lemou's loss of $368,460 is **$206,140** larger than the loss alleged by Yetim.  In addition, Lemou also retained significantly more shares of SunPower stock at the time of a corrective disclosure than Yetim, having held 119,237 shares on July 26, 2023, the date on which SunPower announced its preliminary unaudited Q2 2023 financial results and revised its guidance for adjusted EBITDA for the year sharply downward.  By comparison, Yetim held only 25,508 shares on October 24, 2023, when SunPower disclosed a material weakness in its internal controls and the impending restatement of certain financial statements—a bare fraction of the shares that Yetim retained on July 26.  As such, it cannot reasonably be disputed that Lemou has alleged the largest financial interest in this litigation.

In addition to his significant financial interest, Lemou also satisfies the adequacy and typicality requirements of Rule 23.  Lemou is aware of no conflict between his interests and those of the Class, his losses incurred as a result of the Defendants' alleged malfeasance gives him a sufficient stake in the outcome of the Action to ensure vigorous advocacy, and in Pomerantz, Lemou has retained qualified and experienced counsel.  *Karinski v. Stamps.com, Inc.*, CV 19-1828-R, 2019 WL 8013753, at *1 (C.D. Cal. June 5, 2019); *Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL), 2019 WL 4934277, at *3 (S.D. Cal. Oct. 7, 2019).  Moreover, Lemou's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members.  *See, e.g., Vataj v. Johnson*, 19-CV-06996-

HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020).  Further demonstrating his adequacy, Lemou has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class.  *See generally* Dkt. No. 24-4.

By contrast, Yetim is atypical under Rule 23 as well as subject to unique defenses due to the timing of his Class Period purchases of SunPower securities.  Specifically, Yetim purchased nearly 40% of his SunPower securities only ***after*** the market began to learn of the Defendants' malfeasance following the first alleged corrective disclosure, which occurred on July 26, 2023.  *See Simpson v. SunPower Corporation et al*, No. 3:23-cv-06302, Dkt. No. 1 ¶ 3 (the "*Simpson* Complaint").  The timing of Yetim's purchases thus subjects him to a unique defense that, having continued to purchase SunPower shares after the Defendants' alleged fraud came to light, Yetim will not be entitled to the presumption of reliance established in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price.  Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247.  For this reason, courts decline to appoint as lead plaintiffs investors who purchased the relevant securities after an alleged corrective disclosure.  *See*, *e.g.*, *Bhangal v. Hawaiian Electric Industries, Inc.*, No. 3:23-cv-04332-JSC, 2023 WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023); *Faris v. Longtop Financial Techs. Ltd.*, 11 Civ. 3658 (SAS) et al., 2011 U.S. Dist. LEXIS 112970, at *8 (S.D.N.Y. Oct. 4, 2011); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015); *George v. China Auto Sys., Inc.*, No. 11 Civ. 7533 (KBF), 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013).  It will quite obviously be difficult for Yetim to claim that he was defrauded by the Defendants' false and misleading statements when he demonstrably purchased nearly ***40%*** of his SunPower securities only ***after*** the market had begun to learn of the Defendants' alleged fraud.

For the foregoing reasons, Lemou respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## II.  ARGUMENT

### A.  LEMOU SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  At this stage, the movant that has the largest financial interest need only make a *prima facie* showing that it satisfies the adequacy and typicality requirements of Rule 23.  *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002).  Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representative for the Class is Lemou.

#### 1.  Lemou Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  As the chart at p. 2 reflects, Lemou incurred losses of approximately $368,460 as a result of the malfeasance alleged in this Action, $206,140 larger than the losses alleged by Yetim.  Moreover, Lemou also retained significantly more shares of SunPower stock at the time of a corrective disclosure than Yetim, having held 119,237 shares on July 26, 2023.  By comparison, Yetim did not hold a comparable number of shares on the date of any corrective disclosure.  Lemou has thus plainly alleged the largest financial interest in this litigation.

#### 2.  Lemou Otherwise Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Lemou has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23.  *See Cavanaugh*, 306 F.3d at 730-31.  First, Lemou's claims

4

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF BEZEYEM LEMOU FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:23-cv-05544-RFL; 3:23-cv-06302-RFL

satisfy the typicality requirement of Rule 23(a)(3) because they are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See*, *e.g.*, *Vataj*, 2020 WL 532981, at *3. Lemou, like all members of Class, purchased SunPower securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the requirements of Rule 23. *Vataj*, 2020 WL 532981, at *3. Second, Lemou satisfies the adequacy requirement of Rule 23(a)(4) because he has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class. *See*, *e.g.*, *Karinski*, 2019 WL 8013753, at *1; *Harari*, 2019 WL 4934277, at *3. Lemou further demonstrated his adequacy by submitting, with his motion papers, a Declaration attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 24-4.

* * * * *

Because Lemou has the largest financial interest of any eligible Lead Plaintiff applicant in the relief sought by the Class and otherwise satisfies the requirements of Rule 23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling Lemou to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

**B.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001). The Court should not

interfere with a lead plaintiff's selection unless it is necessary to do so to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Lemou has selected Pomerantz as Lead Counsel for the Class. As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions, having successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. In 2018 alone, Pomerantz secured a settlement of nearly $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A.–Petrobras—the largest securities class action settlement in a decade—and an $80 million settlement on behalf of Yahoo Inc. investors. *See* Dkt. No. 24-5 at *3-*5. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See generally* Dkt. No. 24-5.

**C.    YETIM IS ATYPICAL AND SUBJECT TO UNIQUE DEFENSES**

Separate and apart from lacking the largest financial interest in this litigation, Yetim is further ineligible for appointment as Lead Plaintiff because the timing of his Class Period purchases of SunPower stock renders him atypical under Rule 23 as well as "subject to unique defenses that render [him] incapable of representing the class." 15 U.S.C. § 78u4(a)(3)(B)(iii)(II)(bb). "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 et al., 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (denying motion upon finding "at least a potential that [movant] will be subject to unique defenses"). Here, Yetim purchased 10,000 of the 25,508 shares of SunPower stock that he purchased during the Class Period only *after* the market learned of the Defendants' malfeasance. Initially, Yetim purchased 15,508

6

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF BEZEYEM LEMOU FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:23-cv-05544-RFL; 3:23-cv-06302-RFL

shares of SunPower stock between May 1 and August 1, 2023. *See* Dkt. No. 19-2 at *3. Then, on July 26, 2023, SunPower announced its preliminary unaudited Q2 2023 financial results and revised its guidance for adjusted EBITDA for the year sharply downward. *See Simpson* Complaint ¶¶ 3, 26. Following that announcement, SunPower's stock price fell $1.77 per share, or 15.78%, to close at $9.45 per share on July 26, 2023. *Id.* ¶¶ 4, 27. Then, over the following days, Yetim significantly **increased** his holdings of SunPower stock by purchasing another **10,000** shares—5,000 shares on August 1, and another 5,000 shares on August 4. *See* Dkt. No. 19-2 at *3. Then, roughly three months later, at the end of the Class Period, SunPower disclosed a material weakness in its internal controls and the impending restatement of certain financial statements. *Craven v. SunPower Corporation et al*, No. 3:23-cv-05544, Dkt. No. 1 ¶¶ 3, 27 (the "*Craven* Complaint"); *Simpson* Complaint, ¶¶ 5, 31. Following this announcement, SunPower's stock price fell $0.90 per share, or 18.1%, to close at $4.06 per share on October 25, 2023. *Craven* Complaint ¶¶ 4, 28; *Simpson* Complaint ¶¶ 6, 32.

The fact that Yetim purchased 10,000 shares of SunPower stock—or nearly **40%** of his total Class Period Purchases—**after** the first corrective disclosure of the alleged fraud renders him atypical of the Class in this action and subject to disqualifying unique defenses. It will be exceedingly difficult for Yetim to rely on the *Basic* presumption of reliance premised upon "fraud-on-the-market."

> [T]he *Basic* Court established a rebuttable presumption of reliance, predicated on the notion that '[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." To invoke Basic's presumption of reliance, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."

*Howard v. Liquidity Servs.*, 322 F.R.D. 103, 116 (D.D.C. 2017) (citations omitted). The *Basic* presumption is rebuttable if a defendant "can make 'any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision

to trade at fair market price[.]'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 292 (S.D.N.Y. 2003) (quoting Basic, 485 U.S. at 248).

For this reason, courts decline to appoint as lead plaintiffs investors who purchased their securities after the revelation of the alleged fraud at issue. *See*, *e.g.*, *Hawaiian Electric*, 2023 WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023) (denying motion, finding movant to be subject to unique defenses because he purchased securities "after a partial disclosure"); *Longtop Financial*, 2011 U.S. Dist. LEXIS 112970, at *8 (denying motion where movants "invested in Longtop securities notwithstanding notice of defendants' misstatements and omissions," finding that "[t]hese unusual trading patterns may well undermine the ability of these three members to assert the fraud-on-the-market presumption of reliance."); *Petrobras*, 104 F. Supp. 3d at 623 (denying motion where movant "made a significant investment in Petrobras securities . . . after the alleged fraud had been fully revealed"); *Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, at *3-4 (C.D. Cal. Sept. 18, 2017) (ruling that a large purchase of shares after corrective disclosures could render a plaintiff atypical, and refusing to appoint plaintiff as lead who purchased 60% of his stock following partial disclosures even though the plaintiff nominally had the largest loss); *In re Valence Tech. Sec. Litig.*, 1996 WL 119468, *5 (N.D. Cal. Mar. 14 1996) (denying class certification for failure to satisfy typicality because proposed class representative increased his holdings in defendant's stock after a partial disclosure); *Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991) (denying class certification where plaintiff purchased stock after learning of the alleged misrepresentations); *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69 (S.D.N.Y. 2000) ("[A] person that increases his holdings in a security after revelations of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative."); *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (finding movant "clearly atypical of the rest of the proposed class" because "he made numerous post-class purchases of Nam Tai stock"). Indeed, it will be exceedingly difficult for Yetim to argue that he

was defrauded by Defendants' misrepresentations when he continued to purchase significant quantities of SunPower stock even ***after*** those misrepresentations began to be revealed to the market. *See*, *e.g.*, *China Auto*, 2013 U.S. Dist. LEXIS 93698, at *18-19 (denying class certification, finding "named plaintiffs [who] continued to make purchases of the securities at issue" after the alleged fraud was revealed to the market to be "neither typical nor adequate").

Accordingly, being both atypical under Rule 23 and subject to unique defenses, Yetim is ineligible for appointment as Lead Plaintiff irrespective of his financial interest in this litigation.

## IV.   CONCLUSION

For the foregoing reasons, Lemou respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Lemou as Lead Plaintiff for the Class; and (3) approving Lemou's selection of Pomerantz as Lead Counsel for the Class.

Dated: January 9, 2024                    Respectfully submitted,

                                          POMERANTZ LLP

                                          */s/ Jennifer Pafiti*
                                          Jennifer Pafiti (SBN 282790)
                                          1100 Glendon Avenue, 15th Floor
                                          Los Angeles, California 90024
                                          Telephone: (310) 405-7190
                                          jpafiti@pomlaw.com

                                          POMERANTZ LLP
                                          Jeremy A. Lieberman
                                          (*pro hac vice* application forthcoming)
                                          J. Alexander Hood II
                                          (*pro hac vice* application forthcoming)
                                          600 Third Avenue, 20th Floor
                                          New York, New York 10016
                                          Telephone: (212) 661-1100
                                          Facsimile: (917) 463-1044
                                          jalieberman@pomlaw.com
                                          ahood@pomlaw.com

                                          *Counsel for Lead Plaintiff Movant Bezeyem Lemou*
                                          *and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Lead Plaintiff Movant Bezeyem Lemou*


**PROOF OF SERVICE**

I hereby certify that on January 9, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF BEZEYEM LEMOU FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:23-cv-05544-RFL; 3:23-cv-06302-RFL