Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

*Attorneys for Movant Ozlem Yetim*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB W. CRAVEN, Individually on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>Defendants. | Case No. 3:23-cv-05544-RFL<br><br>**CLASS ACTION**<br><br>**RESPONSE IN SUPPORT OF MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT OZLEM YETIM AS LEAD PLAINTIFF, AND APPROVE HIS SELECTION OF LEAD COUNSEL**<br><br>Date: Tuesday, January 30, 2024<br>Time: 10:00 a.m.<br>Courtroom: 15, 18th Floor<br>Judge:  Rita F. Lin<br><br>**ORAL ARGUMENT REQUESTED** |
| MATTHEW SIMPSON, Individually on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>Defendants. | Case No. 3:23-cv-06302-RFL |

RESP. ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

## I.    PRELIMINARY STATEMENT

Two lead plaintiff motions filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") remain pending before the Court. Under the PSLRA, the Courts is to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). As set forth herein, Mr. Yetim is the only movant that satisfies both of these elements.

| **Movant** | **Claimed Loss** |
|---|---|
| ~~Bezeyem Lemou~~ | ~~$368,460.00~~ |
| Ozlem Yetim | $162,319.76 |

While Mr. Lemou asserts that he has suffered a greater market loss than Mr. Yetim, Mr. Lemou cannot be appointed lead plaintiff because his trading pattern precludes him from asserting a viable securities fraud claim in this case. Indeed, as a complete "in-and-out" trader who sold 100% of his shares by August 7, 2023, over two months before the October 24, 2023 disclosure of defendants' alleged fraudulent accounting and impending restatement, Mr. Lemou lacks loss causation, an essential element of the claim, and therefore has no financial interest in the action. *See, Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Because Supreme Court precedent severs any connection between Mr. Lemou's claimed market loss and the alleged securities fraud, Mr. Lemou is ineligible to serve as lead plaintiff. It also renders Mr. Lamou atypical and subject to a unique defense of lack of loss causation. *See, e.g., Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at \*3-\*4 (N.D. Cal. Nov.

- 1 -

RESP. ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

30, 2020) ("Supreme Court and Ninth Circuit authority hints that courts should consider loss causation on a motion for appointment as lead plaintiff".).

Mr. Lemou cannot establish loss causation, let alone save his lead plaintiff candidacy, by pointing to the Company's release of its preliminary unaudited Q2 2023 financial results on July 23, 2023 – financial statements the Company ultimately had to restate as a result of their improper accounting. This implausible partial disclosure was not alleged in the original *Craven* action, but was pled in the later *Simpson* complaint filed just weeks before the lead plaintiff deadline on December 6, 2023 by Lemou's counsel. *See Simpson* Cmplt., ¶¶ 3, 26-27. The *Simpson* complaint reeks of gamesmanship as it was filed by Mr. Lemou's counsel on December 6, 2023 – over a month after Mr. Lemou executed his PSLRA certification on November 2, 2023 (ECF No. 24-3) and presumably retained the Pomerantz firm as counsel. Thus, the July 26, 2023 partial disclosure pled in the *Simpson* complaint appears to be a misguided attempt by counsel to transform Mr. Lemou's unrelated trading losses into a cognizable financial interest. *See, e.g., Maliarov v. Eros Int'l PLC*, 2016 WL 1367246 (S.D.N.Y Apr. 5, 2016) (rejecting lead plaintiff movant's attempt to manufacture partial disclosure).

Given the curious timing and circumstances of the filing of the *Simpson* complaint, it is not surprising that there are no facts to support the conclusory July 26, 2023 disclosure. *See, Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 (D. Conn. 2017) (refusing to consider implausible partial disclosure offered by lead plaintiff to establish financial interest). Indeed, neither the *Simpson* complaint nor Mr. Lemou's motion papers make any effort to explain how SunPower's release of its preliminary unaudited Q2 2023 financial results (which it had to later restate) and its reduction of 2023 guidance for adjusted EBITDA – the only company-specific information alleged to have been disclosed on July 26, 2023 – plausibly reveals the alleged accounting fraud. *Cf. Simpson* Cmplt., ¶¶ 3, 26-27 and ECF No. 23 (Lemou's LP Mtn.) at p. 3. Nor can they. The July 26, 2023 statements concerning SunPower's Q2 2023 financial results, which Defendants have restated, were materially false and misleading statements continuing the fraud, not correcting it. *See, e.g., Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607,

- 2 -

620-621 (S.D.N.Y. 2015) (rejecting partial disclosure at lead plaintiff stage as it failed to "reveal[] to the market that [the] defendant's prior statements were not entirely true or accurate"). Thus, having established that the manufactured July 26, 2023 partial disclosure in the *Simpson* Complaint should not be considered, Mr. Lemou possesses no actionable losses in this litigation.

Given Mr. Lemou's ineligibility, the Court must look to Mr. Yetim, the movant with the next largest financial interest in the relief sought by the Class. Mr. Yetim suffered $162,319.76 in losses, held SunPower shares when the truth is alleged to have emerged, was damaged by the disclosure of defendants' alleged misconduct, and is otherwise typical of the class and adequate to represent it. Accordingly, Mr. Yetim's motion should be granted in its entirety.

## II.    ARGUMENT

To identify the presumptively most adequate plaintiff, the Court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 729-730 (9th Cir. 2002). It "must then focus its attention on ***that*** plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. at 730 (emphasis in original). "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id*.

### A.    Mr. Lemou Is Not Eligible for Appointment as Lead Plaintiff

Possessing a "financial interest in the relief sought by the class" is a basic requirement for a lead plaintiff applicant. See 15 U.S.C. §78u-4(a)(3)(B)((iii)(I)(bb). Here, the alleged fraud for which the class seeks redress pertains to Defendants' accounting fraud. Specifically, that due to a material weakness in its internal control over financial reporting, the Company inaccurately reported cost of revenue and inventory metrics for the entire year of 2022 and the first two quarters of 2023. *See, Craven* Cmplt., ¶¶ 5, 26; *Simpson* Cmplt., ¶¶ 7, 25 and ECF No. 23 (Lemou's LP Mtn.) at p. 3.

- 3 -

The truth behind defendants' alleged fraud emerged on *October 24, 2023*, when after the market closed, SunPower filed a Form 8-K with the SEC revealing (i) a material weakness in its internal controls and (ii) the impending restatement of the Company's 2022 Annual Report, Q1 2023 10-Q and Q2 2023 10-Q. *See, Craven* Cmplt., ¶ 27; *Simpson* Cmplt., ¶ 31. SunPower explained that it had overstated the value of consignment inventory of certain microinverter components, causing it to understate the associated cost of revenue. *Id*. The fatal defect dooming Mr. Lemou's candidacy is the fact that he sold *all* of his SunPower shares by *August 7, 2023*, over two months *before* the relevant truth emerged about defendants' alleged misconduct on *October 24, 2023*.

| DATES | EVENT |
| --- | --- |
| 7/18/2023 | Mr. Lemou purchases 119,600 shares. *See* ECF 24-1 |
| 7/19/2023 | Mr. Lemou sells 363 shares. *See id*. |
| 8/7/2023 | Mr. Lemou sells all 119,237 remaining shares. *See id*. |
| 10/24/2023 | SunPower announces internal control deficiencies and the need to restate certain financial statements. *See, Craven* Cmplt., ¶ 27; *Simpson* Cmplt., ¶ 31. <br> ***Mr. Lemou is ineffective by this corrective disclosure, as he held no SunPower shares on October 24, 2023***. |

Stated differently, Mr. Lemou suffered no harm from the disclosure of defendants' allegedly fraudulent misconduct and thus lacks a financial interest in the litigation. *See Dura*, 544 U.S. at 342, 345-46 (recognizing that if "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). To the contrary, Mr. Lemou arguably benefited from the alleged fraud by selling his shares while the artificially inflation remained in the stock.

Following the Supreme Court's straightforward pronouncements in *Dura*, complete "in-and-out" traders like Mr. Lemou cannot be appointed lead plaintiff status because: (1) their losses are not eligible for recovery (thus rendering their financial interest a nullity); and/or (2) because

- 4 -

they are unable to state a claim for securities fraud (subjecting them and any class they represent to obvious unique defenses). *See, e.g., Skeels v. Piedmont Lithium Inc.*, 2022 WL 1236797, at *4 (E.D.N.Y. Feb. 4, 2022) ("Here, the LaForgias sold all their Piedmont shares on March 8, 2021, well before the July 20, 2021 corrective disclosure. . . . Thus, none of their losses can be attributed to Piedmont's alleged misconduct, and those losses may not be considered by the Court in calculating their approximate losses suffered. In other words, the LaForgias' recoverable losses do not add up to $501,129.26, as alleged; they amount to *zero*.").

To remedy these fatal defects, Mr. Lemou will likely point to the token July 26, 2023 partial disclosure alleged in the *Simpson* Complaint filed by his counsel on behalf of another investor just weeks before the lead plaintiff deadline. *Simpson* Complaint at ¶ 26. With no plausible factual basis, the *Simpson* complaint alleges that the truth about Defendants' fraud began to emerge on July 26, 2023, when SunPower issued a press release announcing the Company's preliminary unaudited Q2 2023 financial results and reduced its guidance for adjusted EBITDA for the year. *Id*. This disclosure purportedly caused the price of SunPower shares to fall 15% on July 26, 2023. *Id*. at ¶ 27. But neither the *Simpson* Complaint nor Mr. Lemou pleads facts, let alone a coherent theory, to establish the July 26, 2023 decline in the price of SunPower shares as the revelation of overstated inventory and understated costs.

Moreover, this implausibly pled disclosure goes so far as to contradict the broader theory of fraud advanced in this litigation. Far from revealing the falsity of their prior statements and causing artificial inflation to come of the stock, on July 26, 2023, Defendants perpetuated the wrongdoing and increased (or at a minimum maintained) the fraud premium in SunPower's share price by releasing materially false Q2 2023 financial statements – financial results the Company was forced to restate. Likewise, there is no allegation, let alone plausible facts pled, suggesting that the Company's reduction of its guidance for its 2023 adjusted EBITDA published on July 26, 2023 was somehow a manifestation of the alleged fraud, such as a reflection of management's decision that they would halt the alleged improper accounting in future quarters. *Cf. Simpson* Cmplt., ¶¶ 7, 25 and ECF No. 23 (Lemou's LP Mtn.) at p. 3.

- 5 -

RESP. ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

To the contrary, citing the Company's October 24, 2023 public disclosures, both the *Craven* and *Simpson* complaint suggest management decided to cease the improper accounting on October 19, 2023, when the Audit Committee of the Board of Directors of SunPower purportedly determined the need to restate the Company's 2022 10-K, the Q1 2023 10-Q, and the Q2 2023 10-Q and reveal material deficiencies over its internal controls. *Craven* Cmplt., ¶¶ 27; *Simpson* Cmplt., 31. This decision by the Board's Audit Committee to come clean and disclosure of the need to restate is over two months after the Lemou's August 7, 2023 sell-off of all of his shares.

Accordingly, the Court should not permit Mr. Lemou to tether his losses to such an implausible corrective disclosure that only serves to undermine absent class members' claims. *See, e.g.*, *Lee v. iQIYI, Inc.*, 2020 WL 6146862, at *2 (E.D.N.Y. Oct. 20, 2020) (declining to appoint an **otherwise** total "in-and-out" trader who advanced an additional corrective disclosure in a complaint filed before the lead plaintiff deadline; finding that the need to rely on an alternate loss theory subjected the movant "to uniquely applicable defense arguments and even undermine[d] the claims of other class members who did not sell their [] shares earlier") (collecting cases).

At bottom, Mr. Lemou's attempt to manufacture a partial disclosure merely reflects its transparent effort to game the lead plaintiff appointment process and must be rejected. *See, e.g., Maliarov*, 2016 WL 1367246, at *4 (finding unique defenses that rendered a movant incapable of adequately representing a class where they, "unlike other movants, would be completely barred from recovery if no earlier disclosure date is established").

**B.    The "Most Adequate Plaintiff" Presumption Lies in Favor of Mr. Yetim and Cannot Be Rebutted.**

Because Mr. Lemou, who claims a larger financial interest than the other movants, does not satisfy the PSLRA's requirements, the Court must "repeat the inquiry, this time considering the plaintiff with the next-largest financial stake." *Cavanaugh*, 306 F. 3d at 730. Here, with losses of approximately $162,319.76, Mr. Yetim has the greatest financial interest in the relief sought by the class and therefore is the presumptively most adequate plaintiff. ECF No. 19-3.

Mr. Yetim is also typical of the class and is not subject to unique defenses. Unlike Mr. Lemou, Mr. Yetim held damaged shares through the October 24, 2023 corrective disclosure and is

- 6 -

therefore not subject to unique loss causation defenses. Indeed, Mr. Yetim satisfies the typicality requirement because, just like all other class members, he purchased SunPower securities during the Class Period, was adversely affected by defendants' allegedly false and misleading statements, and suffered damages thereby. There is also no question that Mr. Yetim's interests are aligned with the interests of the class, and otherwise satisfies the adequacy requirement of Rule 23.

Because Mr. Yetim has the largest financial interest and satisfies Rule 23's requirements, he is the presumptive "most adequate plaintiff."  There are no facts, let alone evidence, that can rebut this presumption.

### III.    CONCLUSION

As a complete in-and-out trader, Mr. Lemou suffered no harm from the disclosure of defendants' misconduct and is ineligible for appointment as lead plaintiff. As such, Mr. Lemou's motion should be denied. By contrast, Mr. Yetim has the greatest financial interest in the relief sought by the class and has satisfied each of the PSLRA's requirements for appointment as lead plaintiff and approval of lead plaintiff's selection of counsel. The presumption, which lies in favor of Mr. Yetim, cannot be rebutted. Accordingly, Mr. Yetim respectfully requests that the Court grant his motion in its entirety.

DATED: January 9, 2024                      Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Lucas E. Gilmore*
       Lucas E. Gilmore

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

*Lead Counsel for Movant Ozlem Yetim*

- 7 -