POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Bezeyem Lemou and Proposed Lead Counsel for the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JACOB W. CRAVEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>Defendants. | Case No.: 3:23-cv-05544-RFL<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF BEZEYEM LEMOU FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL<br><br><u>CLASS ACTION</u><br><br>Date: January 30, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Rita F. Lin<br>Courtroom: 15 – 18th Floor |

| | |
|---|---|
| MATTHEW SIMPSON, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>      Defendants. | Case No.: 3:23-cv-06302-RFL<br><br><u>CLASS ACTION</u> |

Movant Lemou[1] respectfully submits this reply memorandum of points and authorities in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 23); and in opposition to the competing motion of Yetim (Dkt. No. 19).[2]

## I.  PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and who satisfies the adequacy and typicality requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can only be rebutted by proof that the movant with the largest financial interest is atypical or inadequate.  *Id.* § 78u-4(a)(3)(B)(iii)(II).

Here, as discussed at length in Lemou's opposition brief (*see generally* Dkt. No. 29), Lemou is the only movant who satisfies the PSLRA's "most adequate plaintiff" criteria.  First, having incurred a loss of $368,460 in connection with his Class Period purchases of SunPower securities as a result of the Defendants' alleged fraud, Lemou has the largest financial interest in this litigation by a significant margin.  Yetim, the only competing movant, claims to have incurred a loss of only $162,320, a loss less than half the size of Lemou's.  Second, as discussed in greater detail in his moving and opposition briefs, Lemou has made the requisite *prima facie* showing of adequacy and typicality under Rule 23.  Having satisfied both the "largest financial interest" and Rule 23 criteria, Lemou is presumptively the "most adequate plaintiff"—*i.e.*, the presumptive Lead Plaintiffs—of the Class pursuant to the PSLRA.

Yetim nevertheless opposes Lemou's appointment, arguing that because Lemou "sold 100% of his shares by August 7, 2023, over two months before the October 24, 2023 disclosure" that ended the Class Period (the "October Disclosure"), "Mr. Lemou lacks loss causation, an essential element of the claim, and therefore has no financial interest in the action."  Dkt. No. 30

---

[1]  All capitalized terms herein are defined in Lemou's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 23, 29.
[2]  Initially, one other putative Class member, Preston A. Ross ("Ross"), filed a competing motion. Dkt. No. 15.  On January 9, 2024, Ross filed a notice of withdrawal of motion.  Dkt. No. 28.

at 1. Although Yetim acknowledges that Lemou did hold shares on July 26, 2023—that date on which SunPower announced its preliminary unaudited Q2 2023 financial results, following which the Company's share prices fell by $1.77 per share, or 15.78% (the "July Disclosure")—Yetim summarily rejects the July Disclosure as "not plausible" and urges the Court to disregard it entirely in assessing the competing movants' financial interests—that is, Yetim contends that in assessing the competing movants' financial interests, the Court should disregard the significant investment losses that Lemou incurred when his SunPower shares plunged in value following the July Disclosure. *Id.* at 2. On this purported basis, then, Lemou supposedly has zero financial interest in this litigation, leaving Yetim with the largest financial interest by default.

Yetim is wrong twice over. First, the July Disclosure *is* plausibly related to the fraud alleged in this litigation. In the July Disclosure, the Company reduced its revenue guidance due to the impact of, *inter alia*, higher levels of inventory carried as a result of the supply chain disruptions of 2022. Then, in the October Disclosure, it disclosed that the value of consignment inventory at certain third-party locations had been overstated. It is absolutely plausible that both disclosures related to a theretofore undisclosed set of inventory-related issues and manipulation that negatively affected SunPower's financial results and that the July Disclosure thus falls squarely within the theory of fraud alleged in this litigation. Second, by urging the Court to hold, at this stage, that the July 2023 disclosure is not related to the fraud alleged in the operative Complaints, Yetim asks the Court to engage in a merits determination at the very outset of the case—that is, prior to the appointment of a lead plaintiff, factual investigation by the lead plaintiff and lead counsel, the filing of a consolidated amended complaint, or discovery. Yet Courts correctly decline to engage in such merits determinations at the outset of PSLRA actions, finding it premature to do so at this stage. *Chahal v. Credit Suisse Grp. AG*, No. 18-cv-02268 (AT) (SN), 2018 WL 3093965, at *7 (S.D.N.Y. June 21, 2018); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP., 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008); *In re Lyft Securities Litigation*, No. 19-cv-02690-HSG, 2020 WL 1043628, at *6 (N.D. Cal. Mar. 4, 2020).

By seeking to foreclose recovery for investors who suffered losses as a consequence of the July Disclosure, Yetim would compromise the claims of the Class for his own benefit in this motion practice—a position that raises troubling questions as to his fitness to serve as a fiduciary for the Class. Moreover, when Yetim moved for consolidation of the two Related Actions and for appointment as Lead Plaintiff for the Class in a single consolidated action, he did not at that time disavow the July Disclosure. Rather, he only did so in his opposition brief, after determining that he could not lay claim to the largest financial interest in this litigation if the July Disclosure were to be included. The Court should not credit Yetim's belatedly advanced, self-serving argument.

Accordingly, for the foregoing reasons, Lemou respectfully requests that the Court enter an Order granting his motion in all respects and denying Yetim's competing motion.

## II.     ARGUMENT

### A.     The July Disclosure Is Plausibly Related to the Alleged Fraud

In seeking to disqualify Lemou from appointment as Lead Plaintiff, Yetim asserts that the Court should disregard the July Disclosure because it is not plausibly related to the alleged fraud in this litigation. *See* Dkt. No. 30 at 4-5. Yet Yetim's view of the allegations myopically focuses on the July and October Disclosures as unrelated to one another, despite the fact that they relate to similar or overlapping issues.

On July 26, 2023, SunPower issued a press release announcing the Company's preliminary unaudited Q2 2023 financial results. Among other items, SunPower reduced its guidance for Adjusted EBITDA per customer, citing, *inter alia*, "higher levels of inventory carried this year following the supply chain disruptions of 2022." *Simpson* Complaint ¶ 26. Following the July Disclosure, SunPower's stock price fell $1.77 per share, or 15.78%. *Id.* ¶ 27. Then, on October 24, 2023, SunPower announced in an SEC filing that certain of its previous financial statements could not be relied upon, stating that "the value of consignment inventory of microinverter components at certain third-party locations had been overstated . . . resulting in the

associated cost of revenue being understated." *Id.* ¶ 31.  Following the October Disclosure, SunPower's stock price fell $0.90 per share, or 18.1%.  *Id.* ¶ 32.

It is highly plausible that the July and October Disclosures will ultimately be shown to be partial disclosures of the same underlying set of previously undisclosed inventory-related issues affecting SunPower's financial results.  In the July Disclosure, SunPower referred to "supply chain disruptions" occurring in 2022 that affected the Company's inventory level.  In the October Disclosure, meanwhile, the Company acknowledged overstating "the value of consignment inventory" of certain components.  It does not require any great logical leap to connect these two disclosures—*i.e.*, that the overstated value of consignment inventory in 2023 was a direct consequence of the excess inventory issues announced in the July Disclosure.  Indeed, excess inventory often inevitably leads to a write down of that inventory, which plausibly triggered the October announcement of restatement.

Further undermining Yetim's argument regarding the plausibility of the July Disclosure is the fact that Yetim himself did not disavow the July Disclosure when he filed his initial motion for consolidation of the Related Actions and appointment as Lead Plaintiff.  Presumably, if Yetim considered the July Disclosure—one of the key allegations in the *Simpson* Action—to be as implausible as he now claims, he would have disavowed it when he filed his motion papers seeking consolidation the *Craven* and *Simpson* Actions.  Yet he did not.  Rather, Yetim only started to characterize the July Disclosure as implausible after reviewing the competing motions and determining that he could only claim a larger financial interest than Lemou if the Court were to disregard the July Disclosure.  The fact that Yetim only disavowed the July Disclosure after perceiving an opportunity to disqualify Lemou from appointment makes his position difficult to credit.

**B.      Yetim Impermissibly Asks the Court to Adjudicate the Merits of the Alleged Fraud at the Lead Plaintiff Stage**

Moreover, in urging the Court to disregard the July Disclosure *in toto* for purposes of Lead Plaintiff appointment, Yetim asks the Court to hold, at the outset of this litigation, that the July Disclosure was not related to the Defendants' alleged fraud. Yetim's position thus asks the Court to engage in a merits determination far beyond the scope of the relevant inquiry at the Lead Plaintiff appointment stage of a PSLRA action. Yet courts generally decline to adjudicate the merits of PSLRA complaints at the lead plaintiff appointment stage and reject challenges to lead plaintiff motions that require them to engage in such merits determinations. *See, e.g., Chahal*, 2018 WL 3093965, at *7 (rejecting challenge based on timing of movants' transactions in subject securities, finding that "[w]ithout determining the merits of the case, it appears that [movants] were among those allegedly harmed"); *Eichenholtz*, 2008 WL 3925289, at *2 (finding, "[a]t this early stage in the litigation, it is unclear whether Verifone made misrepresentations" regarding a particular acquisition, and "[s]ince allegations of misrepresentation have been made, it would be premature for the court to use a class period that disregards damages potentially suffered due to Verifone's alleged misrepresentation of the acquisition's benefits"); *Lyft*, 2020 WL 1043628, at *6 (denying challenge to lead plaintiff motion based on "a negative loss causation defense", finding it to be "a highly fact-intensive affirmative defense, and the Court is not aware of any case in which a court has tried to definitively resolve its applicability at this stage of the proceedings"). Indeed, even at the class certification stage, courts in the Ninth Circuit have found it too early to engage in this type of merits determination. *See, e.g., In re LDK Solar Securities Litigation*, 255 F.R.D. 519, 529 (N.D. Cal. 2009) ("[W]hether or not a particular release or disclosure 'actually cured a prior misrepresentation' is a sensitive issue to rule on at this early stage of the proceedings because it comes so close to assessing the ultimate merits in the case, and courts therefore decline to find reliance thereafter 'unreasonable, as a matter of law,' unless there is 'no substantial doubt as to the curative effect of the announcement.'") (quoting *In re Federal Nat. Mortg. Ass'n*, 247

F.R.D. 32, 37-39 (D.D.C. 2008)); *South Ferry LP # 2 v. Killinger*, 271 F.R.D. 653, 656 (W.D. Wash. 2011) (same).

Here, in asking the Court to disregard the July Disclosure in assessing the movants' financial interests, Yetim urges the Court to hold—at the very outset of this litigation—that the July Disclosure was categorically unrelated to the subject of the alleged fraud. Yetim asks the Court to make this determination even before it appoints as Lead Plaintiff to prosecute the Class's claims; before the Lead Plaintiff and his counsel have undertaken a more extensive factual investigation, including identifying and interviewing confidential witnesses with knowledge of SunPower's operations; before the Lead Plaintiff files an Amended Complaint based on the foregoing investigation; and before any discovery has taken place. In other words, Yetim asks the Court to disregard a well pleaded and particularized allegation simply because Yetim claims it has nothing to do with the alleged fraud.

Yetim has cited no authority to in support of such an extraordinary request, and all of the cases he relies upon are easily distinguished. In *Lee v. iQIYI, Inc.*, 20-CV-1830 (LDH) (JO), 2020 WL 6146862 (E.D.N.Y. Oct. 20, 2020), the alleged corrective disclosure that the Court rejected as implausible occurred more than 18 months before the second and final corrective disclosure and even facially had nothing to do with the subject of the subsequent disclosure. Here, the July Disclosure occurred just three months before the October Disclosure, and both disclosures expressly concerned inventory-related issues at SunPower (as discussed in greater detail *supra* at pp. 3-4). In *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN) *et al.*, 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016), the Court declined to consider a movant's losses where the complaint at issue "relie[d] on unsupported allegations that those with 'early access to [a later disseminated short report]' leaked such information in an unspecified manner." *Id* at *3. Here, by contrast, the July Disclosure is specific and clearly pleaded, being an announcement by SunPower of the Company's preliminary unaudited Q2 2023 financial results, following which the Company's stock price fell $1.77 per share, or 15.78%. *See Simpson* Complaint ¶¶ 26-27. In *Galmi v. Teva*

*Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485 (D. Conn. 2017), the movant at issue attempted to claim losses based on "earlier partial disclosures of Teva's misconduct that have not been identified in the complaint." *Id.* at 501. Here, Yetim acknowledges that Lemou incurred losses in connection with the July Disclosure—which, again, is **clearly** pleaded in the *Simpson* Complaint. *See Simpson* Complaint ¶¶ 26-27. Finally, in *Topping v. Deloitte Touch Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, the movant at issue attempted to claim losses in connection with an "alleged partial corrective disclosure" that "was introduced only via an improperly filed 'Corrected Complaint'" that was filed only **after** the lead plaintiff motion deadline had passed. *Id.* at 618. Here, the *Simpson* Complaint was filed on December 6, 2023, almost three weeks **before** the December 26, 2023 motion deadline. *See generally Simpson* Complaint.

Nor is there any merit to Yetim's contention that, by filing the *Simpson* Complaint weeks before the deadline to seek appointment as Lead Plaintiff in this litigation, Lemou's counsel have engaged in "gamesmanship" in an effort to "transform [his] unrelated trading losses into a cognizable financial interest." Dkt. No. 30 at 2. Not so. As set forth above, the July Disclosure is plausibly related to the fraud alleged in this litigation. Having identified this plausible partial corrective disclosure, in connection with which Lemou incurred investment losses but which was not alleged in the initial *Craven* Complaint, it was obviously in Lemou's interest to file an additional meritorious complaint alleging the additional July Disclosure in a good-faith effort to maximize his recoverable losses in this litigation. Yetim's mischaracterization of Lemou's counsel's efforts on his behalf as "gamesmanship" is simply wrong.

Finally, Lemou respectfully submits that in urging the Court to disregard the July Disclosure, Yetim calls his own adequacy to represent the Class into question. Lemou is obviously not unique among SunPower investors in having held Company shares at the time of the July Disclosure, following which the Company's stock price plunged $1.77 per share, erasing over $153.4 million in market capitalization. Accordingly, Lemou is only one of presumably hundreds or thousands of SunPower investors who incurred losses in connection with the July

Disclosure. Nevertheless, Yetim asks the Court to categorically hold at the very outset of this litigation, before the relevant facts have even begun to be fully developed, that Lemou and all similarly situated investors "possess[] no actionable losses in this litigation." Dkt. No. 30 at 3. Yetim's readiness to exclude so many investors from the Class at the outset merely to secure a leadership role for himself raises significant questions about his readiness to serve as a fiduciary, a role that will require him to subordinate his own interests to those of fellow class members. "Indeed, it is unclear why a plaintiff would argue for . . . reducing the class size and limiting the potential amount of damages, **unless it was in the best interest of that particular plaintiff only**." *Eichenholtz*, 2008 WL 3925289, at *2 (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, and the reasons set forth in his moving and opposition briefs (Dkt. Nos. 23, 29), Lemou respectfully requests that the Court issue an Order granting his motion in full and denying Yetim's competing motion.

Dated: January 16, 2024                         Respectfully submitted,

                                                POMERANTZ LLP

                                                */s/ Jennifer Pafiti*
                                                Jennifer Pafiti (SBN 282790)
                                                1100 Glendon Avenue, 15th Floor
                                                Los Angeles, California 90024
                                                Telephone: (310) 405-7190
                                                jpafiti@pomlaw.com

                                                POMERANTZ LLP
                                                Jeremy A. Lieberman
                                                (*pro hac vice* application forthcoming)
                                                J. Alexander Hood II
                                                (admitted *pro hac vice*)
                                                600 Third Avenue, 20th Floor
                                                New York, New York 10016
                                                Telephone: (212) 661-1100
                                                Facsimile: (917) 463-1044
                                                jalieberman@pomlaw.com
                                                ahood@pomlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Counsel for Lead Plaintiff Movant Bezeyem Lemou and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Lead Plaintiff Movant Bezeyem Lemou*

# PROOF OF SERVICE

I hereby certify that on January 16, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jennifer Pafiti*
Jennifer Pafiti