Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

*Attorneys for Movant Ozlem Yetim*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB W. CRAVEN, Individually on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>    v.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>          Defendants. | Case No. 3:23-cv-05544-RFL<br><br>**CLASS ACTION**<br><br>**REPLY IN SUPPORT OF MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT OZLEM YETIM AS LEAD PLAINTIFF, AND APPROVE HIS SELECTION OF LEAD COUNSEL**<br><br>Date: Tuesday, January 30, 2024<br>Time: 10:00 a.m.<br>Courtroom: 15, 18th Floor<br>Judge:  Rita F. Lin<br><br>**ORAL ARGUMENT REQUESTED** |
| MATTHEW SIMPSON, Individually on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>    v.<br><br>SUNPOWER CORPORATION, PETER FARICY, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>          Defendants. | Case No. 3:23-cv-06302-RFL |

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

## I.    PRELIMINARY STATEMENT

In response to Mr. Lemou's motion seeking to be appointed lead plaintiff, Mr. Yetim highlighted Lemou's lack of standing under the PSLRA and ineligibility to serve as lead plaintiff as he claims under Lemou's Counsel's manufactured disclosure in the *Simpson* complaint. *See* ECF No. 30 (Yetim's Response). Lemou's Opposition [ECF No. 29] in response to Yetim's lead plaintiff motion [ECF No. 19] anticipated Yetim's Response and attempts to overcome these deficiencies by doubling down on the manufactured disclosure, arguing that the disclosure inserted by his counsel renders Yetim atypical. Simultaneously, Lemou takes a position adverse to the Class. As shown below, Lemou's arguments are untenable and do not withstand scrutiny.

## II.    ARGUMENT

### A.    Mr. Lemou's Manufactured "Disclosure" Does Not Give Mr. Lemou Standing

Mr. Lemou is an "in-and-out" trader who sold out his position in SunPower by August 7, 2023. This is over two months before SunPower's October 24, 2023 corrective disclosure set forth in the earlier filed *Craven* complaint. As such he lacks standing to sue. [1]

On November 2, 2023, Lemou signed his PSLRA certification stating he read the then only existing complaint, *Craven*, filed on October 27, 2023. *See* ECF No. 24-3. Apparently realizing Lemou's lack of standing under the PSLRA, over a month later, and in a transparent attempt to overcome their client's standing deficiency, Lemou's counsel filed a separate near verbatim complaint (*Simpson*) on December 6, 2023.[2]

Aside from formatting corrections, the *Simpson* complaint changed the plaintiff's name, and removed the August 2, 2023 (Q2 2023) 10Q false financial statements filed with the SEC ***out of*** the "Defendants False And Misleading Statements" section of the *Craven* complaint to a new "Truth Begins to Emerge" section in the *Simpson* complaint. Only two new entirely new paragraphs were inserted: a July 26th press release highlighting only a single sentence stating the company

---

[1] See Response [ECF 30] at p. 1, 5 *citing Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005); *Hurst v. Enphase Energy, Inc*., 2020 WL 7025085, at *3-*4 (N.D. Cal. Nov. 30, 2020); *Skeels v. Piedmont Lithium Inc.*, 2022 WL 1236797, at *4(E.D.N.Y. Feb. 4, 2022).

[2] Clearly Lemou's counsel never intended for plaintiff Simpson to move to be a lead plaintiff as he bought only 16 shares. *Simpson* ECF No. 1-2.

- 1 -

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

reduced 2023 guidance and a paragraph alleging a resulting stock drop allegation (*See Simpson* Complaint at ¶¶3-4, 26-30).

Importantly *Craven*, the first filed complaint, alleges that the Q2 2023 results filed on August 2, 2023, were false and not a corrective statement. It is one of only three financial statements identified by the Company on October 24th as false and needing restatement. As each complaint states, the October 24, 2023 SunPower 8-K (*Craven* at „27 and *Simpson* at „ 31) specifically reveals to the public the Audit Committee determination that "unaudited financial statements included in the Company's Quarterly Report on Form 10-Q for the quarterly period ended July 2, 2023, *filed with the SEC on August 2, 2023 (the "Q2 2023 Form 10-Q")* could no longer be relied upon and would be restated.

*Craven* does not allege the Q2 2023 results was any sort of disclosure. Rather, the Q2 2023 results continued the alleged improper accounting and maintained the inflation in SunPower's share price. At the same time, while *Simpson* moves the second Q2 2023 results *out of* the false statement section to the new "The Truth Begins to Emerge" section, the *Simpson* complaint adds neither facts nor logic to show any link to the Q2 2023 results as correcting the prior remaining two false financial statements: the 2022 annual results on Form 10-K and first quarter 2023 results on Form 10-Q.

Similarly, Lemou's counsel's newly alleged corrective disclosure--that "the Company reduced its guidance for adjusted EBITDA for the year"-- is nowhere tied to the alleged reasons the alleged false statements were false in *either* complaint. No attempt is made to allege how the Q2 2023 results revealed the truth about the accounting issues. For example, Mr. Lemou's counsel made no change to any of the paragraphs which state why the alleged false statements were false. *Compare Craven* at 3, 26 and *Simpson* at 5, 25. At best Lemou's counsel in drafting the *Simpson* complaint abandoned an admittedly false key false financial statement in *Craven* in order to insert an unrelated false guidance claim with no supporting evidence or logic. As such, the inescapable conclusion must be that the revisions and additions in *Simpson* were manufactured solely to benefit Mr. Lemou in being appointed the Lead Plaintiff. *See, e.g., Maliarov v. Eros Int'l PLC*, 2016 WL

- 2 -

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

1367246 (S.D.N.Y Apr. 5, 2016) (rejecting lead plaintiff movant's attempt to manufacture partial disclosure). The fatal defect dooming Mr. Lemou's candidacy is the fact that he sold ***all*** of his SunPower shares by ***August 7, 2023***, over two months ***before*** the relevant truth emerged about defendants' alleged misconduct on ***October 24, 2023.*** And thus, as an "in-and-out" trader in the only viable theories, Lemou can not be appointed the lead plaintiff." [3]

## B. Lemou Fails to Rebut Yetim's Typicality

Unable to rebut the fact he is an ineligible "in-and-out" trader lacking any financial interest in this case, Lemou instead attacks Yetim with untenable arguments that do not withstand scrutiny. Lemou's opposition counsel doubles down on its manufacture corrective disclosure to disingenuously argue that Yetim's purchases of SunPower stock after July 26, 2023 render him atypical. Along with it, he tosses half the Class Members claims, namely anyone who bought after July 26, 2023.

### 1. Mr. Yetim is Typical Under Either Complaint

Desperate to deflect from his own deficiencies, Lemou argues that Yetim's purchase of 10,000 SunPower shares purchased after July 26, 2023 renders him atypical. *See* Lemou Opposition at 7-9. Specifically, Lemou contends that because the market supposedly learned of defendants' fraud on July 26th when SunPower preliminarily announced false Q2 2023 results, Yetim cannot claim reliance under the fraud-on-the-market theory on defendants' alleged misstatements and omissions after July 26th in purchasing 10,000 of his 25,508 SunPower shares. According to Lemou, by continuing to buy 10,000 more shares after this purported partial disclosure, Yetim will be subject to unique defenses concerning his reliance.

This argument fails both factually and legally.

---

[3] *See, e.g.*, *Lee v. iQIYI, Inc.*, 2020 WL 6146862, at \*2 (E.D.N.Y. Oct. 20, 2020) (declining to appoint an ***otherwise*** total "in-and-out" trader who advanced an additional corrective disclosure in a complaint filed before the lead plaintiff deadline; finding that the need to rely on an alternate loss theory subjected the movant "to uniquely applicable defense arguments and even undermine[d] the claims of other class members who did not sell their [] shares earlier") (collecting cases); *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 (D. Conn. 2017) (refusing to consider implausible partial disclosure offered by lead plaintiff to establish financial interest); *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 620-621 (S.D.N.Y. 2015) (rejecting partial disclosure at lead plaintiff stage as it failed to "reveal[]to the market that [the] defendant's prior statements were not entirely true or accurate").

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

Factually, the July 26th press release furthered the alleged fraud rather than revealing it to the market as it preliminarily stated the Q2 2023 results. *Simpson* „ 26. The alleged fraud for which the class seeks redress pertains to Defendants' accounting fraud. Specifically, due to a material weakness in its internal control over financial reporting, the Company inaccurately reported cost of revenue and inventory metrics for the entire year of 2022 and the first two quarters of 2023. *See, Craven* ¶¶ 5, 26; *Simpson* ¶¶ 7, 25 and ECF No. 23 (Lemou's LP Mtn.) at p. 3. **Neither the July press release nor the Q2 2023 10-Q filed in August say anything about accounting mishaps**. The truth behind defendants' alleged fraud only emerged on October 24, 2023, when SunPower filed a Form 8-K with the SEC revealing (i) a material weakness in its internal controls and (ii) the impending restatement of the Company's 2022 Annual Report, Q1 2023 10-Q **and Q2 2023 10-Q**. *See, Craven* ¶ 27; *Simpson* ¶ 31. SunPower explained that it had overstated the value of consignment inventory of certain microinverter components, causing it to understate the associated cost of revenue. *Id*. The Lemou/*Simpson* claim that the July statement "reduced guidance," could not have warned Yetim of an accounting fraud. Thus, factually Lemou's argument fails.

Legally, Lemou's cases either do not apply, are distinguishable or have been rejected in this district and other courts.

First, *Valence* and *Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991), on which *Valence* relies, has been more rejected and distinguished in this district and elsewhere.[4] *See In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 576-77 (N.D. Cal. 2009) ("Nonetheless, the weight of authority appears to favor the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement.")[5] *See also Hessefort*

[4] *George v. ChinaAuto Sys., Inc.*, No. 11 Civ. 7533 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) is also not a lead plaintiff motion, but a class certification motion. The proposed class representatives were "significant 'in-and-out'" traders throughout the class period and made thirteen post class period purchases after the fraud was revealed. Only one disclosure at the end of the class period was alleged. Similarly, in *In re Valence Tech. Sec. Litig.*, 1996 WL 119468, *5 (N.D. Cal. Mar. 14, 1996) the Court found a plaintiff who tripled their shares post-disclosure was atypical.

[5] Citing *In re Providian Financial Corp. Sec. Litig.*, 2004 U.S. Dist. LEXIS 31107, 2004 WL 5684494, *4-5 (N.D. Cal. Jan. 15, 2004) (holding that lead plaintiff that bought stock after the adverse disclosures had satisfied the typicality requirement); *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 719 (C.D. Cal. 2002) (same); *In re Pilgrim Sec. Litig.*, 1996 WL 742448, *5 (C.D. Cal. Jan. 23, 1996) (same); *In re Adobe Systems, Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D. Cal. 1991) (same); see also *Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 137 (5th Cir. 2005) ("We reject the argument that a proposed class representative in a fraud-on-the-market securities suit is as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure

- 4 -

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

*v. Super Micro Comput., Inc.,* 317 F. Supp. 3d 1056, 1062 (N.D. Cal. 2018) (same); *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 130 (M.D. Tenn. 2020) (same); *Local 703, I.B. of T. Grocery & Food Emp. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014); *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 607 (D. Minn. 2001) ("courts routinely certify a class with representatives who purchased stock during and after a class period.").

In *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007), the Court found multiple reasons for the potential class representative to be atypical. As stated in *In re Pfizer Sec. Litig.,* 282 F.R.D. 38, 46-47 (S.D.N.Y. 2012):

> There, the primary typicality issue presented by the plaintiffs' post-disclosure purchases was that the putative class representative also sought to pursue on behalf of the class a claim regarding a second fraud that had never publicly been disclosed and about which that putative class representative had non-public information at the time of his purchases.

*Pfizer citing Rocco* at 136. No such circumstances are present here. Rather, the *Pfizer* Court pointed out in rejecting Rocco, the complaint, as here, "alleges here that the market price remained affected by undisclosed further information following the corrective disclosures that were made during the Class Period." *Pfizer* at 47.

Lemou's other lead plaintiff cases also do not apply. In *Bhangal v. Hawaiian Electric Industries, Inc.,* No. 3:23- cv-04332-JSC, 2023 WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023) the movant purchased ***all*** his shares two days after news outlets were reporting Hawaiian Electronic lacked the proper policies and procedures to mitigate fires on August 12, 2023, arguing that a subsequent downgrade by S&P was the corrective disclosure. The Court rejected this argument noting that the S&P relied on old information and nothing publicly new. In *Faris v. Longtop FinancialTechs. Ltd.*, 11 Civ. 3658 (SAS) et al., 2011 U.S. Dist. LEXIS 112970, at *8 (S.D.N.Y. Oct. 4, 2011) the largest movant in a group bought ***all*** of its shares after two short seller reports identified the financial fraud. Though the Court refused to appoint that movant, it appointed another movant who purchased the vast majority, *but not all*, of its shares before the disclosure. In *In re*

---

purchase of the defendant company's stock. Reliance on the integrity of the market prior to disclosure of alleged fraud (i.e. during the class period) is unlikely to be defeated by post-disclosure reliance on the integrity of the market.").

- 5 -

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

*Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015), the Court cited a host of reasons for not appointing a group of institutions, including statements made by one member as to why it purchased more shares after the disclosure of the fraud indicating it may have relied on its own valuation and not the market, and other members purchased shares after the partial disclosure which they sold and on which they made money, and one member purchased ***all*** of its shares after the partial disclosure and only two weeks before the end of the class period.

Thus, properly viewed, Yetim's trades are typical of those of absent class members because he alleges injury resulting from the same course of conduct that injured the absent class members and are based on the same theories of recovery. Unlike Lemou, Yetim suffered losses tied to defendants' accounting misconduct. Any suggestion that Yetim ignored legitimate disclosures is pure fabrication insufficient to deny him the lead plaintiff role to which he is entitled.

## C. Mr. Lemou's Trades and Amendments and Argument Render Him Atypical and Antithetical to the Class

Finally, in manufacturing a partial corrective disclosure on July 26, 2023, Lemou effectively concedes that his losses fall outside the class period alleged in the original *Craven* complaint. Rather than advance the existing claims, Lemou asks the Court to upend the litigation to accommodate his unique circumstances. At best, Lemou admits he could only pursue a separate case based on different theories and a different class period than the case brought on behalf of the class he seeks to represent. *See* ECF No. 30 (Yetim Response) at 4-6.

Lemou's attempt to tether his losses to such an unsupported corrective disclosure only serves to undermine absent class members' claims. For example, in *Lee v. iQIYI, Inc.,* 2020 WL 6146862, at *4-6 the Court declined to appoint an ***otherwise*** total "in-and-out" trader who advanced an additional corrective disclosure in a complaint filed before the lead plaintiff deadline; stating:

> Whatever the plausibility of Le Rivage's attempt to characterize its losses as flowing from its relatively unique purported ability to detect and respond to iQIYI's fraud over a year before the release of the Wolfpack Report, I conclude that its loss theory renders its claims so atypical as to preclude leadership of the putative class. Le Rivage's claims, unlike those of the other leadership candidates and the class as a whole, rely on a theory that iQIYI's alleged fraud was apparent, and caused shareholder losses, well before the Wolfpack Report. That may subject Le Rivage to uniquely applicable defense

- 6 -

arguments and even undermine the claims of other class members who did not sell their iQIYI shares earlier. As a result, I conclude that Le Rivage is not the most adequate candidate to serve as lead counsel.

Similarly, in *Maliarov* the Court held that a movant's unique "leakage theory" in his own complaint (much like Lemou's counsel's *Simpson* complaint here) rendered the movant incapable of adequately representing a class where the movant, "unlike other movants, would be completely barred from recovery if no earlier disclosure date is established." 2016 WL 1367246, at *4. *Cf. Topping*, 95 F. Supp. 3d at 622 (rejecting reliance a particular letter added to a "Corrected Complaint"); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 239-40. (E.D.N.Y. 2011) (rejecting reliance on a particular press release with the Court stating, "the Fund has not *alleged sufficient facts from which this Court can confidently infer that the January disclosure actually revealed fraud* or misconduct sufficient to qualify as a partial disclosure", noting the lawsuit was not initiated until eight months later.) *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779 *6 (E.D.N.Y. Mar. 2, 2007) ("[*I*]*t would be unfair to speculate that [a movant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege [in the complaint] facts in support thereof.* Moreover, such a practice would encourage plaintiffs competing to lead a PSLRA litigation to overstate their losses at the outset of a lawsuit, *in hope of a court's declining to look beyond those conclusory allegations until after discovery*, when it might be too late to appoint a more deserving lead plaintiff. In selecting a plaintiff to lead this litigation at this stage of the proceedings, the court can and must only consider the pleadings before it.")

Thus, Lemou's trades and reliance on the Court later finding that the July press release was a corrective disclosure subjects Lemou to a unique defense, threatens the appointment of an improper lead plaintiff, and undermines the claims of the other class members who purchased after the July 26th press release and the August 2, 2023 (Q2 2023) 10-Q.

- 7 -

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

**D.    The "Most Adequate Plaintiff" Presumption Lies in Favor of Mr. Yetim and Has Not Been Rebutted.**

As Lemou does not satisfy the PSLRA's requirements despite alleging the largest financial interest, the Court must next consider the movant with the next greatest alleged loss. See *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Yetim has asserted approximately $162,319.76 in losses, conferring the greatest financial interest as the only remaining movant seeking appointment as lead plaintiff. See ECF No. 19-3.

Furthermore, Yetim satisfies the typicality and adequacy prerequisites under Rule 23. In contrast to Lemou's deficiencies, Yetim retained damaged SunPower shares through the October 24, 2023 corrective disclosure. His claims align with those of other class members - i.e., purchases of securities during the Class Period at inflated prices and subsequent losses following revelations of defendants' alleged fraud. Moreover, Yetim's interests do not diverge from those of the class. Therefore, he meets Rule 23's mandates.

### III.    CONCLUSION

Accordingly, Mr. Yetim should be deemed the presumptive "most adequate plaintiff" under the PSLRA. No contrary facts or evidence rebut this presumption in favor of his appointment. Yetim should be appointed the lead plaintiff and his selection of lead counsel should thus be approved.

DATED: January 16, 2024    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Reed R. Kathrein*
    Reed R. Kathrein

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

- 8 -

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL

*Lead Counsel for Movant Ozlem Yetim*

REPLY ISO MOT. TO CONSOL. REL. CASES. APPOINT LEAD PL. AND APPROVE LEAD COUNSEL
Case No. 3:23-cv-05544-RFL