EXHIBIT 1

CHART SUMMARIZING INFORMATION REQUIRED
BY 15 U.S.C. §§ 78u-4(b)(1) and (2), PURSUANT TO COURT'S STANDING ORDER

*In re SunPower Corporation Securities Litigation*, No. 3:23-cv-05544-RFL (N.D. Cal)

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| No. 1 (¶ 97) | **When:**<br><br>• May 3, 2023<br><br>**Where:**<br><br>• Quarterly Report for Q1 2023, filed on Form 10-Q with the SEC<br><br>**Speakers:**<br><br>• Defendant CFO Eby, Defendant CEO Faricy | May 3, 2023:<br><br>"We currently anticipate that our cash and cash equivalents will be sufficient to meet our obligations over the next 12 months from the date of issuance of our financial statements." | The statement in ¶ 97 was materially false and misleading and omitted material facts when made because at the time SunPower did not have "cash and cash equivalents," and did not anticipate having "cash and cash equivalents sufficient to meet [its] obligations over the next 12 months." In fact, by the time this statement was made, SunPower already lacked sufficient cash to pay Maxeon, a key supplier. (AC ¶¶ 91, 92-94, 98, 101). In a November 15, 2023, press release, Maxeon explained that it had suspended shipments to SunPower starting in July 2023 because SunPower had fallen behind on payments, so SunPower could not reasonably have anticipated as of May 2023 that its "cash and cash equivalents" would be "sufficient to meet [its] | Defendants Faricy and Eby held themselves out in their public statements as personally familiar with the Company's financial performance. Defendants Faricy and Eby regularly spoke to investors and securities analysts regarding the Company's financial metrics, cash position, lending agreements, and financial covenants. Having spoken on these subjects so many times, Defendants Faricy and Eby knew, or were deliberately reckless in not knowing, that the statements about SunPower's cash position were false and misleading and omitted material information. (AC ¶¶ 107, 109).<br><br>SunPower admitted, in the Q1 and Q2 2023 10-Q quarterly reports signed by Defendant Eby, that, "We continuously evaluate our liquidity and capital resources, including our access to external capital, to ensure we can |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | obligations over the next 12 months."  (AC ¶ 98).<br><br>Former employees related that throughout 2022 and 2023 SunPower had been unable to pay many suppliers to the point those suppliers threatened legal action or delivery cancellation.  (AC ¶¶ 78, 80-81, 86, 88, 91).<br><br>Former employees related that SunPower suffered chronic cash problems starting at least as early as 2022, which were only getting more dire throughout 2023.  (AC ¶¶ 76, 78, 80-81, 83, 85, 88, 89). | finance our future capital requirements."  As the Company's CEO and CFO, Defendants Faricy and Eby understood that (a) Maxeon, as its key supplier of solar panels, would demand to be paid pursuant to the operative master supply agreement, and (b) SunPower's possession of cash sufficient to meet its obligations, both to Maxeon and to its other suppliers, was a fact material to markets.  Before signing the Q2 2023 Form 10-Q, Defendants Faricy and Eby certainly would have known that the Company was delinquent in its payments to its most important supplier.  (AC ¶¶ 107, 109).<br><br>Former employees have confirmed that SunPower's longstanding—and worsening—liquidity problems were well known to management, including CEO Faricy and CFO Eby.  (AC ¶¶ 82-83, 85, 89, 90).<br><br>Former employees have confirmed that SunPower's inability to pay suppliers was well known to management, including CEO Faricy and CFO Eby.  (AC ¶¶ 78, 86). |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| No. 2 (¶ 100) | **When:** • August 2, 2023 **Where:** • Quarterly Report for Q2 2023, filed on Form 10-Q with the SEC **Speakers:** • Defendant CFO Eby, Defendant CEO Faricy | August 2, 2023: "We currently anticipate that our cash and cash equivalents will be sufficient to meet our obligations over the next 12 months from the date of issuance of our financial statements." | The statement in ¶ 100 was materially false and misleading and omitted material facts when made because at the time SunPower did not have "cash and cash equivalents," and did not anticipate having "cash and cash equivalents sufficient to meet [its] obligations over the next 12 months." In fact, by the time this statement was made, SunPower already lacked sufficient cash to pay Maxeon, a key supplier. (AC ¶¶ 91, 92-94, 98, 101). On an August 10, 2023 earnings call, Maxeon CEO William P. Mulligan revealed that Maxeon had "notified SunPower, in writing, that it ha[d] failed to pay approximately $29 million of past due invoices." In a November 15, 2023, press release, Maxeon explained that it had suspended shipments to SunPower starting in July 2023 because SunPower had fallen behind on payments, so SunPower could not reasonably have anticipated as of August 2023 that its "cash and cash equivalents" would be "sufficient to meet [its] | Defendants Faricy and Eby held themselves out in their public statements as personally familiar with the Company's financial performance. Defendants Faricy and Eby regularly spoke to investors and securities analysts regarding the Company's financial metrics, cash position, lending agreements, and financial covenants. Having spoken on these subjects so many times, Defendants Faricy and Eby knew, or were deliberately reckless in not knowing, that the statements about SunPower's cash position were false and misleading and omitted material information. (AC ¶¶ 107, 109). SunPower admitted, in the Q1 and Q2 2023 10-Q quarterly reports signed by Defendant Eby, that, "We continuously evaluate our liquidity and capital resources, including our access to external capital, to ensure we can finance our future capital requirements." As the Company's CEO and CFO, Defendants Faricy and Eby understood that (a) Maxeon, as its key supplier of solar panels, would demand to be paid pursuant to the operative master supply agreement, and |

3

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | obligations over the next 12 months." (AC ¶ 101).<br><br>Former employees related that throughout 2022 and 2023 SunPower had been unable to pay many suppliers to the point those suppliers threatened legal action or delivery cancellation. (AC ¶¶ 78, 80-81, 86, 88, 91).<br><br>Former employees related that SunPower suffered chronic cash problems starting at least as early as 2022, which were only getting more dire throughout 2023. (AC ¶¶ 76, 78, 80-81, 83, 85, 88, 89). | (b) SunPower's possession of cash sufficient to meet its obligations, both to Maxeon and to its other suppliers, was a fact material to markets. Before signing the Q2 2023 Form 10-Q, Defendants Faricy and Eby certainly would have known that the Company was delinquent in its payments to its most important supplier. (AC ¶¶ 107, 109).<br><br>Former employees have confirmed that SunPower's longstanding—and worsening—liquidity problems were well known to management, including CEO Faricy and CFO Eby. (AC ¶¶ 82-83, 85, 89, 90).<br><br>Former employees have confirmed that SunPower's inability to pay suppliers was well known to management, including CEO Faricy and CFO Eby. (AC ¶¶ 78, 86). |
| No. 3 (¶ 102) | **When:**<br><br>• October 24, 2023<br><br>**Where:**<br><br>• Current Report Form | October 24, 2023:<br><br>"The Company and Bank of America, N.A., the administrative agent and collateral agent for the lenders (the 'Agent') under the Credit | The statement in ¶ 102 was materially false and misleading and omitted material facts when made because:<br><br>The statement leads investors to believe that SunPower was not yet in breach of its financial covenants—and was seeking | Defendants Faricy and Eby held themselves out in their public statements as personally familiar with the Company's financial performance. Defendants Faricy and Eby regularly spoke to investors and securities analysts regarding the Company's financial metrics, cash position, |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | 8-K filed with the SEC<br><br>**Speakers:**<br><br>• Defendant CFO Eby, Defendant CEO Faricy | Agreement dated as of September 12, 2022 (as amended by the First Amendment, dated as of January 26, 2023, the 'Credit Agreement'), among the Company, the lenders party thereto from time to time, and the Agent ***are currently negotiating the terms and conditions of a consent and waiver to address the effects of the Restatement under the Credit Agreement***."<br><br>(Emphasis added.) | waivers to avoid such breach and default when it issued its restatement—when in fact SunPower was already in breach of its financial covenants, permitting lenders to demand immediate repayment of loans.  (AC ¶ 103). Indeed, SunPower's Q3, filed on December 18, 2023, admitted that SunPower had been in breach of its financial covenants as of October 1, 2023, the close of Q3 2023.  (AC ¶¶ 62, 63).<br><br>By referencing "effects of the Restatement," which "restated" the Company's "disclosure controls and procedures," SunPower created the impression that the Company was only potentially in breach of reporting covenants, when in fact the Company was in breach of more serious covenants related to SunPower's financial condition. (AC ¶ 103).<br><br>While the statement reported certain facts required to be reported in a current report on Form 8-K, it misleadingly omitted other required facts, including that it was in breach | lending agreements, and financial covenants.  Having spoken on these subjects so many times, Defendants Faricy and Eby knew, or were deliberately reckless in not knowing, that the statements about SunPower's compliance with its financial covenants and cash position were false and misleading and omitted material information. (AC ¶ 107).<br><br>SunPower admitted, in the Q1 and Q2 2023 10-Q quarterly reports signed by Defendant Eby, that, "We continuously evaluate our liquidity and capital resources, including our access to external capital, to ensure we can finance our future capital requirements."  As the Company's CEO and CFO, Defendants Faricy and Eby understood that (a) Maxeon, as its key supplier of solar panels, would demand to be paid pursuant to the operative master supply agreement, and (b) SunPower's possession of cash sufficient to meet its obligations, both to Maxeon and to its other suppliers, was a fact material to markets.  Before signing the Q2 2023 Form 10-Q, Defendants Faricy and Eby certainly would have known that the Company |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | of financial covenants as required under S-K Item 2.04 (requiring an 8-K for "Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement"). (AC ¶¶ 65, 103). | was delinquent in its payments to its most important supplier. (AC ¶¶ 107, 109). |
| No. 4 (¶ 105) | **When:** <br> • November 1, 2023 <br> **Where:** <br> • Q3 2023 Investor Conference Call <br> **Speakers:** <br> • Defendant CFO Eby | November 1, 2023 Investor Call <br><br> Defendant CFO Eby: <br><br> "We need to get to the final phase of they're always the backward looking and *we're fine in Q3* and we're talking to the banks about waivers for the restatement and anything else we need." <br><br> (Emphasis added.) | The statement in ¶ 105 was materially false and misleading and omitted material facts when made because Defendant Eby's statement misleadingly suggested that SunPower was not yet in breach of its financial covenants and was seeking waivers to avoid such breach and default when it issued its restatement, when in fact it was already in breach of its financial covenants. By the time this statement was made, SunPower already admitted that it was in breach of its financial covenants as of October 1, 2023, and as such, the Company's compliance with its financial covenants was not "fine in Q3." (AC ¶¶ 105, 56-58). | As the Company's CFO, Defendant Eby knew that SunPower's compliance with its financial covenants was material to its ability to continue as a going concern and, therefore, was material to investors. She also understood how close the Company was to violating those covenants, especially as SunPower repeatedly reduced its guidance throughout 2023. Thus, Defendant Eby understood the importance of speaking accurately and truthfully when describing SunPower's compliance with its financial covenants. Her knowledge of the significance of SunPower's financial covenants creates an inference that she spoke intentionally and deliberately when she said that the Company was "fine" in Q3 2023. If she knew when she spoke that the Company was not "fine," then her misstatement was |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | | knowing.  If Defendant Eby stated that the Company's compliance with its financial covenants was "fine" in Q3 2023 without actually knowing whether the Company was in fact fine with its compliance with its financial covenants during that period, she acted at a minimum with severe recklessness in making up an answer on a matter that she knew was highly material to markets. (AC ¶ 108). |