**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
Austin P. Van
(*pro hac vice*)
Samantha Daniels
(*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
avan@pomlaw.com
sdaniels@pomlaw.com

[*Additional Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SUNPOWER CORPORATION SECURITIES LITIGATION | Case No.:  3:23-cv-05544-RFL |
| This Document Relates to: | **CLASS ACTION** |
| *ALL ACTIONS* | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| | Date: July 30, 2024 |
| | Time: 10:00 AM |
| | Dept: Court Room 15, 18th Floor |
| | Judge: Hon. Rita F. Lin |

## <u>**TABLE OF CONTENTS**</u>

PRELIMINARY STATEMENT ..................................................... 1

STATEMENT OF FACTS .......................................................... 1

    A.    SunPower's Business Relies On Maintaining Its Credit Agreements. .............. 1

    B.    The Financial Covenants In SunPower's Credit Agreements Depended On SunPower's Financial Health. ................................................ 2

    C.    SunPower Misled the Market About Its Financial Health. ................... 2

    D.    SunPower Misled The Market About Its Compliance With Its Financial Covenants. ................................................................ 3

    E.    The Truth Emerged. .......................................................... 4

ARGUMENT ..................................................................... 5

    A.    The FAC Pleads Exchange Act Violations. .................................. 5

        1.    The FAC Pleads Actionable False Statements and Omissions. ............... 5

            1)    Defendant CFO Eby Affirmatively Misled Investors About SunPower's Compliance With Its Financial Covenants. .............. 6

            2)    SunPower's Statements In Its October 24, 2023 8-K About Compliance With Its Covenants Were Misleadingly Incomplete.. 8

            3)    The FAC Pleads Actionable False Statements And Omissions Related To SunPower's Liquidity Crisis. ...................... 9

        2.    The FAC Pleads a Strong Inference of Scienter. ..................... 12

            1)    Defendant Eby Spoke Directly About SunPower's Compliance With Its Financial Covenants. ................................... 12

            2)    Defendants Knew SunPower Was Verging On Breaching Financial Covenants, Yet The October 24, 2023 8-K Framed The Restatement As Correcting A Reporting Issue. ............... 13

            3)    Defendants Were In Possession Of Contemporaneous, Contradictory Information When They Made The False And Misleading Statements About SunPower's Cash Position........ 14

    B.    Plaintiffs Have Standing. .................................................. 15

CONCLUSION ................................................................. 15

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

i

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4
*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir.2008) ........................................................................9, 12

5
*Brendon v. Allegiant Travel*,
6
  412 F.Supp.3d 1244 (D. Nev. 2019) .....................................................................12

7
*Brown v. Papa Murphy's Holdings*,
  2021 WL 235865 (W.D. Wash. Jan. 12, 2021)..........................................................10
8

9
*City of Birmingham Relief v. Acadia Pharms. Inc.*,
  2022 WL 4491093 (S.D. Cal. Sept. 27, 2022).........................................................14

10
*City of Sunrise Firefighters' Pension Fund v. Oracle Corporation*,
11
  527 F.Supp.3d 1151 (N.D.Cal., 2021) ..................................................................15

12
*E. Öhman J:or Fonder AB v. NVIDIA Corp.*,
  81 F.4th 918 (9th Cir. 2023) ............................................................................5
13

14
*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995) ...........................................................................13

15
*Flynn v. Sientra, Inc.*,
16
  2016 WL 3360676 (C.D. Cal. June 9, 2016) ............................................................11

17
*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
  63 F.4th 747 (C.A.9 2023) ...........................................................................8, 11
18

19
*Glen Holly Ent. Inc. v. Tektronix Inc.*,
  352 F.3d 367 (9th Cir. 2003) ............................................................................7

20
*Hammer v. Frontier Fin. Corp.*,
21
  2011 WL 13229260 (W.D. Wash. Sept. 7, 2011)......................................................7, 8

22
*Hatamian v. Advanced Micro Devices, Inc.*,
  87 F.Supp.3d 1149 (N.D. Cal. 2015) ...........................................................5, 6, 7, 12
23

24
*Howard v. Everex Systems, Inc.*,
  228 F.3d 1057 (C.A.9 (Cal.), 2000)....................................................................14

25
*Hunt v. Bloom Energy Corp.*,
26
  2021 WL 1110260 (N.D. Cal. Mar. 23, 2021).........................................................15

27

28
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*In re Aceto Corp. Sec. Litig.*,
   2021 WL 4350501 (E.D.N.Y. Mar. 16, 2021) ...........................................................8

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) ....................................................................................12

*In re Amgen Inc. Sec. Litig.*,
   2014 WL 12585809 (C.D. Cal. Aug. 4, 2014).........................................................12

*In re Boston Tech. Inc. Sec. Litig.*,
   8 F.Supp.2d 43 (D. Mass. 1998) ...............................................................................7

*In re Diamond Foods*,
   2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) ........................................................12

*In re Emergent BioSolutions Inc. Securities Litigation*,
   2023 WL 5671608 (D.Md., 2023) ............................................................................13

*In re Immune Response Securities Litigation*,
   375 F.Supp.2d 983 (S.D.Cal.,2005) ........................................................................14

*In re Impax Lab'ys*,
   2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) .........................................................15

*In re LDK Solar*,
   584 F.Supp.2d 1230 (N.D. Cal. 2008) .....................................................................15

*In re LendingClub*,
   254 F.Supp.3d 1107 (N.D. Cal. 2017) .....................................................................12

*In re New Century*,
   588 F.Supp.2d 1206 (C.D.Cal., 2008) .................................................................8, 11

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ...................................................................................14

*In re Quality Sys.*,
   865 F.3d 1130 (9th Cir. 2017) ............................................................................10, 11

*In re QuantumScape Securities Class Action Litigation*,
   580 F.Supp.3d 714 (N.D.Cal., 2022) .........................................................................7

*In re Star Gas Sec. Litig.*,
   2006 U.S. Dist. LEXIS 109619 (D. Conn. Aug. 21, 2006) .......................................7

*Johnson v. Costco Wholesale Corp.*,
   2019 WL 6327580 (W.D. Wash. Nov. 26, 2019) ......................................................8

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Joyce v. Amazon.com, Inc.*,
  2023 WL 8370101 (W.D. Wash. Dec. 4, 2023) ........................................13

*Jui-Yang Hong v. Extreme Networks*,
  2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) ....................................7, 8

*Karri v. Oclaro*,
  2020 WL 5982097 (N.D. Cal. Oct. 8, 2020).........................................11

*Khoja v. Orexigen*,
  899 F.3d 988 (9th Cir. 2018) ........................................................6, 10

*Knox v. Yingli Green Energy Holding*,
  242 F.Supp.3d 950 (C.D. Cal. 2017) .....................................................7

*Lierboe v. State Farm*,
  350 F.3d 1018 (9th Cir. 2003) ...........................................................15

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
  2017 WL 5635424 (C.D. Cal. Aug. 20, 2017).....................................13

*Mulderrig v. Amyris, Inc.*,
  492 F.Supp.3d 999 (N.D. Cal. 2020) ...................................................14

*Mulligan v. Impax Labs.*,
  36 F.Supp.3d 942 (N.D. Cal. 2014) ......................................................8

*Nguyen v. Radient Pharm.*,
  2011 WL5041959 (C.D. Cal. Oct. 20, 2011)........................................15

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
  780 F.App'x 480 (9th Cir. 2019) .........................................................11

*Roberti v. OSI Sys., Inc.*,
  2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)........................................12

*Rollins v. Dignity Health*,
  338 F.Supp.3d 1025 (N.D. Cal. 2018) ................................................10

*SEC v. Spiegel, Inc.*,
  2003 WL 22176223 (N.D. Ill. Sept. 15, 2003) ....................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................12

*Warshaw v. Xoma Corp.*,
  74 F.3d 955 (9th Cir. 1996) ..................................................................8

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

iv

*Weston v. DocuSign, Inc.*,
    669 F.Supp.3d 849 (N.D. Cal. 2023) ........................................................................................8

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

## PRELIMINARY STATEMENT

As Defendant SunPower faced a cash crisis, it reassured investors it would have sufficient "cash and cash equivalents" to meet its needs over the "next 12 months." But at the time—and as many former employees attest—SunPower already could not pay the service providers necessary to maintain its solar-powered energy solutions business. While SunPower's financial metrics like EBITDA and liquidity were diving, it implicated the Company's compliance with the critical financial covenants from its main credit source, permitting its lender to demand immediate repayment. Yet when SunPower announced that it would need to "restate" its financials due to what it described as rote "reporting" issues, it hid the negative truth that it was *already* in breach of its financial covenants as of Q3. Then—when concerned analysts asked *directly* about the impact of the restatement on those financial covenants—SunPower's CFO vowed that SunPower had been "fine" on compliance "in Q3." Those assurances were blatantly false. Defendants repeatedly try to absolve them by arguing that SunPower did not know whether the Company would be in compliance with its covenants in Q3 when it assured investors it was. *E.g.*, MTD at 1. Yet such ignorance of the Company's position would only compound Defendants' error— Defendants were at minimum severely reckless in assuring investors that there was no risk of the Company's breaching its financial covenants in Q3 if they had no basis to make those assurances, particularly in light of Defendants' other false warranties about its strong cash position. In any event, Defendants had every reason to know SunPower was in default. Defendants' concomitant claim that "no reasonable investor" would have been misled by these assertions (*e.g.*, MTD at 8) is belied by the sophisticated analysts who relied on them in their reports. ¶106. Unable to escape this reality on the merits, Defendants argue Plaintiffs lack standing. But both Plaintiffs sustained losses in the class period, and it is wholly appropriate to add additional parties with additional losses caused by SunPower's subterfuge. Dismissal on that ground equally is unwarranted.

## STATEMENT OF FACTS

**A.  SunPower's Business Relies On Maintaining Its Credit Agreements.**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

SunPower offers integrated solar home energy solutions (¶27), and contracts with companies to supply it with the goods and services necessary to operate (¶28). To pay these suppliers, SunPower relies on funds from credit sources (¶29) from agreements with financial and reporting covenants. ¶30. Breach of either covenant is an event of default, allowing a lender to cease lending and demand immediate repayment of all amounts owed. ¶36. But lenders are far more willing to waive defaults triggered by *reporting* covenants than those by breaches of *financial* covenants given the latter are tied to a company's underlying financial health. ¶38.

**B. The Financial Covenants In SunPower's Credit Agreements Depended On SunPower's Financial Health.**

SunPower's primary credit agreement with Bank of America (the "Credit Agreement"), contained four financial covenants requiring SunPower to maintain certain levels or ratios of "net leverage," "interest," and "assets," and to maintain a "minimum liquidity." ¶¶29, 31, 32-35. Notably, all these covenants rely on financial health metrics of EBIDTA or liquidity. ¶¶32-35. Ensuring compliance was more important in 2023, as SunPower faced serious, existential challenges to its business (¶46) including supply chain constraints (¶41) a new net energy metering program ("NEM 3.0") (¶¶42-44) and interest rate increases throughout 2022 and 2023 (¶45).

**C. SunPower Misled the Market About Its Financial Health.**

Unbeknownst to investors, throughout 2023, SunPower faced a liquidity crisis threatening to upend its financial covenants. Yet publicly, SunPower downplayed any cash issues. On February 15, 2023, SunPower issued 2023 full-year guidance of $125 million to $155 million of adjusted EBITDA, and on that Q4 earnings call, Defendant Faricy suggested the Company's guidance was "meant to be conservative," reflecting "some uncertainty in the economy." ¶47.  In the Company's Q1 2023 Form 10-Q filed on May 3, 2023, SunPower maintained that "[w]e currently anticipate that our cash and cash equivalents will be sufficient to meet our obligations over the next 12 months from the date of issuance of our financial statements." ¶93. In the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Company's Q2 2023 Form 10-Q filed on August 2, 2023, again SunPower took the opportunity in its filings to reassure investors with the same statement about its positive cash position. ¶99.

Yet behind the scenes, former employees confirm an ongoing liquidity crisis. ¶¶71-91. One former employee (FE4) confirmed that Defendants Faricy and Eby knew about the cash issues throughout this time, but "continued to say" that they were "not able to tell you when we will have the ability to raise the equity" needed "in order to pay" its bills and suppliers. ¶¶82-83, 85. Another former employee (FE1) described SunPower scrambling to "try[] to liquidate material and supplies that we didn't need so we could get cash out of it." ¶76. Yet another former employee (FE2) described how SunPower was unable to pay suppliers, resulting in several of those players issuing "notices of cancelation." ¶¶78-79. Another (FE3) confirmed the same chronic nonpayment of suppliers, stating that "things got so bad that suppliers threatened to halt services if SunPower failed to pay," and that a "major supplier did in fact 'shut service down.'" ¶80.

This liquidity crisis resulted in SunPower's delinquency with its key supplier of solar panels, Maxeon. FE1 related how SunPower "lost its contract" with "major supplier" Maxeon due to SunPower's "missed payments." ¶91. This former employee reiterated that these payments were "months late" and that the cancellation "was noted that it was because of payment issues." ¶91. As a press release from Maxeon later confirmed (on November 15, 2023), Maxeon in fact had to suspend deliveries in July 2023 due to this repeated nonpayment. ¶98.

**D. SunPower Misled The Market About Its Compliance With Its Financial Covenants.**

After reassuring the market about its cash position, after hours on October 24, 2023, SunPower filed an 8-K announcing that its Q1 and Q2 financials "should no longer be relied upon, and that it planned to restate its financials for those periods in amended reports," describing the issue as an "overstatement of consignment inventory of microinverter components at certain third-party locations, a material weakness in the Company's internal controls over financial reporting, and ineffective disclosure controls and procedures," ¶51, and related that it and Bank of America "are currently negotiating" a "waiver to address the effects of the Restatement under the Credit Agreement" of those reporting issues, ¶52. Defendants, however, did not explain what was meant

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

by "the effects of the Restatement under the Credit Agreement." ¶53. Nor did the 8-K suggest that financial covenants (rather than "financial reporting") would be impacted.

On November 1, 2023, SunPower reassured the market about its compliance with its financial covenants.  It reported preliminary Q3 results, flagging its 2023 guidance as not feasible and that it would revise EBITDA downward. ¶54. On the earnings call, investors were concerned about whether the revised figures placed SunPower in breach of its financial covenants. ¶56. Addressing SunPower's "stance" regarding "minimum cash and/or EBITDA coverage covenants," a Goldman Sachs analyst asked: "even given the negative EBITDA outlook . . . you still plan to be in compliance with all those [financial] covenants through year-end?" Eby replied "we're fine in Q3 and we're talking to the banks about waivers for the restatement and anything else we need," and so indicated that the Company was "fine in Q3" with respect to "all those [financial] covenants." ¶¶56, 105. Eby also stated "there is four covenants" "[a]nd we reached on all of those." Analysts thus were misled to believe SunPower was "fine" on its financial covenants—and that the forthcoming restatement would impact reporting covenants SunPower was seeking waivers to address. The same day, JP Morgan issued a report stating that "[e]ncouragingly, the company generated positive FCF [free cash flow] during 3Q and appears to be in compliance with debt covenants, though the company is in discussions with its lenders for a waiver owing to the pending restatement (non-cash) recently announced." ¶106.  Two weeks later, SunPower announced its Q3 results would be late, stating that it was "working diligently to complete the Restatement," but to file its Q3 financials on time would require "unreasonable effort or expense." ¶59.

**E. The Truth Emerged.**

On July 26, 2023, the truth began to emerge about SunPower's true cash position and compliance. An 8-K revealed new reduced guidance for 2023 and termination of 140 employees. It also slashed projected EBITDA by more than half, to $55 million to $75 million. ¶48. After this, SunPower's price fell over 20%, from July 25, 2023, to July 27, 2023. ¶49.

On November 15, 2023, SunPower's 8-K announced it entered into an agreement to "resolve certain disputes" with Maxeon. ¶114. Maxeon had suspended shipments in July 2023

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   because SunPower had failed to pay about $29 million of due invoices. ¶114. The agreement
2   required SunPower "to issue to Maxeon, in a private placement, warrants for 1,700,000 shares of"
3   "common stock." ¶114. The next day, share prices dropped 7.3%. ¶115.

4        After hours on December 11, 2023, an 8-K revealed SunPower had breached some
5   financial covenants and would breach others, without specifying which ones. ¶60. Share prices
6   dropped $.37 per share, or 7.7%, the next day. ¶61.

7        A week later, the extent of that breach emerged.  On December 18, 2023, SunPower filed
8   its financials for Q3 2023, along with the "restatement" financials for fiscal year 2022 and the first
9   two quarters of 2023. In that10-Q, SunPower stated that it was currently in breach of its financial
10  covenants—*and had been as* "*of October 1, 2023*," the close of Q3 "create[ing] events of default"
11  permitting "immediate payment." It also stated that on "December 8, 2023 … the Company
12  obtained . . . a temporary waiver until January 19, 2024 of the breaches." ¶63. SunPower also
13  issued a "going concern" warning investors that "[s]ubstantial doubt exists about our ability to
14  continue as a going concern" "unless" it obtains waivers of the breach and "raise additional capital"
15  to prevent future breaches. ¶64. That day, share prices plummeted over 31%. ¶66.

16       On February 15 and 23, 2024, SunPower announced it obtained waivers of its defaults and
17  amendments rendering the financial covenants less onerous and obtained lifeline capital from Sol
18  Holding, requiring SunPower to issue Sol Holding penny warrants up to 41.8 million shares and
19  33.4 million of warrants. ¶68. Share prices fell 25.4% on February 23, 2024. ¶70.

## ARGUMENT

### A.  The FAC Pleads Exchange Act Violations.

#### 1.        The FAC Pleads Actionable False Statements and Omissions.

23       A statement is misleading if it creates an "'impression of a state of affairs that differs in a
24  material way from the one that actually exist.'" *Hatamian v. Advanced Micro Devices, Inc*., 87
25  F.Supp.3d 1149, 1158–61 (N.D. Cal. 2015) (quoting *Berson v. Applied Signal Tech., Inc.,* 527 F.3d
26  982, 985 (9th Cir.2008)). A statement is false if it is "contradict[ed]" by existing facts. *E. Öhman*
27  *J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918,  928 (9th Cir. 2023).  Actionable statements "may

28

be misleading if it omits material information" and "[d]isclosure is required . . . to make . . . statements made . . . not misleading.'" *Khoja v. Orexigen*, 899 F.3d 988, 1008–09 (9th Cir. 2018).

       1)  <u>Defendant CFO Eby Affirmatively Misled Investors About SunPower's Compliance With Its Financial Covenants.</u>

On the November 1, 2023 earnings call, Eby expressly assured investors that SunPower was in compliance with its financial covenants. When a Goldman Sachs analyst specifically asked, "even given the negative EBITDA outlook . . . you still plan to be in compliance with all those [financial] covenants through year-end?" Eby replied "*we're fine in Q3* and we're talking to the banks about waivers for the restatement and anything else we need," and so unmistakably indicated that the Company was "fine in Q3" with respect to "all those [financial] covenants" ¶¶56, 105 (emphasis added). She also reiterated "there is four covenants" "[a]nd we reached on all of those."

These statements were false and misleading. The Company's compliance was *not* "fine in Q3," and SunPower had not "reached on all of those" financial covenants as of November 1, 2023. Rather, SunPower later admitted that it was in breach of its financial covenants as of October 1, 2023, the end of SunPower's Q3. ¶¶105, 118, 56-58. And, in stating that SunPower had "reached on all of those" financial covenants but that nevertheless SunPower was "talking to the banks about waivers for the restatement," Eby gave the false impression that SunPower was seeking waivers only to address its *reporting* covenants, not the *financial* covenants related to financial health such as EBITDA or cash that it had purportedly "reached." On December 18, 2023, SunPower admitted it had been in breach of its *financial* covenants as of October 1, 2023. This impression was all the more misleading given SunPower's prior statements touting its sufficient cash position. *Infra* 9-11. Eby's assurances thus created an "impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Advanced Micro Devices*, 87 F.Supp.3d at 1158–61.

Defendants attempt to point to other statements by SunPower that they claim provide a "context" that somehow renders Eby's blatant misstatements not misleading. MTD at 8. Any such attempt by Defendants must fail because Eby's comments were specific and direct. Eby's statement that SunPower would "need to get to the final" (MTD at 8) refers to her response to the

analyst's question about "compliance with all those covenants through year-end," or Q4—which had not yet come to pass and thus was not yet "final"—but her statement assured investors that SunPower had been "fine in Q3," and so specifically and directly assured investors that she already had sufficient information as of that conference call to conclude that SunPower had not breached its covenants in Q3. ¶56. The fact that Eby referred to these covenants as "backward looking" (MTD at 8) only reinforces this misleading impression because it confirms Eby had all relevant "backward looking" information to make that assessment. Moreover, couching the broad category of "historical period financial information" as "preliminary" does not negate Eby's far more specific statements that SunPower was "fine," and had "reached" compliance with, the financial covenants in its key credit agreement. *QuantumScape*, 580 F.Supp.3d 714, 734 (N.D. Cal. 2022) ("technical and narrow" disclosures do not render its "more categorical statements [] entirely non-misleading"). As a "present-tense statement[] of fact" "without qualification" about SunPower's status in Q3, "plaintiffs have sufficiently alleged falsity." *Advanced Micro Devices*, 87 F.Supp.3d at 1159–60 ("yield is on expectations" and "[c]urrently we have no issues" for yield misleading).

Eby's statements thus are not "puffery" or "too vague and unspecific to be actionable." MTD at 7. "'[T]he difference between a statement of fact and mere puffery rests in the specificity or generality of the claim,'" *Hammer v. Frontier Fin. Corp.*, 2011 WL 13229260, at *9 (W.D. Wash. Sept. 7, 2011), and "[p]uffing statements . . . 'are generally not capable of objective verification,'" *Knox v. Yingli Green Energy Holding*, 242 F.Supp.3d 950, 961 (C.D. Cal. 2017). Here, Eby's statements that SunPower was "fine in Q3" in compliance and had "reached on all of [its covenants]" are both specific and verifiable—and in fact, were later admitted false. *Jui-Yang Hong v. Extreme Networks*, 2017 WL 1508991, at *12 (N.D. Cal. Apr. 27, 2017) (integration "on track" and "ahead of plan" not puffery because have "some basis in objective and verifiable fact").[1]

---

[1] Defendants' authorities (MTD at 7) all involve general, non-specific, unverifiable statements and thus are distinguishable. *Glen Holly Ent. Inc. v. Tektronix Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) ("statements generally describing" that "product development" is "high priority"); *In re Boston Tech. Inc. Sec. Litig.*, 8 F.Supp.2d 43, 62 (D. Mass. 1998) (the "fundamentals of the Company are fine"). And in *In re Star Gas Sec. Litig.*, 2006 U.S. Dist. LEXIS 109619, *58-59 (D. Conn. Aug.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Even if Eby's statements were mere optimism (they are not), such "'statements . . . when taken in context'" are actionable when "'address[ing] specific aspects of a company's operation that the speaker knows to be performing poorly.'" *Weston v. DocuSign, Inc.*, 669 F.Supp.3d 849, 881 (N.D. Cal. 2023). That Eby spoke about the "specific aspect[] of" SunPower's compliance renders it actionable. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996) ("everything is going fine" actionable). Courts regularly conclude such verifiable statements about financial standing are not puffery. *New Century*, 588 F.Supp.2d at 1226 ("assurances of strong credit quality" not "puffery"); *Frontier*, 2011 WL 13229260, at *9 ("'capital ratios'" and "loan reserves" "remain strong'" "not puffery"). The same is true here.

Defendants' claim that "no reasonable investor would have understood Ms. Eby to be guaranteeing that SunPower was . . . in compliance once the restatement was finalized" (MTD at 8) is belied by the sophisticated analysts that relied on Eby's statements in their same-day reports. ¶106; *Forescout*, 63 F.4th at 771 (rejecting "puffery" argument where false information was provided in response to analyst questions); *Extreme Networks*, 2017 WL 1508991, at *11 ("investors do not rely on puffery when making investment decisions").[2]

    2)   SunPower's Statements In Its October 24, 2023 8-K About Compliance With Its Covenants Were Misleadingly Incomplete.

SunPower's October 24, 2023 8-K statement that it and its lender were "currently negotiating . . . a consent and waiver to address the effects of the Restatement under the Credit Agreement" misled investors to believe that SunPower was not yet in breach of its financial covenants—and that any waiver was needed only to address reporting covenants. ¶103. The claim

---

21, 2006), the plaintiff's claim that "Star Gas was in danger of defaulting on its loans as early as April 2003 [was] not supported by their own factual allegations" given Star Gas "post[ed] profits and record sales." Here, SunPower was in a cash freefall.

[2] None of the Defendants' cases involved such a clear statement about financial compliance from the company's CFO. In *Johnson v. Costco Wholesale Corp.*, 2019 WL 6327580, at *17 (W.D. Wash. Nov. 26, 2019), "Defendants' initial disclosure [filing] was couched in anticipatory language" but here, Eby spoke plainly that SunPower was "fine in Q3" regarding compliance. And in *In re Aceto Corp. Sec. Litig.*, 2021 WL 4350501, at *8 (E.D.N.Y. Mar. 16, 2021), Plaintiffs failed to even argue that disclosures about "historical compliance with its financial covenants" was misleading. In any event, determining whether statements are puffery "entail[s] fact-intensive assessments that are more properly left to the jury." *Mulligan v. Impax Labs.*, 36 F.Supp.3d 942, 966 (N.D. Cal. 2014). It is not appropriate here.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

that this "does not address the status of SunPower's compliance with the covenants and thus cannot be materially misleading" (MTD at 7) ignores that it is misleading by omission. While companies have no freestanding duty to disclose material facts, once companies ***choose*** to speak on a topic, they are "bound to do so in a manner that wouldn't mislead." *Applied Signal*, 527 F.3d at 987.

Yet that is what occurred here. SunPower's statement misled investors to believe that SunPower was not yet in breach of its financial covenants—and was seeking waivers to avoid such breach and default when it issued its restatement—when in fact SunPower was already in breach of its financial covenants at the close of Q3 on October 1, 2023. ¶¶62-63, 103. Moreover, by referencing "effects of the Restatement"—which would "restate[]" the Company's "disclosure controls and procedures" and "financial reporting"—SunPower created the impression that the Company was only potentially in breach of *reporting* covenants, when in fact the Company was in breach of much more serious *financial* covenants. ¶103. For that reason, no "reasonable investor" would have been able to divine "that the actual effect of the restatement on the debt covenants was then unknown" pending SunPower's "ongoing investigation"—they were led to believe those covenants were not at issue. MTD at 7.[3] This misunderstanding was all the more misleading given SunPower's prior statements that it had the strong liquidity position and financial health to maintain compliance with those covenants pending these supposedly routine reporting issues. *Infra* 9-11. At bottom, Defendants' statement gave investors the positive impression that their investments had limited exposure to credit concerns, while failing to disclose the Company's true state of affairs. *Applied Signal*, 527 F.3d at 987. It is therefore actionable.

3)   The FAC Pleads Actionable False Statements And Omissions Related To SunPower's Liquidity Crisis.

Plaintiffs allege that SunPower's Q1 and Q2 statements that "[w]e currently anticipate that our cash and cash equivalents will be sufficient to meet our obligations over the next 12 months" were false and omitted material information. At the time, SunPower did not have "cash and cash

---

[3] This challenge also proves Plaintiffs' point; SunPower's statement was misleading because the breach of financial covenants already was known.  SunPower thus also had a duty to disclose this breach under SEC Regulation S-K Item 2.04. *Applied Signal*, 527 F.3d at 987.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

equivalents," and did not anticipate having such "sufficient to meet [its] obligations over the next 12 months." When made, SunPower already lacked sufficient cash to pay key supplier, Maxeon. As later revealed in a November 15, 2023, press release, Maxeon had suspended shipments to SunPower starting in July 2023 because SunPower had fallen months behind on payments. ¶101.

Defendants improperly claim "Maxeon's disclosures do not support that" SunPower "lacked sufficient cash to pay." MTD at 11.[4] But Maxeon's press release and earnings call related that it suspended delivery due to nonpayment (¶¶91, 92-94, 98, 101), and a FE confirmed SunPower lacked the cash to pay Maxeon (¶91). It also ignores the myriad other allegations from FEs confirming SunPower disguised a dire cash shortage by misrepresenting that it had sufficient cash for the coming year, when in fact it was unable to pay its current bills to its *many* service providers throughout 2022 and 2023. ¶¶78, 80-81, 86, 88, 91. FEs related that SunPower suffered chronic cash problems starting as early as 2022, getting more dire throughout 2023 (¶¶76, 78, 80-81, 83, 85, 88-89), and that SunPower failed financial audits in 2022 and 2023 (¶¶84, 87). These witnesses also confirmed that NEM 3.0 resulted in "demand dropping" (¶¶42-43, 75) and how ongoing supply chain constraints impeded SunPower's efforts to obtain physical components and skilled labor at costs it could afford, and these increased costs harmed its margins (¶41). SunPower also faced challenges of higher interest rates throughout 2022 and 2023, making borrowing from any source less affordable. ¶45. These "statements [were] inconsistent with [SunPower's] real-time financial information and were materially false or misleading." *In re Quality Sys.*, 865 F.3d 1130, 1144 (9th Cir. 2017); *Brown v. Papa Murphy's Holdings*, 2021 WL 235865, at *5 (W.D. Wash. Jan. 12, 2021) (statements actionable painting a "rosier view" of "financial prospects").

---

[4] Defendants ask the Court to accept their subjective interpretation of the contents of the Exhibits as true to undermine Plaintiffs' well-pled factual allegations and support their counter-narrative of events—a tactic the Ninth Circuit and this Court have repeatedly rejected. *Khoja*, 899 F.3d at 998 (admonishing "a concerning pattern in securities cases like this one: exploiting [judicial notice and incorporation by reference] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage"); *Rollins v. Dignity Health*, 338 F.Supp.3d 1025, 1031 (N.D. Cal. 2018) (denying judicial notice where the requesting parties "do what *Khoja* forbids—ask the Court to take judicial notice of documents that they then use as a basis to challenge the factual averments in the complaint").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    These statements were misleading when made even if SunPower "continued as a going

2    concern" thereafter. MTD at 12. Whether SunPower "had not yet felt the loss . . . when it allegedly

3    made" them "does not make the statements any less misleading." *Flynn v. Sientra, Inc.*, 2016 WL

4    3360676, *36 (C.D. Cal. June 9, 2016). Yet in any event, SunPower has "felt the loss" of its

5    liquidity problems since its misstatements: Defendants not only were forced to issue a "going

6    concern" warning precisely forecasting this outcome (¶¶64-66) but also to cast several expensive

7    life rafts to raise equity that significantly diluted shareholder value (¶¶67-70, 114). Defendants

8    cannot dismiss these allegations as "common" "cash management and cost cutting initiatives,"

9    MTD at 12, when former employees confirm that SunPower was a sinking ship (¶¶78, 80-81, 86,

10   88, 91).[5]

11   The PSLRA's safe harbor (MTD at 10), does *not* apply where, as here, management is

12   expressing a *current* belief in the accuracy of forecasts, and plaintiffs allege that such belief is not

13   genuinely held. *Quality Systems*, 865 F.3d at 1142; *Karri v. Oclaro*, 2020 WL 5982097, at *5

14   (N.D. Cal. Oct. 8, 2020) (figures in fairness opinion not forward-looking but "declaration[s] of

15   existing fact" about "present value"). Defendants could not have "anticipated" that they would

16   have sufficient cash "to meet our obligations over the next 12 months" because *at the time of their*

17   *writing*, Defendants were *already unable to meet their obligations*. Moreover, "[c]autionary words

18   about future risk cannot insulate . . . failure to disclose that the risk has transpired," *Countrywide*,

19   588 F.Supp.2d at 1178 n.62, and here the statements did not include sufficient cautionary language

20   as it omitted that SunPower did not have the cash to pay key vendors, *Forescout*, 63 F.4th at 780.

21

22

---

23   [5] Unable to counter these statements credibly, Defendants instead challenge the sources.  MTD at
24   12-14. These challenges are meritless. The Ninth Circuit routinely "credit the allegations attributed
     to [CWs]" where they "form a plausible and coherent narrative" and are "in a position to be
25   personally knowledgeable" of the facts alleged. *See*, *e.g.*, *Okla. Police Pension & Ret. Sys. v.
     LifeLock, Inc.*, 780 F.App'x 480, 484 n.5 (9th Cir. 2019) (citation omitted). Nothing more is
26   required at the pleading stage. *See In re Quality Sys.*, 865 F.3d 1130, 1145 (9th Cir. 2017)
     (crediting allegations where "the complaint includes each confidential witness's job description
27   and responsibilities"). Given their day-to-day roles at the Company, they possess the requisite
     personal knowledge necessary to support their allegations about SunPower's cash position.

28                         PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

2. **The FAC Pleads a Strong Inference of Scienter.**

2

Plaintiff must "state with particularity facts giving rise to a strong inference that defendants

3

acted . . . with deliberate recklessness as to the possibility of misleading investors." *Applied Signal*,

4

527 F.3d at 987. The inference "need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even

5

the 'most plausible.'" *Tellabs*, 551 U.S. at 324. But any "tie" as to competing inferences "goes to

6

the Plaintiff." *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *8 (C.D. Cal. Aug. 4, 2014).[6]

7

1) Defendant Eby Spoke Directly About SunPower's Compliance With Its Financial Covenants.

8

9

Plaintiffs have pleaded a strong inference of Eby's scienter. Defendants argue that the fact

10

that "SunPower's compliance was assessed 'as of October 1, 2023' does not establish that

11

Defendants **knew** of or were reckless as to the breach **on** that date." MTD at 9. Yet *if Eby did not*

12

*know* whether SunPower was in compliance as of October 1, 2023, then Eby was at minimum

13

*severely reckless* and informing investors directly that SunPower was indeed in compliance, that

14

the Company was "fine in Q3." That Eby did not know whether the Company was in compliance

15

and fabricated a position on the fly is *inculpatory*, not exculpatory. *Advanced Micro Devices*, 87

16

F.Supp.3d at 1162 (issues were "behind" the company when they allegedly were not supports

17

scienter). In any event, Eby's statements suggest she *did* know, as they go beyond generic

18

descriptions of the business and show personal familiarity with its status. *Brendon v. Allegiant*

19

*Travel*, 412 F.Supp.3d 1244, 1261 (D. Nev. 2019) (defendants "responded to at least one [analyst]

20

question . . . suggesting that they were familiar with the issues"). Investors rightly rely on

21

"specific" assurances from SunPower's top financial officer. *Roberti v. OSI Sys., Inc.*, 2015 WL

22

1985562, at *12 (C.D. Cal. Feb. 27, 2015) ("scienter can be established by the fact that the

23

Defendants touched on the specific issue . . . in their public statements"); *In re Diamond Foods*,

24

2012 WL 6000923, at *11-12 (N.D. Cal. Nov. 30, 2012) (CEO, CFO were "acutely aware" based

25

on their roles, the scope of the violations, and "defendants' own statements to analysts"); *In re*

26

---

27

[6] The scienter of any Section 10(b) Individual Defendant is imputed to SunPower. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021).

28

1    *LendingClub*, 254 F.Supp.3d 1107, 1122 (N.D. Cal. 2017) ("'absurd' for CFO Dolan to have been

2    blind to these weaknesses").[7] That "SunPower's investigation into the effects of the restatement"

3    allegedly was ongoing (MTD at 9-10) does not change this; if anything, "that argument, rather

4    than weaken the inference of scienter, only strengthens it: to try to correct an issue, one must first

5    be aware that it exists." *Emergent*, 2023 WL 5671608, at *24. And the short time (seven weeks)

6    between Eby's rosy statements and the revelation is "circumstantial evidence" that the statements

7    "were false when made." *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) (eleven weeks).

8              2)    <u>Defendants Knew SunPower Was Verging On Breaching Financial Covenants,</u>
<u>Yet The October 24, 2023 8-K Framed The Restatement As Correcting A</u>
9                 <u>Reporting Issue.</u>

10        When it filed the October 24, 2023 8-K, SunPower knew about, but omitted, key

11    information regarding breaches of its financial covenants. Defendants repeatedly claim that the

12    December restatement absolved Defendants of any knowledge regarding breaches of financial

13    covenants. Not so. The FAC alleges Defendants misleadingly framed the need for a restatement as

14    one implicating only breaches of "reporting" covenants, not financial covenants. While Defendants

15    try to cabin the statements from former employees solely to inferences about SunPower's "going

16    concern" statements (MTD at 8), they also reinforce an inference that Defendants knew or

17    recklessly disregarded that SunPower had breached its financial covenants. One former employee

18    related how Defendants Faricy and Eby knew about SunPower's equity issues, but "continued to

19    say" that they were "not able to tell you when we will have the ability to raise the equity" to pay

20    its bills. ¶¶82-83, 85. SunPower's compliance with its financial covenants is tied to cash position.

21    ¶¶32, 34-35. Former employees likewise have confirmed that SunPower's longstanding—and

22    worsening—liquidity problems were well known to management. ¶¶82-83, 85, 89-90. Indeed,

23

---

24    [7] Neither of Defendants' authorities (MTD at 10) involved such specific statements from a CFO
regarding a particular financial issue. *Joyce v. Amazon.com, Inc.*, 2023 WL 8370101, at *13 (W.D.
25    Wash. Dec. 4, 2023) involved bare allegations that "the defendants [CEO, CFO] were 'hands-on'
or 'autocratic' leaders" and in *M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635424,
26    at *14 (C.D. Cal. Aug. 20, 2017) that "the [CEO's, CFO's] core-function . . . is to monitor and
ensure adequate internal controls of the Company," and, "therefore, that the individual Defendants
27    knew of the internal control failures."

28                       PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

default was a serious concern given SunPower's precarious cash position and its likely inability to access more cash from other sources. ¶¶76, 78, 80-81, 83, 85, 88-89. Moreover, SunPower's compliance is tied to EBITDA. ¶¶32-33. But SunPower kept decreasing its EBITDA guidance throughout 2023. ¶¶47-48, 50. Defendants thus understood how close the Company was to violating those covenants—and the importance of speaking truthfully when describing compliance—yet omitted this key information in its 8-K. Such reckless disregard can be proven "'if [a defendant] had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.'" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010); *Howard*, 228 F.3d at 1064. But here, that Defendants "published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter." *Immune Response*, 375 F.Supp.2d 983, 1022 (S.D. Cal. 2005).

      3) <u>Defendants Were In Possession Of Contemporaneous, Contradictory Information When They Made The False And Misleading Statements About SunPower's Cash Position.</u>

      Those same statements support scienter regarding SunPower's cash position. At the time, Defendants knew SunPower could not pay key vendors.  ¶¶76, 78-79, 80, 82-83, 85, 91, 98. The claim that the "disclosures indicate that SunPower withheld payment due to a dispute over Maxeon's contract breach, and no FE alleges that SunPower was unable to pay" (MTD at 14) is not true. The FEs reveal SunPower could not pay many providers, including Maxeon, and was scrambling for sources of equity to bridge that deficit.[8] ¶¶82-83, 85, 91. Such "[p]articularized allegations that defendants had 'actual access to the disputed information'" gives rise to "scienter." *Mulderrig v. Amyris, Inc*., 492 F.Supp.3d 999, 1026 (N.D. Cal. 2020). The FAC also "alleges a motive" (*contra* MTD at 8, 15), that SunPower faced intense existential strains and concealed an

---

[8] Defendants' loss causation argument that the nonpayment was disclosed to the market (MTD at 14 n.2) is a "truth on the market" defense premature on a motion to dismiss. *City of Birmingham Relief v. Acadia Pharms. Inc.*, 2022 WL 4491093, at *11 (S.D. Cal. Sept. 27, 2022).  Moreover, by raising loss causation issues in a footnote, Defendants have waived it. In any event, no prior disclosure offered the "same information"; the November 15 disclosure, for instance, gave far more dire information that SunPower was forced to issue Maxeon "warrants for 1,700,000 shares of the Company's common stock." ¶114.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    increasingly dire cash position. *SEC v. Spiegel, Inc.*, 2003 WL 22176223, at *22 (N.D. Ill. Sept.

2    15, 2003) (a "going concern opinion" is "universally dreaded by corporate management"); *In re*

3    *LDK Solar*, 584 F.Supp.2d 1230, 1247 (N.D. Cal. 2008) (motive to misstate financials to attract

4    investors in competitive market); *Nguyen v. Radient Pharm.*, 2011 WL5041959, at *8-9 (C.D. Cal.

5    Oct. 20, 2011) ("possible motive" to obtain financing combined with "red flags"). It also explains

6    the motive to reassure investors after needing to restate financials and endangering SunPower's

7    credit. *Oracle II*, 527 F. Supp. 3d at 1185 (motive to buy time for disclosed strategy to succeed).

8    **B. Plaintiffs Have Standing.**

9         Defendants claim that "Lemou, the remaining lead plaintiff, cannot allege an injury

10   because he sold all his SunPower shares before the first alleged corrective disclosure" and

11   "therefore lacks standing," and the FAC "should be dismissed." MTD at 5. Not so.

12        *First*, Lemou has losses in the class period incurred after SunPower's July 26, 2023

13   corrective disclosure and thus independently has standing. ¶¶48-49 (describing July 26 losses).

14   While placing this loss causation event outside the FAC's titled "loss causation" section was

15   perhaps mildly inartful drafting, this placement is of no legal significance—the FAC unmistakably

16   pleads losses caused on this date, at a time when Lemou held inflated SunPower shares.

17        *Second*, Defendants do not dispute that Suarez (the additional named plaintiff) has standing

18   as to the corrective disclosures, and "nothing in the PSLRA requires court approval for the addition

19   of additional named plaintiffs" with additional losses. *Hunt v. Bloom Energy Corp.*, 2021 WL

20   1110260, at *1 (N.D. Cal. Mar. 23, 2021). Defendants' cases (MTD at 5) stand for the

21   unremarkable proposition that where "the *sole* named plaintiff 'never had standing' . . . the district

22   court must dismiss the action." *Lierboe v. State Farm*, 350 F.3d 1018, 1023 (9th Cir. 2003). Lemou

23   is not the "sole" named plaintiff. "Defendants ignore the fact that [Suarez] remains a named

24   Plaintiff and since there has been no challenge to his standing to sue, the Court currently has subject

25   matter jurisdiction." *In re Impax Lab'ys*, 2008 WL 1766943, at *8 (N.D. Cal. Apr. 17, 2008).

26                                      **<u>CONCLUSION</u>**

27        The Court should deny Defendants' motion to dismiss.

28               PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

2

Dated: June 18, 2024                              Respectfully submitted,

3

4                                                 **POMERANTZ LLP**

5                                                 */s/ Austin P. Van*

6                                                 Jeremy A. Lieberman
                                                  (*pro hac vice* application forthcoming)
7                                                 Austin P. Van
                                                  (*pro hac vice*)
8                                                 Samantha Daniels
                                                  (*pro hac vice*)
9                                                 600 Third Avenue, 20th Floor
10                                                New York, New York 10016
                                                  Telephone: (212) 661-1100
11                                                Facsimile: (917) 463-1044
                                                  jalieberman@pomlaw.com
12                                                avan@pomlaw.com
                                                  sdaniels@pomlaw.com
13

14                                                Jennifer Pafiti (SBN 282790)
                                                  1100 Glendon Avenue, 15th Floor
15                                                Los Angeles, California 90024
                                                  Telephone: (310) 405-7190
16                                                jpafiti@pomlaw.com

17                                                *Counsel for Bezeyem Lemou and*
18                                                *Co-Lead Counsel for the Class*

19                                                PORTNOY LAW FIRM
                                                  Lesley F. Portnoy, Esq.
20                                                1800 Century Park East, Suite 600
21                                                Los Angeles, California 90067
                                                  Telephone: (310) 692-8883
22                                                lesley@portnoylaw.com

23                                                *Additional Counsel for Bezeyem Lemou*

24

25

26

27

28              PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS