KATHERINE L. HENDERSON, State Bar No. 242676
DYLAN G. SAVAGE, State Bar No. 310452
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: khenderson@wsgr.com
        dsavage@wsgr.com

JOHN I. KARIN (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com

*Attorneys for Defendants*
*SunPower Corporation,*
*Peter Faricy, and Elizabeth Eby*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SUNPOWER CORPORATION SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No.: 3:23-cv-05544-RFL<br><br>CLASS ACTION<br><br>DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>Hearing Date: July 30, 2024<br><br>Hearing Time: 10:00 a.m.<br>Dept.: Courtroom 15, 18th Floor<br>Judge: Hon. Rita F. Lin |

Defendants' Motion to Dismiss Reply                    Case No.: 3:23-cv-05544-RFL

**TABLE OF CONTENTS**

**Page**

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING. ..............1

II.   THE COMPLAINT FAILS TO STATE A CLAIM. ...........................................................2

    A.    The covenant statements should be dismissed for lack of falsity and
scienter. ...........................................................................................................2

        1.    The Complaint does not plead falsity for the covenant statements. ............2

        2.    The Complaint does not plead scienter for the covenant statements. .........6

    B.    The cash statements should be dismissed for lack of falsity and scienter...............7

        1.    The Complaint does not plead falsity for the cash statements. ...................7

        2.    The Complaint does not plead scienter for the cash statements................10

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Arch Ins. Co. v. M.V.C. Enters., Inc.*,
2022 U.S. Dist. LEXIS 240122 (C.D. Cal. Sept. 13, 2022) ................................................ 1

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .......................................................................................... 4

*Brendon v. Allegiant Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. 2019) ............................................................................... 6

*Brown v. Papa Murphy's Holdings Inc.*,
2021 WL 235865 (W.D. Wash. Jan. 12, 2021) ................................................................. 9

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*,
2022 WL 4491093 (S.D. Cal. Sept. 27, 2022) .................................................................. 9

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*,
2023 U.S. Dist. LEXIS 5136 (D. Ariz. Jan. 10, 2013) ...................................................... 9

*Cork v. CC-Palo Alto, Inc.*,
534 F. Supp. 3d 1156 (N.D. Cal. 2021) ............................................................................ 1

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) .......................................................................................... 6

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016) ................................................................... 10

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (2023) ...................................................................................................... 8

*Hatamian v. Advanced Micro Devices, Inc.*,
87 F. Supp. 3d 1149 (N.D. Cal. 2015) ........................................................................ 5, 6

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ........................................................................................ 6

*Hunt v. Bloom Energy Corp.*,
2021 WL 1110260 (N.D. Cal. Mar. 23, 2021) ................................................................. 2

*In re Aceto Corp. Sec. Litig.*,
2021 U.S. Dist. LEXIS 183203 (E.D.N.Y. Mar. 16, 2021) ................................................ 3

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................................................... 8

*In re Diamond Foods, Inc. Sec. Litig.*,
2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) ................................................................. 6

*In re Emergent BioSolutions Inc. Sec. Litig.*,
2023 WL 5671608 (D. Md. Sept. 1, 2023) ...................................................................... 6

*In re Immune Response Sec. Litig.*,
　375 F. Supp. 2d 983 (S.D. Cal. 2005) ...................................................................................... 6

*In re Impax Lab'ys, Inc. Sec. Litig.*,
　2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ........................................................................ 2

*In re LendingClub Sec. Litig.*,
　254 F. Supp. 3d 1107 (N.D. Cal. 2017) .................................................................................. 6

*In re Pac. Gateway Exch., Inc. Sec. Litig.*,
　2002 U.S. Dist. LEXIS 8014 (N.D. Cal. Apr. 30, 2002).......................................... 7, 9, 10

*In re Quality Sys., Inc. Sec. Litig.*,
　865 F.3d 1130 (9th Cir. 2017).......................................................................................... 8, 9

*In re QuantumScape Sec. Class Action Litig.*,
　580 F. Supp. 3d 714 (N.D. Cal. 2022) .................................................................................. 5

*In re Syntex Corp. Sec. Litig.*,
　95 F.3d 922 (9th Cir. 1996)................................................................................................... 5

*Joyce v. Amazon.com, Inc.*,
　2023 U.S. Dist. LEXIS 215380 (W.D. Wash. Dec. 4, 2023)................................................ 6

*M&M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
　2017 U.S. Dist. LEXIS 222201 (C.D. Cal. Aug. 20, 2017) ............................................. 5, 7

*Mehedi v. View, Inc.*,
　2024 U.S. Dist. LEXIS 64818 (N.D. Cal. Apr. 9, 2024), *vacated on other
　grounds*, 2024 U.S. Dist. LEXIS 104897 (N.D. Cal. June 12, 2024) ................................. 2

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
　540 F.3d 1049 (9th Cir. 2008).............................................................................................. 9

*Mulderrig v. Amyris, Inc.*,
　492 F. Supp. 3d 999 (N.D. Cal. 2020) ............................................................................... 10

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
　780 F. App'x 480 (9th Cir. 2019)......................................................................................... 9

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
　759 F.3d 1051 (9th Cir. 2014)............................................................................................... 3

*Roberti v. OSI Sys., Inc.*,
　2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ...................................................................... 6

*Rutherford v. Gokstad Grp., L.P.*,
　2020 U.S. Dist. LEXIS 263847 (C.D. Cal. Dec. 11, 2020)................................................. 1

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016) .............................................................................................................. 2

*Wochos v. Tesla, Inc.*,
　985 F.3d 1180 (9th Cir. 2021)........................................................................................... 3, 7

Defendants' Motion to Dismiss Reply　　　　　　-iii-　　　　　Case No.: 3:23-cv-05544-RFL

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009).........................................................................................6

**STATUTES**

15 U.S.C. § 78u-5(i)(1)(A).................................................................................................7

In his Opposition (Dkt. 59, "Opp.") to Defendants' Motion to Dismiss (Dkt. 58, "Br."), Plaintiff Lemou tries to salvage his Complaint by ignoring the actual allegations in that Complaint, mischaracterizing Defendants' statements, and pretending Defendants hid information that was disclosed. Plaintiff's position—that the Court should ignore the entirety and context of Defendants' disclosures as well as the lack of any factual allegations contradicting the purported misstatements or concerning the Individual Defendants' knowledge—inverts the law.[1] The Complaint should be dismissed with prejudice.

## I.      THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING.

Plaintiff concedes a stockholder who sells before the alleged corrective disclosures lacks standing, and that he sold all of his SunPower stock by August 7, 2023. Opp. at 15; *see also* Dkt. 55-1. The Complaint alleges the "disclosure events occurr[ed] between November 15, 2023, and February 23, 2024," months after Lemou's last sale. ¶113. He thus lacks standing. Br. at 5.

Recognizing this, the Opposition tries to invent a "July 26, 2023 corrective disclosure." Opp. at 15. But the Complaint does not allege that any corrective disclosure occurred on July 26—in fact, *it affirmatively pleads nothing had been corrected then*. ¶11 ("Investors remained unaware that SunPower had made false and misleading statements and omissions in its SEC filings until November 15, 2023."); *see* ¶¶110-13. That is not "mildly inartful drafting" (Opp. at 15); it is a new (contradictory) allegation offered in opposition, which is prohibited. *See Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 & n.8 (N.D. Cal. 2021) ("complaint may not be amended by the briefs"); *Arch Ins. Co. v. M.V.C. Enters., Inc.*, 2022 U.S. Dist. LEXIS 240122, *14-15 (C.D. Cal. Sept. 13, 2022) (legal theories and factual allegations must both be pled); *Rutherford v. Gokstad Grp., L.P.*, 2020 U.S. Dist. LEXIS 263847, *8 n.3 (C.D. Cal. Dec. 11, 2020) (rejecting contradictory allegations in opposition).

Even were that not the case, Plaintiff *also* fails to allege the July 2023 stock drop was

---

[1] As Plaintiff did not oppose Defendants' request for judicial notice and incorporation by reference, it should be granted in its entirety. Dkt. 58-1. To be clear, Defendants do not "ask the Court to accept their subjective interpretation of the contents of the Exhibits" (Opp. at 10 n.4), but rather contend that the referenced documents and publicly available sources should be examined in full because they do not say what Plaintiff claims. Plaintiff's cited cases are distinguishable because the defendants there sought to disprove facts as alleged in the complaint under the guise of judicial notice or incorporation by reference. *Id.*

Defendants' Motion to Dismiss Reply                -1-              Case No.: 3:23-cv-05544-RFL

fairly traceable to any alleged fraud.  The only purported misstatement occurring before July 2023 concerned the Company's "current[] anticipat[ion]" that it would have sufficient "cash and cash equivalents" over the next twelve months.   ¶¶96-98; P.'s Chart.  But the July 2023 "corrective disclosure" did not concern the Company's cash position.  Rather, Plaintiff alleges the "corrective disclosure" was a "reduction in … guidance," which caused the stock to drop.  ¶¶48-49.  It is Lemou's pleading burden to establish injury traceable to the alleged fraud.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  He has not and cannot do so.

Adding Suarez as a new "named" plaintiff cannot rescue the case.   Br. at 5.  The Opposition ignores the critical distinction between preexisting named plaintiffs and new plaintiffs added through later amendment to "cure" a standing issue.  Opp. at 15; *Mehedi v. View, Inc.*, 2024 U.S. Dist. LEXIS 64818, *33 (N.D. Cal. Apr. 9, 2024), *vacated on other grounds*, 2024 U.S. Dist. LEXIS 104897 (N.D. Cal. June 12, 2024).  "Ninth Circuit precedent is clear that a new plaintiff ... cannot be added to save a lawsuit from dismissal where the sole named plaintiff never had standing." *Mehedi*, 2024 U.S. Dist. LEXIS 64818, at *7, 26 (rejecting similar attempt to add new "named Plaintiff").  Lemou's cited cases either were not about standing (*Hunt*) or involved at least one preexisting plaintiff who ***did*** have standing (*Impax*), unlike here.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM.

### A.    The covenant statements should be dismissed for lack of falsity and scienter.

#### 1.    The Complaint does not plead falsity for the covenant statements.

October 24, 2023 8-K.  Plaintiff concedes the Complaint alleges no facts showing that SunPower and Bank of America were not "currently negotiating the terms and conditions of a consent and waiver to address the effects of the Restatement under the Credit Agreement."  ¶102. *Compare* Br. at 6-7, *with* Opp. at 8-9.  Ignoring the actual statement and what it implied (that SunPower was concerned it might be deemed in breach and default as a result of the restatement and thus was negotiating waivers), Plaintiff again repeats the (unfounded) non-sequitur that the statement was "misleading" because it omitted that "SunPower was already in breach of its financial covenants" by the time the 8-K was filed.  Opp. at 8-9.  Critically, the Complaint does not contain any facts showing that it had been determined by October 24, 2023 that SunPower

Defendants' Motion to Dismiss Reply                    -2-                    Case No.: 3:23-cv-05544-RFL

was in breach; this is fatal. *Infra* at pp. 4, 6-7.[2]  Yet, even if it did, to be misleading, an omission must "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014).  Where statements that *were* made were accurate and "do not purport to speak" to the omitted information, they are "neither incomplete nor misleading." *Id*.  As the October 24, 2023 statement did not mention current compliance, it cannot be deemed misleading on this basis. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (rejecting attempt to "rewrite[]" statement to say something it did not); *In re Aceto Corp. Sec. Litig.*, 2021 U.S. Dist. LEXIS 183203, *24-29 (E.D.N.Y. Mar. 16, 2021) (rejecting argument that company had to disclose possible future breach where company said it was currently in compliance).

The Opposition argues, contrary to the allegations in the Complaint,[3] that the October 24, 2023 statement also created a misimpression that "the Company was only potentially in breach of *reporting* covenants."  Opp. at 9.  Again, the challenged statement does not reference compliance with covenants at all, let alone distinguish between financial or reporting ones. Plaintiff cherry-picks some references to "internal controls over financial reporting" and pretends SunPower did not also specify that its financial statements, including by implication the metrics calculated from those statements such as EBITDA which go directly to the financial covenants, would be restated for the affected periods.  Br. at 2-3, 7; Savage Decl., Ex. 10 at 1 (referencing the preliminary "expected *financial* impact of the errors described above" and that "subsequent discovery of additional adjustments to the Company's previously issued *financial* statements" could have adverse results (emphases added)).  No reasonable investor had "the positive impression that their investments had limited exposure to credit concerns" (Opp. at 9) where they were explicitly told SunPower was restating its financials and negotiating with its creditors for a waiver to address any effects of that restatement under the debt.

---

[2] The Opposition is also contradictory on this point, arguing without factual support that Defendants "had breached" as of October 24, 2023, was "verging on breaching" on that date, and "*did not know* whether SunPower was in compliance" on November 1, 2023.  Opp. at 12, 13.

[3] ¶3 (conceding the October 24, 2023 statement "reasonably suggested that SunPower was not yet in breach of its *financial* covenants and was seeking waivers to avoid *such* breach and default when it issued its restatement" (emphases added)).

Defendants' Motion to Dismiss Reply          -3-          Case No.: 3:23-cv-05544-RFL

Plaintiff's singular case as support only highlights what is missing. *Id.* In *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 984 (9th Cir. 2008), defendants released "backlog reports" purporting to describe forthcoming work, but multiple CWs showed defendants knew the "backlog" included millions in stopped work that "had been halted and was likely to be lost forever." *Id.* Having "chose[n] to tout the company's backlog, [defendants] were bound to do so in a manner that wouldn't mislead investors as to what that backlog consisted of." *Id.* at 987. By contrast, the October 24, 2023 statement does not "tout" or even mention current compliance with financial or reporting covenants—the scenario that *Applied Signal* itself distinguishes as ***not misleading***. *Id.*; *see also* Br. at 7 (collecting cases that Plaintiff does not address).[4]

November 1, 2023 Earnings Call. The Opposition attempts to add a new purported misstatement: Ms. Eby's remark that "we reached on all of those" covenants (Opp. at 6), which the Court should disregard because the Complaint does not allege the statement was false or misleading. ¶56 (not emphasized); ¶¶104-06 (not in falsity section); P.'s Chart (not included); *supra* at pp. 1-2. Plaintiff also omits Ms. Eby's clarification in the very next sentence: "Well, pending final adjustments." ¶56. No reasonable investor would have understood her to be guaranteeing "compliance with ... financial covenants" (Opp. at 6) post restatement where she was responding to a question on "where [they] stand relative to those today" and said any determination on "reaching" expressly remained subject to "adjustments." ¶56.

As to Ms. Eby's subsequent statement that "[w]e need to get to the final phase of they're always the backward looking and we're fine in Q3 and we're talking to the banks about waivers for the restatement … ," which responded to a follow up question about the covenants "through year end," Plaintiff takes her commentary about being "fine" in isolation and pretends this was some type of guarantee of compliance. ¶56. But the Complaint has no allegations showing on

---

[4] Plaintiff also argues that the going concern statements somehow made the covenant statements "all the more misleading." Opp. at 6, 9. But those statements were made months before the restatement was announced and do not mention the financial covenants, which depend on many variables other than cash. ¶¶31-35, 97, 100. SEC Regulation S-K Item 2.04 does not save the claim because the Complaint does not adequately allege that "the breach of financial covenants already was known." Opp. at 9 n.3; Br. at 8-10 & n.1; *infra* § II.A.2.

Defendants' Motion to Dismiss Reply              -4-              Case No.: 3:23-cv-05544-RFL

November 1, 2023 that SunPower's still-preliminary financials were not "fine in Q3," or that Defendants knew of any breach with respect to those Q3 financials. That SunPower disclosed in its December 18, 2023 10-Q that it was in breach of its financial covenants "as of" the compliance date (October 1, 2023), is irrelevant. Opp. at 6. Plaintiff must allege well-pled facts establishing the statement was false **when made**, which the Complaint fails to do. *See M&M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 U.S. Dist. LEXIS 222201, *25-26 (C.D. Cal. Aug. 20, 2017) (complaint "does not allege facts to suggest that the later-disclosed weaknesses existed ... at that time").

Moreover, a challenged statement must be "[v]iew[ed] ... in full and in context at the time it was made," *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929 (9th Cir. 1996); there is no exception for "comments [that are] specific and direct," and regardless Ms. Eby's statements are hardly "specific and direct" when viewed in entirety.[5] Opp. at 6. Unlike here, Plaintiff's cited cases involve statements made "without qualification," *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1159 (N.D. Cal. 2015), or qualifications so technical that their import "could only be determined by the combination of experts and confidential informants," *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 732-35 (N.D. Cal. 2022). Here, Defendants explained that "historical period financial information" was a "preliminary estimate" "pending the outcome" of the restatement, that SunPower "has not fully completed its review" and "subsequent discovery of additional adjustments" could have adverse results, that compliance with covenants was "pending final adjustments," and that SunPower "needed to get to the final phase" of the restatement because the covenants, which would be evaluated based on the final financials as of the end of Q3, were "backward looking." Savage Decl., Ex. 10 at 1; *id.*, Ex. 12 at 2; ¶56. Plaintiff has no response, except to try to obscure, misstate, or ignore the full statements, which cannot form the basis of a claim. Br. at 2-3, 7-9; Opp. at 6-7.[6]

---

[5] As noted, the phrase "we're fine in Q3" is too vague to be relied upon and thus fails as a matter of law. Br. at 7-8; Opp. at 7-8 & nn.1-2. The Opposition concedes that vague statements which are incapable of objective verification (*i.e.*, what exactly does "fine" in Q3 mean) couched in anticipatory language are inactionable. Opp. at 7-8.

[6] Plaintiff incorrectly implies Ms. Eby said "we need to get to the final quarter," when she

(continued...)

**2.**    **The Complaint does not plead scienter for the covenant statements.**

The Opposition identifies no facts regarding the Individual Defendants' knowledge when the covenant statements were made. Opp. at 12-15. On that basis alone, Plaintiff's allegations fail. Br. at 8-10. Plaintiff raises a straw man argument that "*if Eby did not know* whether SunPower was in compliance as of October 1, 2023, then Eby was at minimum *severely reckless*." Opp. at 12. But Plaintiff cannot rely on hypotheticals; he must allege ***particularized facts demonstrating that she was reckless given what she knew at the time***. No facts in the Complaint show Ms. Eby "fabricated a position on the fly" or suggest the information she had at the time was inconsistent with her statements. Opp. at 12. Instead, Plaintiff concedes that the final restatement issued several weeks after identified new issues that were not in the preliminary estimate, suggesting Ms. Eby later received new information, consistent with the qualifications and warnings that Defendants included with their statements. Br. at 3, 9; Opp. at 12-14. Plaintiff does not address Defendants' authority establishing that under such circumstances, the more plausible inference is not fraud. Br. at 9.

Lacking facts, Plaintiff relies on Ms. Eby's position as CFO, the "seven weeks" between the earnings call and the finalization of the restatement, and the bare fact that she spoke at all. Opp. at 12-13. No case Plaintiff cites found scienter solely on those grounds. Rather, those courts upheld scienter based on a host of factors indicating contemporaneous knowledge of the issues, including CW allegations that defendants were told of the issues, internal documents informing defendants of red flags, or defendants' admissions of improper behavior. *Id.* at 12-14 (citing *Advanced Micro Devices*; *Allegiant Travel*; *OSI Sys.*; *Diamond Foods*; *LendingClub*; *Howard*; *Immune Response*; *Emergent*); *see also Fecht v. Price Co.*, 70 F.3d 1078, 1082 n.4 (9th Cir. 1995) (pre-PSLRA case involving no "intervening" events). Plaintiff's attempt to distinguish Defendants' authority also fails, including because Plaintiff does not address *Zucco* (which is directly on point). Opp. at 13 n.7; *compare Joyce v. Amazon.com, Inc.*, 2023 U.S. Dist.

said "final phase," and that she conceded she had "all relevant backward looking information," which is nonsensical. Opp. at 6-7. Plaintiff's citation to an analyst report is odd given the report hedges on compliance saying "appears," does not distinguish between financial and reporting covenants, and acknowledges the restatement may impact compliance. ¶106; Opp. at 8.

Defendants' Motion to Dismiss Reply        -6-        Case No.: 3:23-cv-05544-RFL

LEXIS 215380, *42 (W.D. Wash. Dec. 4, 2023) (that defendants "[spoke] publicly" on a subject was insufficient for scienter); *M&M*, 2017 U.S. Dist. LEXIS 222201, at *42 (that executives were responsible for "ensur[ing] adequate internal controls" was insufficient for scienter).

Plaintiff argues (incorrectly) the FE statements about cash constraints somehow "reinforce an inference that Defendants knew or recklessly disregarded that SunPower had breached its financial covenants." Opp. at 13-14. Plaintiff's attempt to repurpose these statements fails because it is not alleged; to the contrary, Plaintiff's own Chart limits the FE allegations to the going concern statements. P.'s Chart. Regardless, none of the FEs even mentioned the financial covenants (¶¶72-91), and the only FE reference to the restatement—that it "'took a really, really long time' to conduct a 'deep dive' into the issues that led to the restatement" (¶84)—supports Defendants. Br. at 9. Compliance with the financial covenants depends on many variables other than cash as Plaintiff alleges (¶¶31-35), and the Complaint does not allege that lack of cash caused SunPower to breach the covenants. The Complaint thus offers nothing more than fraud by hindsight and must be dismissed.

**B.    The cash statements should be dismissed for lack of falsity and scienter.**

**1.    The Complaint does not plead falsity for the cash statements.**

Plaintiff does not dispute that the going concern statements incorporate classic forward-looking language such as "anticipate," "will," and "next 12 months," or address Defendants' multiple cases finding that similar going concern statements were forward-looking—one of which rejects the argument Plaintiff advances. *See In re Pac. Gateway Exch., Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 8014, *27-37 (N.D. Cal. Apr. 30, 2002) (rejecting that going concern statements were "designed to reassure investors ... that PGEX *presently* had enough cash to meet its needs"); Br. at 10-12; *see also* 15 U.S.C. § 78u-5(i)(1)(A). Plaintiff tries to side-step the safe harbor by interjecting the standard for opinion statements, arguing the statement is nonetheless actionable because "management is expressing a ***current*** belief in the accuracy of forecasts" that he alleges "is not genuinely held." Opp. at 11. But the safe harbor would never be applicable if that were the standard as all predictions and forecasts involve some element of current belief. *Tesla*, 985 F.3d at 1192 ("The statutory safe harbor would cease to exist if it could be defeated

simply by showing that a statement has the sort of features that are inherent in *any* forward-looking statement."); *compare In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) (discussing separate case involving statement about company's current cash "on hand").

Plaintiff also argues "the statements did not include sufficient cautionary language as it omitted that SunPower did not have the cash to pay key vendors." Opp. at 11. But meaningful cautionary language does not require that every detail of a company's finances be disclosed, SunPower did warn about not having sufficient cash "to meet [its] payment obligations," and Plaintiff ignores multiple cases finding similar language sufficient even though some of the risks had transpired. Br. at 4, 11-12. Also, Plaintiff does not identify a single vendor that was not eventually paid "because the Company did not have the cash," which is the only risk that would be relevant to the insolvency analysis. Plaintiff relies on cases that do not involve going concern statements, with particularized allegations that material warned-of risks had already occurred or had been specifically threatened at the time defendants described them as purely hypothetical; no such facts are present here. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1173 n.76 (C.D. Cal. 2008) (involving "particularized allegations that the unsound business practices had already been undertaken, making [the] statement false when made"); *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 780-81 (2023) (omitted "the specific risk to which Forescout had been alerted").

Even if not protected under either prong of the safe harbor (either of which independently precludes liability), the Opposition fails to identify particularized facts showing that the going concern statements were false when made. Br. at 11-14. Plaintiff's primary argument is that SunPower lacked the cash to pay Maxeon, but that is not supported by any well-pled allegation. Opp. at 10. Plaintiff ignores that Maxeon's disclosures attribute SunPower's non-payment to a contractual dispute, not an inability to pay, and they confirm that SunPower did resume payment as part of the parties' resolution. *Id.*; Br. at 11-12.[7] To try and bridge the gap, Plaintiff argues

---

[7] Independently, the Complaint does not plead loss causation with respect to the November 15, 2023 disclosure because SunPower's non-payment of Maxeon was disclosed months earlier. Br. at 14 n.2. Plaintiff argues this is a "truth on the market" defense (Opp. at 14 n.8), but the prior disclosure also undermines loss causation as a matter of law, as held in a case Plaintiff does
(continued...)

Defendants' Motion to Dismiss Reply     -8-     Case No.: 3:23-cv-05544-RFL

that "a FE confirmed SunPower lacked the cash to pay Maxeon." Opp. at 10. But the cited paragraph merely alleges that FE1 said "SunPower 'lost [its] contract' with Maxeon" (which is contrary to the Complaint and Maxeon disclosures) because of unspecified "payment issues." ¶¶91, 94. The Opposition cites irrelevant caselaw (*Quality Sys.*; *Brown*) and ignores Defendants' caselaw directly on point. Br. at 11-13; *Pac. Gateway*, 2002 U.S. Dist. LEXIS 8014, at \*38-52 (going concern statements not misleading despite undisclosed non-payments to vendors).

Plaintiff repeats the Complaint's FE allegations but neglects to address the deficiencies Defendants raised, namely: there are no allegations any of the FEs were involved in SunPower's going concern analyses; there are no allegations FE2 had an adequate view into SunPower's overall cash position given her limited role; FE2 did not specify when any delays in payment occurred; FE3 left SunPower months before the first going concern statement was made; FE4's allegations are consistent with SunPower's public disclosures; and FE4 does not allege that SunPower was "delinquent on payments to everybody" until five months after the last going concern statement. Br. at 11-14. Plaintiff's tepid response (unsupported by any citations to the Complaint) is the conclusory assertion that the FEs "possess the requisite personal knowledge" "[g]iven their day-to-day roles" (Opp. at 11 n.5), but more is needed to survive a motion to dismiss. Br. at 11-14. The assertion is also nonsensical. For instance, FE3 could not possibly have personal knowledge of SunPower's cash position by virtue of a role she left months before the statements were made. Plaintiff ignores Defendants' cited authority and relies on inapposite cases involving allegations demonstrating the FEs' bases of personal knowledge, including statements they heard the defendants make. Opp. at 11 n.5 (citing *LifeLock*; *Quality Sys.*).

Lastly, Plaintiff's allegations simply do not make sense. Plaintiff relies on FE statements

not distinguish. Br. at 14 n.2 (citing *First Solar*). Plaintiff's cited case (*Acadia*) does not say the two arguments are mutually exclusive and instead centered on the plaintiff's argument that the first disclosure was in a limited forum, unlike here where the two disclosures are in the identical forum—Maxeon's public filings. Plaintiff cites no authority for the proposition that an argument in a footnote is waived, particularly where, as here, the footnote merely explained an additional implication of an argument raised in text. Finally, Plaintiff argues the November 15, 2023 disclosure indicated that SunPower issued warrants, but Plaintiff does not explain why that fact revealed the alleged falsity of the going concern statements. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062-65 (9th Cir. 2008) (no loss causation where disclosure of additional information had no bearing on truth of challenged statement).

concerning cash management and cost cutting, but the Complaint alleges that SunPower operated under cash constraints for years preceding the Class Period (¶¶77-81; Opp. at 10) and did not fail as a going concern.  The issue is not, as Plaintiff claims, that SunPower "had not yet felt the loss" of risks it warned of, but which had already transpired.  Opp. at 11 (quoting *Flynn*).  Rather, the challenged statements asserted that SunPower anticipated having sufficient cash for the next 12 months, which time has proven true.

### 2.     The Complaint does not plead scienter for the cash statements.

Plaintiff concedes he must allege actual knowledge if the going concern statements are forward-looking and that the Complaint (including the FE statements) offers nothing about the going concern analyses underlying the challenged statements, and thus offers nothing about "actual access to the disputed information."  *Compare* Br. at 14, *with* Opp. at 14-15.  Nor does Plaintiff address Defendants' cited cases that rejected CW allegations where the CWs had no direct contact with the defendants, did not tie their allegations to specific timeframes, or otherwise lacked requisite specificity.  Br. at 14-15; Opp. at 14-15.  *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1026-27 & n.20 (N.D. Cal. 2020), is inapposite because it involved "widespread and significant inflation of revenue" and the CWs could speak to the individual defendants' involvement in the revenue review process.

Plaintiff's new motive argument, that SunPower tried to "reassure investors," which is not pled and should not be considered, cannot save him.  Opp. at 14-15; P.'s Chart at 1-4.  The desire "to enhance a company's business prospects" "is an 'ordinary and appropriate' corporate objective, and such objectives, without more, cannot be alleged as motivations for fraud."  *See Pac. Gateway*, 2002 U.S. Dist. LEXIS 8014, at *56.  Plaintiff's cited cases involve allegations that the defendants were motivated to achieve more specific objectives, the courts required more than just motive, and none involve analogous situations where the Company repeatedly disclosed negative information at the same time, thereby undermining Plaintiff's motive allegations.

For the foregoing reasons, the Complaint should be dismissed with prejudice.[8]

---

[8] Plaintiff concedes the Rule 10b-5(a) and (c) scheme claims and Section 20(a) control person claims should be dismissed if the Rule 10b-5(b) claims are dismissed.  Br. at 15 n.3.

Defendants' Motion to Dismiss Reply                    -10-                    Case No.: 3:23-cv-05544-RFL

Dated: July 9, 2024

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Katherine L. Henderson*
    Katherine L. Henderson

*Attorneys for Defendants SunPower
Corporation, Peter Faricy, and Elizabeth Eby*

Defendants' Motion to Dismiss Reply    -11-    Case No.: 3:23-cv-05544-RFL