POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
Austin P. Van
(*pro hac vice*)
Samantha Daniels
(*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
avan@pomlaw.com
sdaniels@pomlaw.com

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE SUNPOWER CORPORATION SECURITIES LITIGATION | Case No.:  3:23-cv-05544-RFL |
| This Document Relates to: | **CLASS ACTION** |
| *ALL ACTIONS* | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CONSOLIDATION** |
| GABRIEL RODRIGUES, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br>v.<br><br>PETER FARICY, THOMAS WERNER, AND ELIZABETH EBY,<br><br>                Defendants. | Case No.: 5:24-cv-04896<br><br>**CLASS ACTION** |

**TABLE OF CONTENTS**

NOTICE OF MOTION ..................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.      PRELIMINARY STATEMENT ........................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................................. 4

III.    ARGUMENT ...................................................................................................................... 7

        A.      THE ACTIONS SHOULD BE CONSOLIDATED ............................................... 7

                1.      Both Actions Raise The Same Questions Of Law And Fact. ............................ 8

                2.      The Relevant Factors Weigh In Favor Of Consolidation. ............................... 10

IV.     CONCLUSION ................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Borenstein v. Finova Group, Inc.*,
  No. Civ. 00–619, 2000 WL 34524743 (D. Ariz. Aug, 30, 2020) ...................................................... 11

*City of Harper Woods Emps. Ret. Sys. v. AXT, Inc.*,
  No. 3:04-cv-04362, 2005 WL 318813 (N.D. Cal. Feb. 7, 2005) ....................................................... 7

*Dusky v. Bellasaire Invs.*,
  No. SACV07-874, 2007 WL 4403985 (C.D. Cal. Dec. 4, 2007) ........................................................ 8

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  No. 09 MDL 2058, 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010) ...................................................... 10

*In re Century Aluminum Co. Sec. Litig.*,
  No. C 09-1001, 2009 WL 2905962 (N.D. Cal. Sept. 8, 2009) ......................................................... 11

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  No. 12-CV-4081, 2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ..................................................... 10

*In re Int'l Rectifier Corp. Sec. Litig.*,
  No. CV07-02544-JFWVBKX, 2008 WL 4555794 (C.D. Cal. May 23, 2008) ............................... 10

*Invers. Rsch. Co. v. U.S. Dist. Ct. for the Cent. Dist. Of Cal.*,
  877 F.2d 777 (9th Cir. 1989) ........................................................................................................... 7

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
  No. 13-CV-05368, 2014 WL 2604991 (N.D. Cal. June 10, 2014) .........................................*passim*

*Mussetter Distrib., Inc. v. DBI Beverage Inc.*,
  No. CIV. 09-1442, 2009 WL 1992356 (E.D. Cal. July 8, 2009) ............................................. 12, 13

*Osher v. Guess?, Inc.*,
  No. CV01-00871, 2001 WL 861694 (C.D. Cal. Apr. 26, 2001) ..................................................... 8, 9

*Paraggua v. LinkedIn Corp.*,
  No. 5:12-CV-03088, 2012 WL 3763889 (N.D. Cal. Aug. 29, 2012) .............................................. 11

*Russo v. Finisar Corp.*,
  No. 5:11-cv-01252, 2011 WL 5117560 (N.D. Cal. Oct. 27, 2011) .................................................. 8

*Siegall v. Tibco Software, Inc.*,
  No. C 05-2146, 2006 WL 1050173 (N.D. Cal. Feb. 24, 2006) ..................................................... 8, 9

*Silver State Broad., LLC v. Carmel (In re Silver State Broad., LLC)*,
  Nos. NV-23-1111-NFB, 21-14978-ABL, 2024 Bankr. LEXIS 338 (B.A.P. 9th Cir.
  Feb. 13, 2024) ............................................................................................................................ 2

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................................................ 8, 9

*Thomas v. Magnachip Semiconductor Corp*.,
  No. 14-CV-01160-JST, 2015 WL 3749784 (N.D. Cal. June 15, 2015) .......................... 10

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. CV-07-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............................................. 8

*Yousefi v. Lockheed Martin Corp*.,
  70 F. Supp. 2d 1061 (C.D. Cal. 1999) ................................................................................ 8

**Statutes**

15 U.S.C. §§ 77z-1 ................................................................................................................... 7

15 U.S.C. § 78u-4 ............................................................................................................... 4, 7

Private Securities Litigation Reform Act of 1995 ....................................................... 7, 10, 12

**Rules**

Fed. R. Civ. P. 42 ........................................................................................................... 1, 4, 7, 12

## NOTICE OF MOTION

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on September 17, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Rita F. Lin, of the U.S. District Court for the Northern District of California, San Francisco Division, in Courtroom 15, 18th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Bezeyem Lemou and Daniel Suarez ("Plaintiffs") will and hereby do respectfully move this Court, pursuant to Rule 42 of Civil Procedure, for the entry of an Order: (1) consolidating the above-captioned related actions (the "Initial Action," and the newly-filed *Rodrigues* action, the "New Action," together, the "Related Actions"); and (2) permitting the submission of a Consolidated Second Amended Complaint.

This Motion is supported by the memorandum of points and authorities submitted herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

Initial Action Lead Plaintiffs Bezeyem Lemou and additional Plaintiff Daniel Suarez ("Plaintiffs") respectfully submit this memorandum of law in support of their Motion to Consolidate these Related Actions and to submit a Consolidated Second Amended Complaint.[1]

Counsel in the *Rodrigues* action does not oppose this Motion and the relief sought herein.

## I.    STATEMENT OF THE ISSUES TO BE DECIDED

Whether these Related Actions should be consolidated and the Plaintiffs permitted to submit a Consolidated Second Amended Complaint.

## II.    PRELIMINARY STATEMENT

On May 29, 2024, Plaintiffs in Case No. 3:23-cv-05544-RFL (the "Initial Action"), filed the Amended Class Action Complaint (the "Amended Complaint") that expanded the original Class Period based on facts that came to light during the investigation that Lead Counsel undertook to draft the Amended Complaint.  The gravamen of the allegations has been consistent from the filing of the initial

---

[1] Given the need to file a Consolidated Amended Complaint in light of the new allegations discussed below, consolidating these cases will moot Defendants' outstanding motion to dismiss. Initial Action Dkt. No. 58.

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FOR CONSOLIDATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 3:23-cv-05544-RFL; 5:24-cv-04896.

complaint through the filing of the Amended Complaint: that during the class period, SunPower[2] and its top executives omitted material information about the deterioration in its financial condition and performance while making affirmative statements about its financial health and future that artificially inflated the price of SunPower common stock. The risk of financial crisis that the Defendants concealed in failing to disclose the truth materialized in falling stock prices when the market recognized, at least in part, the true nature of SunPower's financial health.

As the Amended Complaint states, from the start of the class period in May 2023, SunPower exalted its liquidity strength, but behind the scenes confidential witnesses confirmed that SunPower was in a cash and equity crisis. This cash crisis implicated SunPower's financial covenants that depend on the Company's financial health metrics of liquidity, EBIDTA, and unrestricted cash. While CFO Elizabeth Eby assured the market in November 2023 that SunPower had the financial strength to comply with those covenants, in reality the Company was scrambling to secure waivers of its financial breaches that had occurred on October 1, 2023.

At the same time, while SunPower disclosed that it needed to restate its financials (meaning its report would be late), SunPower framed the problem as one about a non-cash reporting issue rather than about SunPower's true, dire financial health or cash position that would breach multiple financial covenants.

When the truth was revealed about SunPower's lack of cash to pay key suppliers, its going concern warning, its breaches of several financial covenants, and its expensive life raft cast by its parent

---

[2] As discussed in Plaintiffs' Notice in Response to SunPower's Suggestion of Bankruptcy (Initial Action Dkt. No. 64), Plaintiffs understand that the filing of SunPower's bankruptcy petition automatically stays the claims against the corporate "Debtor," Defendant SunPower, but only to SunPower. Neither of the Individual Defendants, Peter Faricy and Elizabeth Eby (nor defendant Werner in the recently filed *Rodrigues* New Action), have filed for bankruptcy. Accordingly, all of the claims against them remain and should move forward with respect to the Individual Defendants. *See Silver State Broad., LLC v. Carmel (In re Silver State Broad., LLC)*, Nos. NV-23-1111, 21-14978, 2024 Bankr. LEXIS 338, at *8-9 (B.A.P. 9th Cir. Feb. 13, 2024). For ease, the motion will refer to "SunPower," but includes the claims against the Individual Defendants that are not stayed.
In line with this understanding, Plaintiffs have filed a notice of voluntary dismissal against SunPower, seeking to dismiss the claims against it, the Debtor, while the claims against the Individual Defendants proceed. Initial Action Dkt. No. 65.

company diluting SunPower's shares, investors suffered from having relied on SunPower's false and misleading assurances.

Now, since the Amended Complaint was filed on March 29, 2024, even more negative, material information has come to light about Defendants' same fraudulent conduct.  In what one analyst report referred to as a "horror show" 8-K filing (filed surreptitiously after-market hours on July 3, 2024, before the national holiday), SunPower revealed that its auditor (Ernst & Young) resigned, citing management misconduct in reporting the company's financials, and that "information has come to its attention that has made Ernst & Young unwilling to be associated with the financial statements prepared by management."  The horror-show 8-K also revealed that, since February 28, 2024, the SEC has been investigating SunPower's accounting implicating the same fraudulent scheme.

On July 17, 2024, in what analysts are calling SunPower's final nail in the coffin, SunPower sent letters to its dealers announcing that it was canceling its operations, including new installations, leases, and shipments—a move one Guggenheim analyst declared "effectively marks the end for SPWR as an operating business," and "considering the debt that the company has accumulated, we believe that SPWR's equity no longer has any value, and our price target is now $0."

Before that, on February 26, 2024 and May 24, 2024, SunPower fired its CEO and COO. SunPower also revealed that it needs to restate its financials *from the last two years* due to financial misstatements and lodged two notices of deficiency from Nasdaq for failing to file any required financial statements from this year.  SunPower's strategy to avoid detection has been to delay issuing financial information, and even once restated, citing the need to re-restate them again.

These recent revelations are the product of the same concerted effort by SunPower to keep investors in the dark about the true state of its business, most notably its cash position and breaches of several financial covenants that powered its now worthless business.  Like most fraudulent schemes, however, SunPower's gamesmanship has finally caught up with it:  on August 5, 2024, SunPower was forced to file for bankruptcy.

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FOR CONSOLIDATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 3:23-cv-05544-RFL; 5:24-cv-04896.

These new facts thus are more instances of the *same fraud* alleged in Plaintiffs' Amended Complaint filed in the Initial Action.  As a result, Plaintiffs sought permission from Defendants to file a Second Amended Complaint incorporating these latest facts.  Defendants, however, refused to grant permission.

On August 8, 2024, the Law Offices of David N. Lake filed another action (the "New Action"), in the same District, assigned to the same Court, against the same Defendants, based on the same allegations in the Amended Complaint:  *Rodrigues v. Faircy et al*, No. 5:24-cv-04896-EKL.[3]  This New Action puts forth the same legal claims, based on the same legal theories, and is against the same defendants as Plaintiffs' action.  The New Action's main difference was to expand the class period (from May 3, 2024 to July 19, 2024) to encompass these newer, post-Amended Complaint developments (*i.e.*, those developments occurring after the Amended Complaint was filed on March 29, 2024) that Plaintiffs previously sought to include in a Second Amended Complaint.

Unlike Defendants, counsel for the New Action stated they do not oppose consolidation of both actions and the filing of a Consolidated Second Amended Complaint that would encompass this same pattern of misconduct.  Plaintiffs for the Initial Action now seek to file a Consolidated Second Amended Complaint to eliminate obvious redundancy and preserve the time and resources of the Court.

### III.    STATEMENT OF FACTS

On January 29, 2024, this Court previously recognized identical actions in the Initial Action should be "consolidated for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure," and "appointed" Lead Plaintiff in the Initial Action "and any subsequently filed or transferred actions that are consolidated with the Consolidated Action, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)."  Defendants did not object to that consolidation.  Initial Action Dkt. No. 27 at 1, 4.

On December 6, 2023, an initial complaint was filed in the Initial Action on behalf of a purported Class that purchased SunPower's common stock between March 9, 2023 and October 24, 2023.  The

---

[3] Counsel for the New Action initially filed the complaint on August 6, 2024 under the name and case number *Rodrigues v. SunPower Corporation*, No. 3:24-cv-04775-RFL, assigned to Judge Lin, but voluntarily dismissed this action and refiled after SunPower's notice of bankruptcy.  It thus removed SunPower as a Defendant in light of the automatic stay.

4

gravamen of that initial complaint was that SunPower misled investors regarding the material weaknesses plaguing its financial reporting and that the Company had inaccurately reported those finances, harming investors that had reasonably relied on the Company's rosy statements about the business and its prospects.

Yet shortly after the initial complaint was filed, SunPower's subterfuge over its financial standing continued. On December 11 and 18, 2023, SunPower revealed it had breached key financial covenants endangering its credit agreements—despite prior assurances to the contrary. On December 18, 2023, SunPower disclosed it had been in breach as of Q3 2023 (on October 1, 2023), permitting lenders to demand immediate repayment of loans that the Company could not possibly repay immediately. What is more—contrary to the positive statements about SunPower's "cash and cash equivalents"—the Company was forced to issue a "going concern" warning finally admitting its dire cash position. These announcements shook the market and caused SunPower's share price to substantially depreciate, with the share price plunging from $6.14 to $4.22, or over 31%, on this news.

Further, on February 15 through February 24, 2024, SunPower revealed that it had obtained permanent waivers of the events of default, but the relief came at a steep cost: the Company was forced to issue warrants to its lenders that gave them the right to buy huge amounts of equity at below-market prices, thereby diluting existing shareholder value. Upon announcement of this expensive life raft and its consequences, SunPower's share price fell from $4.26 to $3.18, or 25.4%.

The Amended Complaint, filed on March 29, 2024, captured these additional falsehoods about SunPower's financial condition, with a class period extending from May 3, 2023 to February 14, 2024. Initial Action Dkt. No. 51.

But yet again, soon after that Amended Complaint was filed, the scope of SunPower's financial fraud was further revealed. On April 23, 2024, the Company revealed that its financials for the last two years could no longer be relied upon, triggering the need for further restatement. Then, on July 3, 2024, SunPower—in a surreptitious 8-K filing issued after the markets closed and right before the July 4 holiday—revealed that its auditor, Ernst & Young, was resigning, citing alleged "misconduct" by

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FOR CONSOLIDATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 3:23-cv-05544-RFL; 5:24-cv-04896.

corporate management in providing the financial information needed to audit the Company's financials. In that same 8-K, SunPower dropped another bomb by revealing that the SEC has been investigating the Company for its "accounting" practices—and had been since *as early as February 28, 2024*, when the Company received an SEC document subpoena.  On the first trading day after the July 4 holiday, in response to what one analyst dubbed a "horror show" 8-K, SunPower's stock dropped 22%, or to $2.08, on this news.

Then, on July 18, 2024, it was reported that, on July 17, 2024, SunPower had sent a letter to its dealers advising them that the Company would no longer be supporting new solar leases or power purchase agreements, an admission that SunPower would not be acquiring any new customers.  The letter also disclosed that SunPower could not support installation of panels that had been delivered but not yet installed, an admission the Company was halting ongoing projects.  In response to this news, *SunPower's stock plummeted 75%* to $0.68, the Company's worst week on record.  This prompted several analysts to cut the Company's price target from $1 to zero—meaning SunPower stock was essentially worthless.

Given these latest revelations following the Amended Complaint, Plaintiffs intend to file a Second Amended Complaint that would expand the Class Period by alleging that, consistent with the misleading statements made earlier in the Class Period, SunPower continued to mislead investors about its financial condition from May 3, 2023 to July 19, 2024.

On July 31, 2024, Plaintiffs asked Defendants to consent to the filing of a Second Amended Complaint to incorporate these latest developments.  Defendants, however, declined to stipulate to this amendment.

On August 8, 2024, the Law Offices of David N. Lake filed another action in the same District, assigned to the same Court, against the same Defendants, based on the same allegations in the Amended Complaint. *Rodrigues v. Faricy et al.*, 35:24-cv-04896-EKL, which counsel for the New Action labeled as "related" to this Initial Action (New Action Dkt. No. 2).  This New Action puts forth the same legal claims, based on the same legal theories, and is against the same defendants as Plaintiffs' action.  The

New Action's *only* material difference was to expand the class period to encompass these newer, post-Amended Complaint developments (*i.e*., those allegations occurring after the Amended Complaint was filed on March 29, 2024) that Plaintiffs previously sought to include in a Second Amended Complaint.

On August 9, 2024, counsel for the New Action stated they do not oppose consolidation of both actions. Plaintiffs for the Initial Action now seek to file a Consolidated Second Amended Complaint, harmonizing these actions.

## IV.    ARGUMENT

### A.    THE ACTIONS SHOULD BE CONSOLIDATED

As the Ninth Circuit has explained, courts have "broad discretion . . . to consolidate cases pending in the same district." *Invers. Rsch. Co. v. U.S. Dist. Ct. for the Cent. Dist. Of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). Under Federal Rule 42, consolidation of cases is proper where, as here, the actions involve "common question[s] of law and fact" such that consolidation would prevent unnecessary cost or delay in adjudication. Fed. R. Civ. P. 42(a).

The PSLRA "does not displace the traditional legal standards for consolidation" under Rule 42(a), but similarly contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed." 15 U.S.C. §§ 77z-1(a)(3)(A)(ii), 78u-4(a)(3)(A)(ii); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368, 2014 WL 2604991, at \*2 (N.D. Cal. June 10, 2014). In fact, courts recognize that class action shareholder suits are "particularly well suited to consolidation" because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned. *Fusion-io*, 2014 WL 2604991, at \*4; *see also City of Harper Woods Emps. Ret. Sys. v. AXT, Inc.*, No. 3:04-cv-04362, 2005 WL 318813, at \*3 (N.D. Cal. Feb. 7, 2005) (finding that consolidating securities class actions "would expedite pretrial proceedings and reduce case duplication, thereby conserving judicial resources").

If a common issue of law or fact exists, a court weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause in determining whether

to consolidate.  A court should consider the following factors in addressing whether or not to consolidate: (1) the risk of delaying trial; (2) the risk of prejudice and confusion; and (3) the potential burden on the parties, witnesses, and available judicial resources. *See Dusky v. Bellasaire Invs.*, No. SACV07-874, 2007 WL 4403985, at *2 (C.D. Cal. Dec. 4, 2007).

As discussed below, the Related Actions involve virtually identical issues of law and fact, and the relevant factors weigh in favor of consolidation.

1.     <u>Both Actions Raise The Same Questions Of Law And Fact</u>.

Where, as here, both "actions present virtually identical factual and legal issues . . . [they] should be consolidated." *Russo v. Finisar Corp.*, No. 5:11-cv-01252, 2011 WL 5117560, at *3 (N.D. Cal. Oct. 27, 2011); *Osher v. Guess?, Inc.*, No. CV01-00871, 2001 WL 861694, at *2 (C.D. Cal. Apr. 26, 2001) (consolidating where actions "involve virtually identical claims"); *Siegall v. Tibco Software, Inc.*, No. C05-2146, 2006 WL 1050173, at *2 (N.D. Cal. Feb. 24, 2006) ("[A]ctions present substantially similar, if not identical, factual and legal claims against the same defendants."); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999).  Moreover, "consolidation is often warranted where multiple securities fraud class actions 'are based on the same public statements and reports.'" *Guess?*, 2001 WL 861694, at *2 (quoting *In re Microstrategy Inc. Sec. Litig.*, 110 F.Supp.2d 427, 431 (E.D. Va. 2000)); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999); *Fusion-io*, 2014 WL 2604991, at *3 (finding common factual issues in related actions as they each arise out of the "same alleged misstatements").

That is the case here.  Both actions are perfectly suited for consolidation as both allege the same violations of law (Sections 10(b) and 20(a) of the Exchange Act) by the same Defendants (SunPower, the CEO, and the CFO[4]) during overlapping time periods, based on the same underlying operative facts

---

[4] The New Action Complaint includes CEO Werner as an additional defendant because Werner was only appointed CEO in late March, and allegations of his misconduct did not come to light until recently. *E.g.*, New Action Complaint ¶¶ 31, 33, 88. In any event, courts recognize that "minor differences in . . . named individual defendants are no obstacles to consolidation" when they share a common factual basis. *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204, 2008 WL 942273, at *1 (D. Ariz. Apr. 7, 2008). In addition, any consolidated pleading can be expected to share all individual defendants in common, including Mr. Werner.

8

and circumstances.  New Action Complaint ¶¶ 1-19, Initial Action Complaint ¶¶ 40-70, recitals (defining class period).  In fact, both complaints allege virtually *identical* theories of fraud based on substantially *identical* public statements at issue from the same period from May 3, 2023 to March 29, 2024, addressed in the Amended Complaint.  New Action Complaint ¶¶ 1-19, 133-48, Initial Action Complaint ¶¶ 40-70, 96-106, 110-135, 148-165, recitals (defining class period).  As "the complaints assert violations of sections 10(b) and 20(a) of the Exchange Act, based upon identical allegations of misrepresentations and omissions on the part of Defendant" SunPower, "consolidating these cases for all purposes will be the most efficient solution, and will ease the litigation burden on all parties."  *Guess?*, 2001 WL 861694, at *2; accord *Tibco Software*, 2006 WL 1050173, at *2; *Turbodyne Technologies*, 67 F. Supp. 2d at 1133; *Fusion-io*, 2014 WL 2604991, at *3.

As discussed, the main difference between the Related Actions is that the New Action has the benefit of incorporating the latest incidents of the same and continuing fraud after the Amended Complaint was filed on March 29, 2024.  "Courts have generally held that differing class periods alone will not defeat consolidation or create a conflict."  *Guess?*, 2001 WL 861694, at *2 (quoting *Turbodyne Technologies*, 67 F. Supp. 2d at 1133).  That is particularly appropriate here, where the new developments occurring after the Amended Complaint simply are new instances of the same fraudulent conduct.  From the filing of the first case in the Initial Action, the core factual allegations have remained the same, *i.e.,* that throughout 2023 and 2024, SunPower misled investors about its financial health, thereby inflating its stock price and damaging investors.  The most recent revelations (after March 29, 2024, the date the Amended Complaint was filed) proffer additional details of *how* SunPower misled investors, culminating in an end to this gamesmanship through bankruptcy.  Of course, those new facts simply clarified the *same type* of misconduct that occurred during the *same time* periods alleged in the Amended Complaint.  *Fusion-io*, 2014 WL 2604991, at *3 (granting motion to consolidate "because all three cases arise from the same conduct by Defendants").

Furthermore, where, as here, the cases are subject to the PSLRA:  "[A] lead plaintiff is empowered to control the management of the litigation as a whole.  Permitting other plaintiffs to bring

9

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FOR CONSOLIDATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 3:23-cv-05544-RFL; 5:24-cv-04896.

additional class actions now, with additional lead plaintiffs and additional lead counsel, would interfere with Lead Plaintiffs' ability and authority to manage the [Action]." *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010).  Late-to-the-show "[p]laintiffs cannot displace Lead Plaintiff[] from [its] leadership role by laying claim to representation of a supposedly more inclusive class." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, No. 12-CV-4081, 2013 WL 4399215, at *6 (S.D.N.Y. Aug. 13, 2013). To rule otherwise would allow lawyer-driven litigation that the PSLRA seeks to avoid and would encourage the filing of tag-along actions each time new facts emerge (as occurred here), and interfere with a Court-appointed Lead Plaintiff's ability to effectively manage the existing litigation in an efficient manner, which is not in the best interests of the putative Class.  Recognizing this wisdom, and the near-complete overlap between the actions, counsel for the New Action does not oppose consolidation under the leadership of current Plaintiffs.[5]

Because the Related Actions arise out of the same law and facts, consolidation is warranted.

### 2. The Relevant Factors Weigh In Favor Of Consolidation.

"In determining whether to consolidate cases, the court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." *Fusion-io*, 2014 WL 2604991, at *2.  Each concern endorses consolidation here.

---

[5] In such circumstances, following the PSLRA, courts have made clear that the mere "expans[ion] of the class period" does not alone create a need to re-publish the notice to appoint a new Lead Plaintiff. *Thomas v. Magnachip Semiconductor Corp*., No. 14-CV-01160, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2015) ("In general, republication is not required where a complaint expands the class period or includes an additional defendant or a closely related new claim."); *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV07-02544, 2008 WL 4555794, at *23 (C.D. Cal. May 23, 2008) (declining to require the plaintiffs to republish notice to class members or dismiss the complaint when the amendments to the pleading extended the class period but did not otherwise change the legal theories or facts giving rise to the action). Here, the Court has already determined that the previously published notice was adequate, that Lead Plaintiff is adequate to represent the Class, and their selected counsel, Pomerantz LLP as Lead Counsel, is adequate to protect the interests of the Class and to prosecute claims related to Defendants' misrepresentations regarding SunPower's false and misleading statements.  That remains true, as Plaintiffs in the Initial Action will amend their Amended Complaint to incorporate these new allegations and thus represent class members with losses in this more recent period.

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FOR CONSOLIDATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 3:23-cv-05544-RFL; 5:24-cv-04896.

*First*, consolidation would not risk delaying the trial.  Here, the Related Actions are both at the pleadings stage.  In the New Action, defendants have yet to file an answer or responsive motion. Moreover, discovery concerning the Related Actions will be parallel as they arise from the same nucleus of operative facts.  Therefore, consolidation would not cause a delay.  *See Paraggua v. LinkedIn Corp.*, No. 5:12-CV-03088, 2012 WL 3763889, at *1 (N.D. Cal. Aug. 29, 2012) (finding no basis that "consolidation would cause inconvenience, delay or expense" as the related actions are at the same procedural stage with parallel discovery issues).

*Second*, consolidation would not risk prejudice or confusion.  Indeed, prejudice and confusion (and considerable inefficiency) would result from a failure to consolidate the actions.  As discussed above, the Related Actions are inextricably linked to SunPower's false and misleading statements about its financial condition, and after Plaintiffs amend to include SunPower's actions following the filing of the operative Amended Complaint, the class periods in both Actions will be identical.  As a result, maintaining the Court-appointed leadership structure through consolidation will not prejudice the interests of the new plaintiff and that of other class members.  Indeed, as discussed, the interests of the purported class members in the New Action directly align with that of Plaintiffs as the underlying allegations both actions raise virtually identical factual and legal issues in seeking the recovery from the same core defendants.  *See Borenstein v. Finova Group, Inc.*, No. Civ. 00–619, 2000 WL 34524743, at *5 (D. Ariz. Aug, 30, 2020) (finding no prejudice and consolidating securities class actions even with separate Securities Act and Exchange Act claims where "actions share a common factual basis"); *In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001, 2009 WL 2905962, at *2 (N.D. Cal. Sept. 8, 2009) (consolidating cases even where they separately assert Securities Act and Exchange Act claims for "the claims in all cases revolve around whether [defendant] materially misrepresented its financial condition").  Indeed, consolidation would only aid the new plaintiff, as the Initial Action incorporates statements from four confidential witnesses that would serve the new plaintiff's claims.  As noted, counsel for the new plaintiff does not opposite the request for consolidation.

What is more, the risk, if any, of prejudice to the new plaintiff and/or any other class member, would be substantially outweighed by the risk of "inconsistent judgments" of the factual and legal issues between the Related Actions. *See Mussetter Distrib., Inc. v. DBI Beverage Inc.*, No. CIV. 09-1442, 2009 WL 1992356, at \*5 (E.D. Cal. July 8, 2009) ("[C]entralizing the adjudication of similar cases will also 'avoid the possibility of inconsistent judgments.'") (citing *In re Genesisintermedia, Inc. Sec. Litig.*, No. 01-9024, 2003 WL 25667662, at \*4 (C.D. Cal. June 12, 2003)); *Argonaut Ins. Co. v. Mac Arthur Co.*, No. 12-3878, 2002 WL 145400, at \*4 (N.D. Cal. Jan.18, 2002) ("The best way to ensure consistency is to prevent related issues from being litigated in two separate venues."). The confusion that undoubtedly would stem from these inconsistent judgments, too, favors consolidation.

*Third*, the potential burden on the parties, witnesses, and judicial resources favors consolidation. As noted above, the Court has appointed the leadership structure in the Initial Action pursuant to the statutory requirements of the PSLRA. Plaintiffs are expeditiously and efficiently prosecuting claims on behalf of all shareholders who may have been injured by purported violations of the securities laws allegedly committed by Defendants. Consolidating both actions will only serve to facilitate that process.

If anything, permitting the cases to proceed separately would burden the parties. At this stage, the Initial Action has progressed beyond the PSLRA lead plaintiff process, and Plaintiffs have already filed the FAC. To that end, Plaintiffs have expended time and resources in order to maximize Plaintiffs' ability to prosecute the claims and protect the interests of the Class. Bifurcating the Related Actions would require multiple sets of experts for each action, despite the near identical factual and legal issues described above. Such duplication of effort would thus expend unnecessary resources and only provide a disservice to the Class.

Further "[c]ourts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved." *Fusion-io*, 2014 WL 2604991, at \*3. Indeed, to require the parties to litigate the Related Actions separately despite the substantially similar, if not

identical, issues, would result in a significant duplication of effort and waste of resources by the Court and parties, particularly in a securities class action where both plaintiffs and defendants will likely be required to provide expert reports pertaining to complex financial issues. Because the evidence, discovery, defenses, and witnesses will be substantially similar, if not identical, in both actions, consolidating the Related Actions is appropriate. *See Mussetter Distrib.*, 2009 WL 1992356, at \*5 ("[A]djudication of these common questions in a single forum will promote judicial economy . . . .").

## V.   CONCLUSION

Plaintiffs respectfully submit that the Initial Action and the New Action should be consolidated, and Plaintiffs be allowed to file a Consolidated Second Amended Complaint incorporating recent developments that constitute more instances of the same fraud alleged.

Dated:  August 13, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Austin P. Van*

Austin P. Van
(*pro hac vice*)
Samantha Daniels
(*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
avan@pomlaw.com
sdaniels@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Plaintiffs*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.

1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Bezeyem Lemou*

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FOR CONSOLIDATION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT - 3:23-cv-05544-RFL; 5:24-cv-04896.

**PROOF OF SERVICE**

I hereby certify that on August 13, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*

Jennifer Pafiti

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FOR CONSOLIDATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 3:23-cv-05544-RFL; 5:24-cv-04896.