# EXHIBIT 2

# MONTEVERDE & ASSOCIATES PC
## ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE, SUITE 4740
NEW YORK, NEW YORK 10118

**Beth A. Keller**
bkeller@monteverdelaw.com

June 17, 2024

**VIA FEDERAL EXPRESS**

Thomas Werner
Principal Executive Officer and Executive Chairman
SunPower Corporation
880 Harbour Way South, Suite 600
Richmond, California 94804

SunPower Corporation
c/o Registered Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

> **Re**:   **Stockholder Demand for Inspection of Corporate Books and Records Pursuant to 8 Del. C. § 220**

Dear Mr. Werner and Board of Directors:

The undersigned attorneys represent Gabriel Rodrigues ("Stockholder" or "Mr. Rodrigues"), a beneficial stockholder of SunPower Corporation ("SunPower," "SPWR" or the "Company"), as evidenced by the true and correct excerpt of his brokerage account statement, which accompanies his enclosed Declaration and Power of Attorney. Mr. Rodrigues has continuously held Company shares since February 29, 2024.

This communication constitutes a Demand to inspect the Company's books and records pursuant to Section 220 of the Delaware General Corporation Law to facilitate Stockholder's investigation of possible violations of law described herein, and for other proper purposes ("the Demand").

## I.   PURPOSE FOR THE SECTION 220 DEMAND

The purpose of the Section 220 demand for an inspection is to investigate possible mismanagement and/or breaches of fiduciary duty and violations of Delaware and federal law by SunPower's Board and/or Company officers as discussed herein, after which investigation Stockholder may, as appropriate, file suit, make a demand upon the Board, suggest governance

---

Telephone (914) 752-3040          www.monteverdelaw.com          Facsimile (914) 752-3041

June 17, 2024
Page 2 of 13

improvements, communicate with other shareholders, seek an audience with the Board or take other steps, as enumerated below.

## II.      **DEMAND FOR SECTION 220 INSPECTION**

### A.      *Introduction*

SunPower, a Delaware corporation headquartered in Richmond, California, trades on the Nasdaq Stock market under the symbol "SPWR."  The Company provides photovoltaic ("PV") solar energy generation systems and battery energy storage products.  Its solar solutions are designed for residential customers, with PV systems that convert sunlight into electricity using semiconducting materials.

At the time Stockholder purchased his shares (which, that day, hit a high of $3.69 per share), SunPower Stockholders had good reason to be optimistic as a new CEO, Mr. Werner, had been appointed on February 26, 2024.  A press release issue that day quoted Mr. Werner as stating, in relevant part:

> We remain committed to putting safety and our employees first, so that we can continue delivering the highest levels of service to our customers and partners. Importantly, we will also continue to build an even stronger operating discipline as we focus on profitability and achieving positive free cash flow. Now, following the Company's recent capital raise, we look forward to getting back to doing what SunPower does best and building an even more sustainable, resilient, and agile business.

The recent capital raise referenced came from SPWR's largest stockholder, who exhibited a robust show of support.  On February 16, 2024, an SEC filing by SPWR revealed:

> On February 14, 2024, the Issuer entered into a second lien credit agreement (the "Second Lien Credit Agreement") with Sol Holding, LLC ("Sol Holding"), pursuant to which Sol Holding provided an approximately $175 million term loan facility comprised of a $125 million tranche that was borrowed on February 14, 2024 (including the cashless roll of $45 million of outstanding revolving loans plus accrued unpaid interest on such loans into Tranche 1 Loans) (the "Tranche 1 Loans"), and a second tranche of up to $50 million of loans (the "Tranche 2 Loans") available to be borrowed upon the satisfaction of certain conditions, including the delivery of a business plan with respect to the use of proceeds of such loans that is satisfactory to the lenders under the Second Lien Credit Agreement.

June 17, 2024
Page 3 of 13

Then-CEO Peter Faricy emphasized: "With this infusion of extra liquidity and working cash-flow to our monetary record, combined with significant expense decreases, SunPower is finding sure ways to situate itself to prevail in 2024 and then some." Soon, major brokerages raised their prices targets for SPWR stock, including Susquehanna and UBS.

On February 29, 2024, SPWR announced that it filed a Form 12b-25 with the Securities and Exchange Commission to provide notice of the delayed filing of its Annual Report on Form 10-K ("Form 10-K") for the fiscal year ended December 31, 2023. SunPower required additional time to complete its financial statements included in the Company's Form 10-K. This was due to the time and effort that was required to complete restatements of the Company's prior period financial statements, which were filed with the SEC on December 18, 2023. Filing a Form 12b-25 would provide the Company with an automatic extension of fifteen additional calendar days to file the Form 10-K, which is due on February 29, 2024. SunPower expected to file the Form 10-K as soon as practicable. There was no public sign of further accounting trouble at this time.[1]

More positive news followed on March 14, 2024, as SPWR announced:

SunPower Corp. (NASDAQ:SPWR) a leading residential solar technology and energy services provider, today announced the appointment of residential solar and home energy veteran, Tony Garzolini, as Executive Vice President and Chief Revenue Officer (CRO). In this role, Tony will oversee sales, including the Direct, Dealer and New Homes channels, along with pricing and demand generation.

"*SunPower made great strides to improve our financial footing and we remain laser focused on achieving profitability and cash flow generation.* As a part of this imperative, we're pleased to welcome Tony back to SunPower as our first Chief Revenue Officer," said Tom Werner, Executive Chairman of the Board and Principal Executive Officer of SunPower. "With Tony's deep expertise in residential renewable energy and exceptional track record working with our valued network of independent solar dealers, we believe his leadership will help put SunPower in a strong position to nurture the Dealer Network and expand its reach, further our market leading position in New Homes, and dramatically improve the customer experience. (Emphasis added).

---

[1] We are aware of the consolidated class action that has been pending in Federal Court against SPWR and some of its top officers since the fall of 2023. The events recounted therein concluded before Mr. Rodrigues became a stockholder. He is, in this Demand, unconcerned with that action's allegations, including those concerning the loan covenant, going concern evaluations and conclusions, and Maxeon customer dispute issues, and all of its other various issues and allegations. This Demand is concerned with discrete matters of which Mr. Rodrigues was not aware at the time of his purchase of stock. Given the apparent concealments and omissions discussed herein, he could not have been aware of them. We also note that the current class action complaint's Class Period runs from May 3, 2023 to February 14, 2024. Mr. Rodrigues is thus not a member of the defined Class.

---

June 17, 2024
Page 4 of 13

Once again, there was no hint that any negative financial news would soon be revealed.

Additionally, on March 19, 2024, The Company filed its definitive Information Statement on Schedule 14C (the "Information Statement") for purposes of Nasdaq Rule 5635(d), approving by written consent the warrant issuance in connection with the Sol Holding financing. The Information Statement likewise buoyed investor confidence by touting the transaction as a life-line to stave off "imminent insolvency." Information Statement at pp. 12-13. According to the Information Statement, on January 6, 2024, the Company engaged Houlihan Capital, LLC ("Houlihan") for the purpose of rendering a written opinion as to whether the Sol Holding financing transaction was fair to SunPower's stockholders from a financial point of view.

In preparing its opinion, Houlihan "[h]eld discussions with certain members of Company senior management ("Management") regarding the Financing Transactions, the historical performance and pro forma financial projections of the Company (giving effect to the Financing Transactions) and the future outlook for the Company[.]" Information Statement at p. 10. Houlihan also "obtained, reviewed and/or analyzed certain information relating to the historical, current and future operations of the Company on a pro forma basis including, but not limited to the following:" (a) historical financial statements for fiscal years ended December 31, 2019 through 2022; (b) expected financial statements for the fiscal year ended December 31, 2023; and (c) Management's financial projections for the years ended December 31, 2024 through 2025. *Id.* at pp. 10-11.

Notably, Houlihan relied upon and did not independently verify the "accuracy, completeness, and reasonableness of the financial, legal, tax, and other information" provided by the Company. *Id.* at p. 11. Rather, Houlihan relied upon the word of Management "that they were unaware of any facts that would make the information provided to Houlihan to be [sic] incomplete or misleading in any material respect for the purposes of the Opinion." *Id.*

According to the Information Statement, "[n]othing came to Houlihan's attention in the course of this engagement which would lead it to believe that (i) any information provided to Houlihan or assumptions made by Houlihan were insufficient or inaccurate in any material respect or (ii) it was unreasonable for Houlihan to use and rely upon such information or make such assumptions." In other words, neither Management, nor the unnamed members of the Special Committee[2] which surely included members of the Audit Committee, apprised Houlihan of any inquiries, investigations, or ongoing concerns regarding the accuracy of 2022 financials.

---

[2] The Information Statement references the formation of the Special Committee on January 12, 2024 to "among other things, review, investigate, consider, evaluate and negotiate and determine the terms of any financing proposal received by the Company." Information Statement at p. 6. It does not identify the members of the Special Committee, merely averring that it "consist[s] solely of independent and disinterested directors who are not affiliated with Sol Holding, LLC or its affiliates." *Id.*

June 17, 2024
Page 5 of 13

On March 21, 2024, SPWR received a standard Notice of Delisting from NASDAQ, but issued a reassurance that it could cure any problems by the quick filing of its Form 10-K: "While the Company can provide no assurances as to timing, the Company is working diligently to finalize the Form 10-K and plans to file the Form 10-K as soon as practicable, including to regain compliance with the Listing Rule."  No inkling was provided, or even hinted at, that there were any major impediments to such a filing, or that it would not be on file imminently.  Within not too many more days, the public would be made aware of very different facts and expectations.

#### B.     ***SunPower Shocks Investors By Announcing An Unexpected Restatement***

On April 23, 2024, SunPower shockingly and unexpectedly announced a restatement, disclosing that the Company had identified misstatements in its fiscal year 2022 financial results, including the improper capitalization of certain costs and misclassification of certain expenses, resulting in an overstatement of the Company's income from continuing operations ***by $15 to $25 million.***  The Company also revealed that its independent auditor had determined that its previously issued audit reports could no longer be relied upon.  Clearly, the Company's Board and executives had concealed major problems in the weeks leading up to this bombshell announcement.

Not surprisingly, SunPower shares meaningfully declined after the disclosure of the restatement.  In connection with the April 23, 2024 news, SPWR stated in an SEC filing:

> On April 17, 2024, the Audit Committee (the "Audit Committee") of the Board of Directors of SunPower Corporation (the "Company") determined, based on the recommendation of management, that the Company's (i) audited financial statements included in the Company's Annual Report on Form 10-K/A for the period ended ***January 1, 2023*** filed with the U.S. Securities and Exchange Commission (the "SEC") on December 18, 2023 (the "2022 Form 10-K/A") and (b) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q/A for the quarterly period ended April 2, 2023 (the "Q1 2023 Form 10-Q/A"); Quarterly Report on Form 10-Q/A for the quarterly period ended ***July 2, 2023*** (the "Q2 2023 Form 10-Q/A"); and Quarterly Report on Form 10-Q for the quarterly period ended October 1, 2023 (the "Q3 2023 Form 10-Q"), all subsequently filed with the SEC on December 18, 2023 (collectively, the "Affected Prior Period Financial Statements"), as well as the relevant portions of any communication which describe or are based on such financial statements, should no longer be relied upon. ***The Company plans to restate, as soon as practicable, the Affected Prior Period Financial Statements.***
>
> In connection with the preparation of its financial statements for the fiscal year ended December 31, 2023, the Company identified misstatements in the audited financial statements for the fiscal year ended January 1, 2023, included in the 2022 Form 10-K/A. These misstatements primarily relate to (i) ***the capitalization of certain deferred costs that did not qualify for capitalization,*** (ii) ***the classification***

---

June 17, 2024
Page 6 of 13

*of certain sales commissions as cost of revenue rather than sales, general and administrative expense*, and (iii) certain other individually immaterial adjustments. The Company estimates that the impact of the aforementioned adjustments is a decrease to income (loss) from continuing operations before income taxes and equity in earnings (losses) of unconsolidated investees for the fiscal year ended January 1, 2023, in the range of approximately $15 million to $25 million.

At this time, the Company has not fully completed its review, and the expected financial impact of the errors described above is preliminary and subject to change. The Company cannot provide assurance that other errors will not be identified. (Emphasis added).

Significantly, the Company stated:

In light of the matters described above, the Company's management has concluded that *a new material weakness* exists in the Company's internal control over financial reporting. The Company's remediation plan with respect to such material weakness will be described in more detail in the Company's amended 2022 Form 10-K/A. (Emphasis added).

Thus, the April 23, 2024 material weakness was unrelated to any such issue previously disclosed.

In addition, and very germane to the issues presented herein, SPWR in order to obtain the February 14, 2024 Sol Holding Financing agreement, covenanted as follows in Section 5.05 at pp. 64-65 (emphasis added):[3]

5.05    Financial Statements; No Material Adverse Effect.

(a)    *The audited consolidated balance sheet of the Borrower and its consolidated Subsidiaries for the fiscal year ended January 1, 2023*, and the related consolidated statements of income or operations, shareholders' equity and cash flows for such fiscal year of the Borrower and its consolidated Subsidiaries, including the notes thereto, (i) *were prepared in accordance with GAAP* consistently applied throughout the period covered thereby, except as otherwise expressly noted therein; (ii) fairly present the financial condition of the Borrower and its consolidated Subsidiaries as of the date thereof and their results of operations, cash flows and changes in shareholders' equity for the period covered thereby in accordance with GAAP consistently applied throughout the period covered thereby, except as otherwise expressly noted therein; and (iii) show all

---

[3]  https://www.sec.gov/ix?doc=/Archives/edgar/data/0000867773/000086777324000015/spwr-20240214.htm

**Telephone (914) 752-3040**          **www.monteverdelaw.com**          **Facsimile (914) 752-3041**

June 17, 2024
Page 7 of 13

material indebtedness and other liabilities, direct or contingent, of the Borrower and its consolidated Subsidiaries as of the date thereof, including liabilities for Taxes, material commitments and Indebtedness.

(b)   *The unaudited consolidated balance sheet of the Borrower and its consolidated Subsidiaries dated July 2, 2023*, and the related consolidated statements of income or operations, shareholders' equity and cash flows for the fiscal quarter ended on that date (i) *were prepared in accordance with GAAP consistently applied throughout the period covered thereby*, except as otherwise expressly noted therein, and (ii) fairly present the financial condition of the Borrower and its consolidated Subsidiaries as of the date thereof and their results of operations, cash flows and changes in shareholders' equity for the period covered thereby, subject, in the case of clauses (i) and (ii), to the absence of footnotes and to normal year-end audit adjustments.

(c)   The projected consolidated balance sheets, statements of operations and cash flows for the Borrower and its Restricted Subsidiaries and any other projections and budget that have been delivered to the Administrative Agent were prepared by the Borrower in good faith and were based on assumptions that the Borrower believed were reasonable when made, it being understood, that actual results during the periods covered thereby may differ from the projected results.

(d)   *Since the Closing Date, there has been no event or circumstance, either individually or in the aggregate, that has had or would reasonably be expected to have a Material Adverse Effect.*

(e)   Neither the Borrower nor any of its Restricted Subsidiaries has, on the Closing Date, any contingent liabilities, liabilities for taxes, unusual forward or long-term commitments or unrealized or anticipated losses from any unfavorable commitments in each case that are material and would need to be disclosed on financial statements in accordance with GAAP, except (i) as referred to or reflected or provided for in the financial statements described in this Section 5.05, (ii) as set forth in Schedule 5.05, or (iii) as otherwise permitted pursuant to this Agreement.

Contrary to the aforementioned covenants that SunPower's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), the Company had employed qualitative accounting practices inconsistent with GAAP, requiring the restatement. Indeed, adhering to GAAP ensures that financial information is consistently and accurately reported and SunPower has failed miserably in this regard.

*Thus, the Company issued assurances in connection with the huge Sol Holdings financing as to the January 1, 2023 financials and the July 2, 2023 financials that were simply untrue.* To put a fine point on the matter, while Management and the Special Committee were meeting on a near daily basis during January and February 2024 to close the financing transaction

June 17, 2024
Page 8 of 13

with Sol Holding, the Company was simultaneously in the midst of preparing of its financial statements for the fiscal year ended December 31, 2023 during which time, unbeknownst to SunPower's investors, it had identified misstatements and material deficiencies in the Company's disclosure controls and internal controls over financial reporting.

These revelations came after repeated reassurances that all that was needed to file a valid and reliable Form 10-K and other filings was a bit more time, and that prior issues had been put to bed. And yet, management and the Board were plainly aware of new issues, were working on these issues, and knew that they would very likely not be able to file the required reports, despite their indications otherwise. This knowledge could not have dawned on them suddenly but likely was known many weeks earlier than revealed. Mr. Rodrigues is not presently in a position to know exactly when the events in question occurred. He also presently lacks information sufficiently to state with certainty if any remedy he may pursue in terms of litigation would be direct or derivative. He further reserves all rights to take action, if he deems it appropriate, that does not involve litigation, but does involve communications with the Board or other stockholders.

Based upon these facts, there are sufficient grounds to believe that wrongdoing of various types may have occurred and may continue to occur to warrant an investigation of SunPower's corporate books and records. Thus, Stockholder makes demands for documents as set forth below.

## III.    DEFINITIONS AND SOURCE OF DOCUMENTS

The "Board" means the Board of Directors of SunPower, any committee thereof, or an persons or entities representing or purporting to represent, or acting or purporting to act on behalf of, any of the foregoing.

"Corporate Governance Materials" means all documents related to the structure of rules, action plans, internal controls, practices, polices, programs and processes used to direct and manage the Company.

"Board Materials" means board-level documents that evidence the directors' deliberations and decisions and comprise the materials that the directors received and considered.

Stockholder seeks the production of documents enumerated below, if they exist, at the Board or Board committee levels. If responsive documents do not exist at the Board or Board committee levels, Stockholder requests that such documents be produced, even if generated at the officer level.

## IV.    DOCUMENTS REQUESTED

Stockholder requests the following documents that are necessary to his investigation of apparent wrongdoing or mismanagement for the period from January 1, 2024 to the present, unless otherwise specified:

---

June 17, 2024
Page 9 of 13

1. Board Materials and Corporate Governance Materials sufficient to reflect the bases for the conclusions reached on or about April 17, 2024 by "the Audit Committee (the "Audit Committee") of the Board of Directors of SunPower Corporation (the "Company") determined, based on the recommendation of management, that the Company's (i) audited financial statements included in the Company's Annual Report on Form 10-K/A for the period ended January 1, 2023 filed with the U.S. Securities and Exchange Commission (the "SEC") on December 18, 2023 (the "2022 Form 10-K/A") and (b) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q/A for the quarterly period ended April 2, 2023 (the "Q1 2023 Form 10-Q/A"); Quarterly Report on Form 10-Q/A for the quarterly period ended July 2, 2023 (the "Q2 2023 Form 10-Q/A"); and Quarterly Report on Form 10-Q for the quarterly period ended October 1, 2023 (the "Q3 2023 Form 10-Q"), all subsequently filed with the SEC on December 18, 2023 (collectively, the "Affected Prior Period Financial Statements"), as well as the relevant portions of any communication which describe or are based on such financial statements, should no longer be relied upon."

2. All relevant Audit Committee minutes.

3. Documents sufficient to identify the directors constituting the Special Committee.

4. All documents sufficient to reflect the "recommendation of management" referenced above, and all bases therefor.

5. Communications with Sol Holdings reporting to them the issues revealed on April 23, 2024, including reports prior to April 17, 2024 that such issues had arisen and were under review.

6. Communications with SPWR's independent auditor regarding the issues revealed on April 23, 2024, including reports that such issues had arisen and were under review.

7. Documents (regardless of when generated) concerning whether the issues revealed on April 23, 2024, were in any way known to Mr. Faricy prior to his departure from his positions.

8. Documents reflecting communications by the Audit Committee with former CFO Manavendra Sial concerning any of the issues revealed on April 23, 2024;

9. Documents reflecting communications by the Audit Committee with former Interim CFO Guthrie Dundas concerning any of the issues revealed on April 23, 2024;

---

June 17, 2024
Page 10 of 13

10. Documents sufficient to reflect whether the new material weaknesses and capitalization issues revealed on April 23, 2024 concern internal-use software and/or external use software and the application of ASC 350-40 and/or ASC 985-20;

11. Documents sufficient to reflect whether the new material weaknesses and capitalization issues revealed on April 23, 2024 concern software development costs;

12. Board Materials sufficient to describe the Company's practices and procedures with respect to the capitalization of costs and classification of expenses.

13. Board Materials and Corporate Governance Materials sufficient to describe the Board's role in overseeing the internal audit and its outside public auditor.

14. Board Materials sufficient to describe the material weaknesses in the Company's internal controls over financial reporting.

15. Board materials sufficient to describe the weaknesses in SunPower's disclosure controls.

16. Board Materials sufficient to describe the Board's review of the 2022 10-K, 1Q 2023 10-Q, 2Q 2023 10-Q and 3Q 2023 10-Q prior to their respective filings.

17. Board materials regarding the resignation of Peter Faricy from his roles as CEO, President and Chairman of the Board.

18. Board materials regarding the Company's announcement on February 29, 2024 that it was unable to file its Annual Report on Form 10-K for fiscal year 2023 on time.

19. All director questionnaires.

## V.   **STOCKHOLDER'S PROPER PURPOSE**

According to 8 Del. C. §220(b)(2), a "proper purpose" shall mean a purpose reasonably related to such person's interest as a stockholder. Under Delaware law, it is "well established that investigation of mismanagement is a proper purpose for a Section 220 books and records inspection." *Freund v. Lucent Techs., Inc.*, C.A. No. 18893, 2003 Del. Ch. LEXIS 3, at \*9 (Del. Ch. Jan. 9, 2003) (quoting *Security First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 567 (Del. 1997)); *see also Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1031 (Del. 1996) (same). This is especially the case where, as here, the primary purpose is reasonably related to the demanding party's interests as a stockholder, and where credible bases exist from which it can be inferred that mismanagement may have occurred. *See Marmon v. Arbinet-Thexchange, Inc.*, C.A.

June 17, 2024
Page 11 of 13

No. 20092, 2004 Del. Ch. LEXIS 44, at *11 (Del. Ch. Apr. 28, 2004) (citing *Thomas & Betts*, 681 A.2d at 1031).

Here, as detailed *supra*, Stockholder has a proper purpose to seek the documents listed above. Upon receiving the information requested herein, Stockholder may, as appropriate, make a determination of the directors' fitness to continue in office; file a stockholder's derivative suit; file a direct suit concerning disclosure or damages; seek a mandatory injunction or declaratory relief regarding the conduct of the Board; make a demand upon the Board; suggest governance improvements; communicate with other shareholders or seek an audience with the Board; seek correction of inaccurate or incomplete prior SEC disclosures, and seek to ensure accurate representations in any upcoming disclosures, such as the next proxy statement. *Seinfield v. Verizon Communs., Inc.* 909 A.2d 117, 119-20 (Del. 2006) (quoting *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 117 (Del. 2002)) (stockholders may use information about corporate mismanagement to file a derivative suit, "seek an audience with the board [of directors] to discuss proposed reform or, failing in that, they may prepare a stockholder resolution for the next annual meeting, or mount a proxy fight to elect new directors."). "When showing a credible basis for possible wrongdoing, Section 220 plaintiffs are not confined to a single theory and 'need not identify the particular course of action the stockholder will take . . . ." *Nvidia Corp. v. City of Westland Police & Fire Ret. Sys.,* 282 A.3d 1, 26 (Del. 2022). *See also, Paul v. China MediaExpress Holdings, Inc.,* No. 6570-VCP, 2012 Del. Ch. LEXIS 3, at **3, 18 (Del. Ch. Jan. 5, 2012)(ordering production of documents concerning "accounting practices by CME" and observing that stockholder "need not prove that he would qualify as a representative plaintiff in a later class or derivative action to show a proper purpose under § 220. Instead, what matters in proving a proper purpose under § 220 is that he would have standing to bring either direct or derivative claims against CME following the requested inspection."); *Barnes v. Sprouts Farmers Mkt., Inc.,* No. 2017-0735-MTZ, 2018 Del. Ch. LEXIS 236, at *12 (Del. Ch. July 18, 2018)(inspection deemed proper where, *inter alia,* stockholder sought to investigate whether secondary offering prospectus violated Securities Act of 1933).

"There is no shortage of proper purposes under Delaware law . . . ." *Melzer v. CNET Networks, Inc.,* 934 A.2d 912, 917 (Del. Ch. 2007). These include "to communicate with other stockholders in order to effectuate changes in management policies" and "to determine an individual's suitability to serve as a director." *Woods v. Sahara Enters.*, 238 A.3d 879, 890 (Del. Ch. 2020).

Stockholder may also seek:

- Board governance procedures that are in accord with Delaware law to bolster independent and disinterested decision-making processes;

- Revision of corporate policies and practices that violate federal law and SEC rules and regulations.

- Correction of any prior incomplete or inaccurate public disclosures; and

June 17, 2024
Page 12 of 13

- Enhancements to the Board's practices to protect the stockholder franchise.

## VI.    STOCKHOLDER'S ADDITIONAL CONCERN

In addition to the concerns raised *supra*, we note that SunPower last held an annual meeting on May 11, 2023.  Under Section 211 of the DGCL, an annual meeting was due to be held no later than June 11, 2024.  Yet none has been scheduled.  Any issues the Company may have in completing its annual report and other filings do not excuse the requirement to hold the annual meeting in a timely fashion.  *Rich v. Fuqi Int'l, Inc.*, No. 5653-VCG, 2012 Del. Ch. LEXIS 258, at *6 (Del. Ch. Nov. 5, 2012).  Accordingly, Mr. Rodrigues demands an annual meeting be scheduled and held.  He also suggests that a new independent director be elected (as there remain only three independent directors out of nine, and they are quite overburdened).

## VII.    CONCLUSION

On behalf of Stockholder, we hereby affirm that the purposes for the demanded inspection as set forth above constitute a true and accurate statement of the reasons our client seeks to review the demanded books, records, and documents and that such demand is made in good faith. These purposes are both proper and reasonably related to our client's interest as a stockholder of the Company.

Enclosed is an authorization appointing our firms to act as agents for the review of the above-listed documents.

Pursuant to § 220, please respond to this demand within five (5) business days of receipt to arrange a mutually convenient time for us to inspect the above-mentioned books and records.

If you fail or refuse to permit inspection and copying of the requested documents, our firms will have the right to immediately seek appropriate relief in the Delaware Court of Chancery. If you have any questions, please contact us at your convenience.

Very truly yours,

**MONTEVERDE & ASSOCIATES PC**

*/s/ Beth A. Keller*
Beth A. Keller
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, NY 10018
Telephone: (914) 752-3040
Facsimile: (914) 752-3041
Email: bkeller@monteverdelaw.com

June 17, 2024
Page 13 of 13

**LAW OFFICES OF BETH A. KELLER, P.C.**
Beth A. Keller
118 North Bedford Road, Ste. 100
Mount Kisco, New York 10549
Telephone: (914) 752-3040
Facsimile: (914) 752-3041
Email: bkeller@keller-lawfirm.com

**THE PASKOWITZ LAW FIRM P.C.**

*/s/ Laurence D. Paskowitz*
Laurence D. Paskowitz
The Contour
97-45 Queens Boulevard, Ste. 1202
Rego Park, NY 11374
212-685-0969
lpaskowitz@pasklaw.com

***Attorneys for Stockholder Gabriel*** Rodrigues


Encl.

cc:  Katherine L. Henderson, Esq. (khenderson@wsgr.com)
     Wilson Sonsini Goodrich & Rosati