# EXHIBIT 3



Andrew D. Cordo
acordo@wsgr.com
302.304.7621

Wilson Sonsini Goodrich & Rosati
Professional Corporation

222 Delaware Avenue
Suite 800
Wilmington, Delaware 19801-1600

O: 302.304.7600
F: 866.974.7329

July 12, 2024

**By email**
Beth A. Keller, Esquire
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, NY  10118
bkeller@monteverdelaw.com

**Re:    Stockholder Demand for Inspection of Corporate Books and Records Pursuant to 8 *Del. C.* § 220**

Dear Beth:

I write on behalf of SunPower Corporation ("SunPower" or the "Company") in response to your letter dated June 17, 2024 (the "Demand") on behalf of Gabriel Rodrigues (the "Stockholder"), a purported stockholder of the Company seeking books and records pursuant to 8 *Del. C.* § 220 (the "Demand").

The Demand concerns the Company's April 23, 2024 announcement that it would be restating, as soon as practicable, its (i) audited financial statements included in the Company's Annual Report on Form 10-K/A for the period ended January 1, 2023 filed with the U.S. Securities and Exchange Commission (the "SEC") on December 18, 2023 and (ii) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q/A for the quarterly period ended April 2, 2023, Quarterly Report on Form 10-Q/A for the quarterly period ended July 2, 2023, and Quarterly Report on Form 10-Q for the quarterly period ended October 1, 2023 (collectively, the "Affected Prior Period Financial Statements"), all subsequently filed with the SEC on December 18, 2023 (the "Restatement").[1]   The Stockholder brings the Demand for the stated purpose "to investigate possible mismanagement and/or breaches of fiduciary duty and violations of Delaware and federal law by SunPower's Board and/or Company officers."[2]

---

[1] *See* Demand at 5–8; *see* SunPower Corp., Report of Unscheduled Material or Corporate Event (Form 8-K), Item 4.02 (Apr. 23, 2024).

[2] Demand at 1.

**WILSON
SONSINI**

Beth A. Keller, Esquire
July 12, 2024
Page 2

After reviewing the Demand and considering the Stockholder's requests in good faith, the Company believes the Demand is deficient in several respects as explained below. The Company nonetheless is willing to produce certain non-privileged documents to the Stockholder, subject to the conditions set forth herein.

### 1.    The Stockholder Does Not Have a Proper Purpose.

Section 220 requires a stockholder who seeks to inspect books and records to establish a proper purpose that is "reasonably related to such person's interest as a stockholder."[3] The Stockholder asserts it has a proper purpose of investigating wrongdoing in connection with the Restatement.[4] However, the Stockholder lacks a proper purpose because the Demand does not identify a credible basis to suspect wrongdoing.

To establish a proper purpose of investigating suspected wrongdoing, a stockholder must show by a preponderance of the evidence "a credible basis from which the court can infer there is possible mismanagement as would warrant further investigation."[5] The Delaware Supreme Court has reiterated that the credible basis standard is "not an insubstantial threshold,"[6] as the stockholder must provide "*some* evidence of wrongdoing" that would warrant further investigation.[7] "[A] bare allegation of possible waste, mismanagement, of breach of fiduciary duty, without more, will not entitle a stockholder

---

[3] 8 *Del. C.* § 220(b).

[4] Demand at 2. In addition, the Stockholder purports to hold a variety of secondary purposes. *See id.* at 10–11. However, investigating wrongdoing in connection with the Restatement appears to be his primary purpose. *Id.* at 1; *see id.* at 10 (stating "as here, primary purpose is reasonably related to the demanding party's interests as a stockholder, and where credible bases exist from which it can be inferred that mismanagement may have occurred").

[5] *Okla. Firefighters Pension & Ret. Sys. v. Amazon.com, Inc.*, 2022 WL 1760618, at *6 (Del. Ch. June 1, 2022) (quotation omitted).

[6] *AmerisourceBergen Corp. v. Lebanon Cnty. Emps.' Ret. Fund*, 243 A.3d 417, 426 (Del. 2020); *accord Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 568 (Del. 1997) ("The threshold for a plaintiff in a Section 220 case is not insubstantial. Mere curiosity or a desire for a fishing expedition will not suffice.").

[7] *High River Ltd. P'ship v. Occidental Petroleum Corp.*, 2019 WL 6040285, at *5 (Del. Ch. Nov. 14, 2019) (emphasis in original).

**WILSON
SONSINI**

Beth A. Keller, Esquire
July 12, 2024
Page 3

to a Section 220 inspection."[8]  Otherwise, companies would be subjected to improper, "indiscriminate fishing expedition[s]."[9]

The Demand fails to make the required showing that there is a credible basis to investigate possible wrongdoing, raising no legitimate issues in connection with the Restatement or otherwise.  According to the Stockholder, he had "good reason to be optimistic" about SunPower's financial outlook when he purchased his shares on February 29, 2024 based on the Company's public statements.[10]  In support, the Stockholder points to various public statements between February 16, 2024 and March 21, 2024 (the "Statements") regarding the financing with Sol Holding, LLC ("Sol") entered into on February 14, 2024 (the "Financing")—including that the Financing "stave[d] off imminent insolvency" and would help SunPower "find[] sure ways to situate itself to prevail in 2024 and then some"—as well as the Company's announcement that it hired certain individuals in an effort to bolster its growth.[11]

Based on the Statements, the Stockholder alleges "there was no hint that any negative financial news would soon be revealed" before April 2024,[12] but that "[o]n April 23, 2024, SunPower shockingly and unexpectedly announced [the R]estatement."[13] Looking to the Restatement itself as evidence of wrongdoing, the Stockholder now claims that there were "apparent concealments and omissions" regarding the Company's financial condition of which the Stockholder "was not aware at the time of his purchase of stock."[14]

The Demand offers no credible factual basis to find that SunPower made false or misleading statements, nor any basis to infer wrongdoing by any directors or officers. Indeed, the Stockholder offers no basis for his assertion that the Company and its officers and directors must have known about the Restatement at the time of the earlier Statements, which are unrelated to the Affected Prior Period Financial Statements at any rate.  To the contrary, the Stockholder concedes he is not "in a position to know when the events in

---

[8] *Amazon*, 2022 WL 1760618, at *6 (quotation omitted).

[9] *AmerisourceBergen*, 243 A.3d at 428 (quotation omitted).

[10] Demand at 1, 2.

[11] *Id.* at 2–5.

[12] *Id.* at 4.

[13] *Id.* at 5.

[14] *Id.* at 3 n.1.

WILSON
SONSINI

Beth A. Keller, Esquire
July 12, 2024
Page 4

question occurred" and thus does not know if there is any remedy or claim, or whether such remedy or claim, if any, is direct or derivative.[15]  The Stockholder thus offers nothing more than "fraud by hindsight" type allegations based on SunPower's later disclosures.  In other words, the Stockholder is engaged in precisely the type of fishing expedition that is prohibited under Section 220.

Moreover, the Stockholder ignores that, contrary to the sunny picture laid out in the Demand, prior to his purchasing shares, SunPower had disclosed numerous challenges, including issues with its financial statements and internal controls, which, as disclosed, it was actively engaged on at the time of the Stockholder's purchase.

On October 24, 2023, the Company announced that its Annual Report on Form 10-K for the period ended January 1, 2023, as well as its Quarterly Reports on Form 10-Q for the periods ending April 2 and July 2, 2023, should no longer be relied on and would need to be restated.[16]  As a result, the Company filed a Form 12b-5 providing notice that SunPower would not timely file its Quarterly Report on Form 10-Q for the period ended October 1, 2023,[17] along with a Notice of Delisting as a consequence of the late filing.[18]

On December 18, 2023, the Company filed its restated financials, which explained the identified weaknesses and insufficiencies in controls over financial reporting.  For example, the Company disclosed:

> The Audit Committee concluded that management's report on internal control over financial reporting for the fiscal year ended January 1, 2023, the opinion of Ernst & Young LLP ("EY"), the Company's independent registered public accounting firm, on the consolidated financial statements for fiscal years ended January 1, 2023, January 2, 2022, and January 3, 2021, as well as EY's opinion on the effectiveness of the Company's internal control over financial reporting as

---

[15] *Id.* at 8.

[16] SunPower Corp., Report of Unscheduled Material or Corporate Event (Form 8-K), Item 4.02 (Oct. 24, 2023).

[17] SunPower Corp., Notification of Late Filing (Form 12b-5), Part III (Nov. 13, 2023).

[18] SunPower Corp., Report of Unscheduled Material or Corporate Event (Form 8-K), Item 3.01 (Nov. 27, 2023).

WILSON
SONSINI

Beth A. Keller, Esquire
July 12, 2024
Page 5

> of January 1, 2023 included in the Original Form 10-K should also no longer be relied upon.[19]

The Company also disclosed that it was in a precarious financial position:

> Substantial doubt exists about our ability to continue as a going concern and if we are unable to continue our business, our common stock might have little or no value. Although our financial statements have been prepared on a going concern basis, unless we obtain a full waiver or amendment of the covenant breaches under the Credit Agreement and Atlas Credit Agreement and we are able to raise additional capital, there is a material risk that we will continue to be in breach of our financial covenants under the Credit Agreement and Atlas Credit Agreement, which may cause future events of default under our other existing debt agreements.[20]

Although the restated financials were filed on December 18, 2023, the Company's struggles continued, as the Demand acknowledges.[21]  On February 29, 2024—the same day the Stockholder purchased his shares—the Company again filed a Form 12b-5, which disclosed that, because of the time and effort required to complete the prior restatements, the Company required additional time to complete, and would be unable to timely file, its Annual Report on Form 10-K for the period ended December 31, 2023 (the "2023 Form 10-K").[22]  And on March 21, 2024, the SunPower again received a Notice of Delisting due to the delinquent filing.[23]

---

[19] SunPower Corp., Amended Annual Report (Form 10-K/A), at 1–2 (Dec. 18, 2023).

[20] *Id.* at 4, 19–20.

[21] *See* Demand at 3, 5.

[22] *Id.* at 3; SunPower Corp., Notification of Late Filing (Form 12b-5), Part III (Feb. 29, 2024).

[23] Demand at 5; SunPower Corp., Report of Unscheduled Material or Corporate Event (Form 8-K), Item 3.01 (Mar. 21, 2024).  The Stockholder characterizes the Company's disclosures as making "repeated reassurances that all that was needed to file a valid and reliable Form 10-K and other filings was a bit more time."  *See* Demand at 8.  Yet, as the Stockholder acknowledges, the Company stated it "c[ould] provide no assurances as to timing."  *Id.* at 5.

**WILSON
SONSINI**

Beth A. Keller, Esquire
July 12, 2024
Page 6

Accordingly, the Stockholder's allegations that form the basis for the Demand—that he did not know or have reason to know at the time he purchased his shares and thereafter that the Company had faced financial struggles since 2022 and throughout 2023—are without basis, particularly given that the financial statements that are the subject of the Restatement had previously suffered various deficiencies; the Company had determined that its internal controls were deficient; and the Company had been facing, and continued to face, headwinds as a result.

The Stockholder strains to infer a basis to suspect wrongdoing from disclosures that, in connection with the Financing, Houlihan reviewed historical financial statements for fiscal years ended December 31, 2019 through 2022, and expected financial statements for the fiscal year ended December 31, 2023, and relied upon the word of management "that they were unaware of any facts that would make the information provided to Houlihan to be incomplete or misleading in any material respect for the purposes of the Opinion."[24] Pointing to the Restatement, the Stockholder alleges that "neither Management, nor the unnamed members of the Special Committee, which surely included members of the Audit Committee, apprised Houlihan of any inquiries, investigations, or ongoing concerns regarding the accuracy of 2022 financials."[25]  The Stockholder further alleges that the Company similarly failed to disclose the deficiencies in its financial statements to Sol, such that it breached its representations under the relevant Financing agreement that its 2022

---

[24] Demand at 4 (quoting Information Statement at 10–11).

[25] *Id.*  The Demand does not purport to investigate wrongdoing in connection with the Financing itself, yet questions the composition of the Special Committee. *See id.* at 4 n.3.  The Company has repeatedly disclosed that the Board's independent directors—Steven Louden, Vinayak Hegde, and Audrey Zibelman—play a central role in overseeing its relationship with Sol, and, as disclosed in the Information Statement, the Financing Transactions were no exception. *See, e.g.*, SunPower Corp., Annual Report (Form 10-K), Ex. 4.8 (Feb. 25, 2022) (noting Disinterested Director approval required in transactions involving TotalEnergies SE and its affiliates, including Sol); SunPower Corp., Amended Annual Report (Form 10-K/A), Ex. 4.8 (Dec. 18, 2023) (same); *see also* SunPower Corp., *Biography of Steven Louden* (last visited July 2, 2024) (identifying Steven Louden as lead independent director of the Board), *available at* link; SunPower Corp., *Biography of Vinayak Hegde* (last visited July 2, 2024) (identifying Vinayak as an independent director of the Board), *available at* link; SunPower Corp., *Biography of Audrey Zibelman* (last visited July 2, 2024) (identifying Audrey Zibelman as an independent director of the Board), *available at* link.

WILSON
SONSINI

Beth A. Keller, Esquire
July 12, 2024
Page 7

and 2023 financials were materially accurate and prepared in accordance with GAAP.[26] Yet, these allegations all confirm that the Company was unaware of the issues that led to the Restatement at these points of time, not that there was any such previous knowledge.

At bottom, the Demand includes no basis from which to infer wrongdoing in connection with the Restatement and the Company's public statements predating the Restatement. The Demand thus amounts to nothing more than a "mere statement of suspicion" that cannot support the Stockholder's stated purpose.[27]

### 2. The Demand's Scope Is Impermissibly Broad, As It Is Not Limited to Documents That Are Necessary and Essential to the Stated Purpose.

The Demand is defective for the independent reason that it is overbroad. A stockholder's entitlement under Section 220 is "limited only to the inspection of books and records that are necessary and essential to the satisfaction of the stated purpose."[28] Information is not "necessary and essential" to a books and records demand unless it "address[es] the crux of the shareholder's purpose" and "is unavailable from another source."[29] A stockholder demanding inspection must provide specific and discrete identification, with "rifled precision," of the documents sought.[30]

---

[26] *See* Demand at 6–7. The Stockholder also appears to claim the Company breached its representation under the Financing agreement that "[s]ince the Closing Date, there has been no event or circumstance, either individually or in the aggregate, that has had or would reasonably be expected to have a Material Adverse Effect." *Id.* at 7. Yet, he does not explain how the Restatement indicates that the Company experienced a Material Adverse Effect as defined under the relevant agreement or Delaware law.

[27] *AmerisourceBergen*, 2020 WL 7266362, at *5.

[28] *Kaufman v. CA, Inc.*, 905 A.2d 749, 753 (Del. Ch. 2006) (citations omitted) (emphasizing that Section 220 inspection rights are not akin to broad discovery permitted under Rule 34); *see also Sec. First*, 687 A.2d at 569 (stating that a stockholder demanding inspection bears the burden of showing that each of the requested books and records is "essential to the accomplishment of the stockholder's articulated purpose").

[29] *Wal-Mart Stores, Inc. v. Ind. Elec. Workers Pension Tr. Fund IBEW*, 95 A.3d 1264, 1272 (Del. 2014) (quotation omitted).

[30] *Brehm v. Eisner*, 746 A.2d 244, 266 (Del. 2000).

**WILSON**
**SONSINI**

Beth A. Keller, Esquire
July 12, 2024
Page 8

To begin, the Demand makes no attempt to articulate how the nineteen broad categories of documents sought are "necessary and essential" to accomplish the Stockholder's stated purpose.[31]  For example, the Demand seeks "Board materials regarding the resignation of Peter Faricy from his roles as CEO, President and Chairman of the Board," as well as "[d]ocuments sufficient to reflect whether the new material weaknesses and capitalization issues revealed on April 23, 2024 concern" software-related costs and issues.[32]  But the Stockholder fails to articulate any way such documents are necessary and essential to investigating purported wrongdoing in connection with the Restatement.

The Demand also asks for "all" documents, without limitation, related to three different topics,[33] and requests informal Board materials, officer-level documents, electronic communications.[34]  But the Stockholder has not made any attempt to articulate why formal Board-level materials are insufficient such that production of communications and officer-level documents is necessary and essential to the stated purpose.[35]

---

[31] *See Amazon*, 2022 WL 1760618, at *13 (finding requests for "[a]ny" documents "regarding" the subject of the demand improper, as it was "far from the rifled precision that Delaware law requires"); *Sec. First*, 687 A.2d at 569–70 (finding requests for "all minutes" and "all documents" improper, as it was not "circumscribed with rifled precision").

[32] Demand at 10 ¶¶ 10, 11, 17.

[33] *Id.* at 9–10 ¶¶ 2, 4, 19.

[34] *Id.* at 8–10 ¶¶ 1, 12–18 (failing to cabin "Board Materials" to formal Board materials); *id.* at 9–10 ¶¶ 5–6, 8–9 (requesting "communications" or "[d]ocuments reflecting communications"); id. at 9–10, ¶¶ 3–4, 7–11 (requesting "[d]ocuments sufficient" to reflect certain items, but failing to cabin request to formal Board materials).

[35] *See KT4 P'rs LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 752–53 (Del. 2019) ("In general, these decisions reflect the principle that the Court of Chancery should not order emails to be produced when other materials (e.g., traditional board-level materials, such as minutes) would accomplish the petitioner's proper purpose . . . ."); *Amalgamated Bank v. Yahoo! Inc.,* 132 A.3d 752, 790 (Del. Ch. 2016) ("The starting point—and often the ending point—for a sufficient inspection will be board level documents[.]"), *abrogated on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933 (Del. 2019); *see also Detectives' Endowment Ass'n v. McDonald's Corp.*, C.A. No. 2021-0673-JRS, at 27 (Del. Ch. Nov. 29, 2021) (TRANSCRIPT) ("[G]enerally, a plaintiff is entitled to board-level documents and nothing more.").

WILSON
SONSINI

Beth A. Keller, Esquire
July 12, 2024
Page 9

Further, the Demand is overbroad in that it seeks information that is otherwise publicly available from other sources, including, for example, information publicly filed with the SEC or available on the Company's website.[36]  Finally, to the extent that the Demand seeks documents and materials subject to the attorney-client privilege and other applicable privileges, such as privileged drafts, those documents are not subject to inspection.[37]

*     *     *

Notwithstanding the Demand's deficiencies and without waiving any objections, SunPower is willing to provide to the Stockholder for inspection the following categories of documents for the period from February 16, 2024 to April 17, 2024:

1.  Final non-privileged minutes of any meeting of the Company's Board, or the Audit Committee thereof, at which the information disclosed in the April 17 announcement was discussed.

2.  Final non-privileged minutes of any meeting of the Company's Board, or the Audit Committee thereof, at which the Company's inability to timely file its 2023 Form 10-K was discussed.

3.  Formal, Board-level, non-privileged presentation materials for any Board or Audit Committee meetings referencing the topics in categories 1 and 2 above.

4.  Director questionnaires for any current member of the Board for the year 2024.

Any production of books and records will be conditioned on the Stockholder entering into a standard confidentiality agreement with the Company.

---

[36] *See* Demand at 9–10 ¶¶ 3 (seeking documents sufficient to identify the directors constituting the Special Committee), and 13–14 (seeking materials sufficient to describe the material weaknesses in the Company's internal controls over financial reporting and to describe the Board's role in overseeing the internal audit and its outside public auditor); *Wal-Mart*, 95 A.3d at 1272 (information is not "necessary and essential" to a books and records demand unless it "is unavailable from another source").

[37] *See Wal-Mart*, 95 A.3d at 1278 (recognizing the general rule that the Company is not required to produce privileged materials under Section 220, absent extraordinary circumstances).

**WILSON
SONSINI**

Beth A. Keller, Esquire
July 12, 2024
Page 10

### 3.    The Stockholder's Additional Concern

In addition to seeking books and records under Section 220, the Stockholder raises an additional concern that, under Section 211, the Company's annual meeting was due to be held no later than June 11, 2024, and demands that an annual meeting be scheduled and held.[38]  Under SEC Rule 14a-3, the Company is required to furnish its annual report if the meeting concerns the election of directors.  As the Stockholder is aware, the Company has not yet filed its 2023 Form 10-K, and consequently, it has been unable to schedule and hold its annual meeting.[39]  However, the Company intends to promptly schedule and hold its annual meeting as soon as practicable, consistent with its obligations under SEC rules and procedures.[40]

*        *        *

Nothing in this letter should be deemed an admission that the Demand complies with the requirements of Section 220 or an acknowledgement that SunPower agrees with the factual assertions (or conclusions drawn therefrom) set forth in the Demand.

Please contact me if you have any questions.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI, P.C.

Andrew D. Cordo

---

[38] Demand at 12.

[39] SunPower Corp., Notification of Late Filing (Form 12b-5), Part III (Feb. 29, 2024).

[40] The Demand also "suggests that a new independent director be elected."  Demand at 12. However, the Affiliation Agreement between SunPower and Sol constrains the Company's ability to appoint additional independent directors.  *See* SunPower Corp., Amended Annual Report (Form 10-K/A), at 98 (Dec. 18, 2023).