POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
Austin P. Van
(*pro hac vice*)
Samantha Daniels
(*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
avan@pomlaw.com
sdaniels@pomlaw.com

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE SUNPOWER CORPORATION SECURITIES LITIGATION | Case No.:  3:23-cv-05544-RFL |
| This Document Relates to: | **CLASS ACTION** |
| *ALL ACTIONS* | **PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR CONSOLIDATION** |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................................1

II.    ARGUMENT.........................................................................................................................1

    A.    JUDICIAL ECONONY WARRANTS CONSOLIDATION AND LEAVE TO
        AMEND. ....................................................................................................................1

    B.    LEAVE TO AMEND TO INCLUDE THE LATEST INSTANCES OF THE SAME
        FRAUD IS WARRANTED. ........................................................................................5

        1.    Amending To Add Recent Events Would Not Be Futile, But Rather Would
            Substantiate The Same Allegations of Fraud in the Initial FAC. .......................5

        2.    Amendment Would Leave No Doubt That Lead Plaintiff Has Standing. ..........7

        3.    Defendants Will Suffer No Prejudice From Amendment...................................9

        4.    There is No Basis to Find Plaintiffs' Undue Delay Or Bad Faith. ..................10

III.    CONCLUSION...................................................................................................................10

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR
CONSOLIDATION AND LEAVE TO FILE CONSOLIDATED COMPLAINT- 3:23-cv-05544-RFL

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.C. ex rel. Calhoun v. City of Santa Clara*,
2014 WL 1678004 (N.D. Cal. Apr. 28, 2014) .................................................................. 10

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) .................................................................................................. 9

*Cabell v. Zorro Prods. Inc.*,
2016 WL 9180435 (N.D. Cal. Sept. 23, 2016) ..................................................................... 9

*Casas-Montejano v. Holder*,
2011 WL 5299305 (E.D. Cal. Nov. 2, 2011) ......................................................................... 2

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) .................................................................................................. 9

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ......................................................................................... 1, 8, 9

*Est. of Cornejo ex rel. Solis v. City of Los Angeles*,
618 F. App'x 917 (9th Cir. 2015) ........................................................................................... 1

*Francisco v. Abengoa, S.A.*,
481 F. Supp. 3d 179 (S.D.N.Y. 2020)..................................................................................... 6

*Fru-Con Const. Corp. v. Sacramento Mun. Util.*,
2006 WL 3733815 (E.D. Cal. Dec. 15, 2006) ..................................................................... 10

*Hall v. Children's Place Retail Stores*,
580 F. Supp. 2d 212 (S.D.N.Y. 2008)..................................................................................... 7

*Hofstetter v. Chase Home Fin., LLC*,
751 F. Supp. 2d 1116 (N.D. Cal. 2010) ................................................................................. 5

*In re AST Rsch. Sec. Litig.*,
887 F. Supp. 231 (C.D. Cal. 1995) ......................................................................................... 9

*In re BioMarin Pharm. Inc. Sec. Litig.*,
2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ............................................................................ 6

*In re Impax Laboratories, Inc. Sec. Litig.*,
2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) ....................................................................... 9

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001)................................................................................................. 6

*In re VeriSign, Inc.*,
  2005 WL 88969 (N.D. Cal. Jan. 13, 2005) ......................................................................... 8

*Kin-Yip Chun v. Fluor Corp.*,
  2020 WL 2745527 (N.D. Tex. May 26, 2020) .................................................................... 5

*Krainski v. Nev. ex rel. Bd. of Regents*,
  616 F.3d 963 (9th Cir. 2010) ............................................................................................. 7

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008) ............................................................................................. 5

*Leong v. Square Enix of Am. Holdings, Inc.*,
  2010 WL 11519184 (C.D. Cal. Jan. 20, 2010) .............................................................. 1, 8

*Mehedi v. View, Inc.*,
  2024 WL 2969982 (N.D. Cal. June 12, 2024) .................................................................... 8

*Mehedi v. View, Inc.*,
  2024 WL 3748012 (N.D. Cal. Aug. 8, 2024) ..................................................................... 9

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ........................................................................................... 6

*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ........................................................................................... 10

*Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
  2020 WL 1181366 (D. Conn. Mar. 10, 2020) ................................................................... 5

*Rabbani v. DryShips Inc.*,
  2012 WL 5395787 (E.D. Mo. Nov. 6, 2012) ..................................................................... 6

*Thomas v. Magnachip Semiconductor Corp.*,
  2015 WL 3749784 (N.D. Cal. June 15, 2015) ................................................................... 5

*Underwriters at Lloyd's v. Abaxis, Inc.*,
  2020 WL 3188420 (N.D. Cal. June 15, 2020) ................................................................... 6

*Venkataraman v. Kandi Techs. Grp., Inc.*,
  2022 WL 4225562 (S.D.N.Y. Sept. 13, 2022).................................................................... 6

*Watson v. Ford Motor Co.*,
  2018 U.S. Dist. LEXIS 138324 (N.D. Cal. Aug. 15, 2018)............................................... 9

*Windspeed Acquisition Fund GP v. Dovebid, Inc.*,
   2005 U.S. Dist. LEXIS 28834 (N.D. Cal. Nov. 21, 2005)................................................................ 1

**Statutes**

Private Securities Litigation Reform Act of 1995 ............................................................. 1, 8

**Rules**

Fed. R. Civ. P. 15............................................................................................................. 1, 2, 5, 9

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CONSOLIDATION AND LEAVE TO FILE CONSOLIDATED COMPLAINT- 3:23-cv-05544-RFL

## I.    PRELIMINARY STATEMENT

Defendants agree that "consolidation . . . is both necessary and appropriate," yet oppose the consequences of that consolidation: the filing of a necessary consolidated amended complaint that encompasses the new events detailed in the New Action, which is part and parcel of the same fraud. Judicial economy and common sense dictate that the Court should address all such allegations at one time. Leave to amend is to be granted freely, and granting leave to amend here is overwhelmingly justified—amendment will make certain issues in the pending motion to dismiss wholly unnecessary for the Court to decide. In effect, Defendants' response insists that the Court waste its time deciding issues that will become moot after amendment. Defendants cite no credible prejudice from permitting amendment, and only re-hash arguments better addressed on a motion to dismiss.

## II.    ARGUMENT
### A.    JUDICIAL ECONONY WARRANTS CONSOLIDATION AND LEAVE TO AMEND.

Courts must "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and this rule should be applied with "extreme liberality," particularly in PSLRA securities class actions. *Eminence Cap., LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Absent a strong showing of prejudice, there is a *presumption* under Rule 15(a) favoring amendment. *See id.* at 1052. That presumption is stronger where granting such amendment would "moot" pending issues or motions before the court, thus "serv[ing] the interests of judicial economy." *See, e.g*., *Windspeed Acquisition Fund GP v. Dovebid, Inc*., 2005 U.S. Dist. LEXIS 28834, at *2 (N.D. Cal. Nov. 21, 2005). That is the case here. First, as discussed *infra* 7-9, an amendment would clarify that Lead Plaintiff ("LP") has standing, and thus would moot Defendants' central contention in their pending motion to dismiss that this action should be dismissed with prejudice. Br. at 7-9. "[J]ust as the Ninth Circuit [is] 'mindful of judicial economy considerations'. . . the interests of judicial economy militate against dismissal with prejudice because it is not legally implausible for Plaintiff to allege standing" and "[t]herefore, the Court [should] give[] Plaintiff the opportunity to amend the FAC to establish standing." *Leong v. Square Enix of Am. Holdings, Inc.,* 2010 WL 11519184, at *5 (C.D. Cal. Jan. 20, 2010); *Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 919 n.2 (9th Cir. 2015) (even if the plaintiffs did not have

PLAINTIFF'SREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CONSOLIDATION- 3:23-cv-05544-RFL

standing initially, they properly amended their pleadings under Rule 15 before judgment, "resolv[ing] any standing issues"). In arguing to the contrary, Defendants are demanding that the Court waste time and resources deciding issues that will be cured by and "super[s]eded by" amendment. *E.g.*, *Casas-Montejano v. Holder*, 2011 WL 5299305, at *6 (E.D. Cal. Nov. 2, 2011).

Second, amending the FAC to include the recent events in the New Action Complaint ("NC") would amplify and further substantiate the FAC's current allegations (*infra* at 5-9), so the Court should hold off on ruling on the sufficiency of those allegations until they are fully alleged in the amended complaint. Otherwise, the Court risks wasting time writing an opinion that may be rendered moot by expanded allegations in the amended complaint. Indeed, Defendants concede that there is "substantial overlap in claims and allegations between the FAC and [NC]," that the New Action Complaint is "based on and modeled off of the allegations contained in the" prior FAC, and thus "that consolidation . . . is both necessary and appropriate." Br. at 5. Defendants also acknowledge the material inefficiencies of reopening the "lead plaintiff process . . . [that has] long since been completed." Br. at 5.

Defendants' concession that these cases must be consolidated necessarily raises the need for amendment because the recent, post-class period events in the New Action undoubtedly are connected to the allegations in the FAC. As Plaintiffs' Motion stated, both actions meet the standard for consolidation as they raise "virtually identical factual and legal issues" "based on the same underlying operative facts and circumstances." Mot. at 8-10. The only material difference is that the New Action contains more recent events (*i.e.*, those occurring after the FAC was filed) that are new instances of the same fraud alleged in the FAC that, throughout 2023 and 2024, SunPower misled investors about its financial health, thereby inflating its stock price and damaging investors. *Infra* at 5-9; Mot. at 5-7, 9.

Despite conceding the actions meet the standards for consolidation, and that the New Action is "based on and modeled off of the allegations contained in the" FAC (Br. 5), Defendants ask this Court to rule on their pending MTD that does not consider the recent allegations in the to-be-consolidated, nearly identical action. Defendants would have the Court consolidate the actions, but then insulate Defendants from accountability for the more recent instances of the same fraud underlying both. Under

Defendants' proposal, the Court would ***never*** adjudicate the new allegations contained in the consolidated amended complaint. Certainly, a convenient scenario for Defendants.

Defendants' only basis for this request is to contend that, although the newer action is "based on and modeled off of the [FAC's] allegations" (Br. at 5), "the subsequent events [detailed in the later-filed action] are not connected to the statements challenged in the FAC" (*e.g.*, *id*. 10-11). Defendants' sparse examples (*id*.) of events purportedly "[un]connected" from the FAC, however, belie this claim.

Defendants first claim that "SunPower's [July 17, 2024] letters to its dealers announcing that it was canceling its operations" is unconnected to the FAC because the letter purportedly "sa[ys] nothing regarding what Defendants knew when speaking about the loan covenants nine months earlier." Br. at 10-11. But that overly myopic view of the FAC ignores how the letter offers further support for the allegation that Defendants had been misrepresenting the strength of the financial metrics underlying the financial covenants, such as EBITDA and liquidity, which put it in breach, cut off its main credit source, and blocked access to more capital. FAC¶¶28-39, 47-70. It also supports the claim that SunPower could not, as Defendants knew and mispresented to the market, continue as a "going concern." FAC¶¶71-95.[1] However, Defendants never deal with the reality that compliance with financial covenants and representations about cash position are tied to SunPower's financial health.[2]

Defendants do not (and cannot) attempt to argue that other recent revelations are unconnected to the allegations in the FAC, including new revelations concerning:

---

[1] It also created another loss event because, following this revelation, investors lost 22% of their stock's value because the market understood this letter to "effectively marks the end for SPWR as an operating business," forcing analysts to conclude that, "considering the debt that the company has accumulated, we believe that SPWR's equity no longer has any value." NC¶¶38-43.

[2] Defendants' only other "example" attempting to show that these recent events are "not connected" to the FAC contends that "the departure of SunPower's COO says nothing about whether SunPower's going concern statements were false when made a year earlier." Br. at 10-11. Yet Defendants' own auditor later cited such management misconduct in reporting its financials, including those metrics that would inform SunPower's cash position. NC¶¶33-35. Defendants also conveniently omit that COO Johnson was also SunPower's Executive Vice President, and that the dual roles place more onus on Johnson's involvement in preparing SunPower's financial statements and calls into question the reasons for her departure. That inference is particularly salient here, where within three months of that departure, SunPower's CEO also was fired. NC¶20.

Hidden Financials:  On February 29, 2024, Defendants announced that SunPower would not file its annual 10-k report for the fiscal year 2023, the year encompassing the FAC's class period. NC¶22.  On April 23, 2024, Defendants revealed, without further explanation, that old and new "material weaknesses" in the Company's financial reporting rendered any financial disclosures unreliable, triggering the need for SunPower to *again* restate all of them for the past *two years*—including those within the FAC's class period.  NC¶¶25-27.  On May 13, 2024, Defendants revealed not only that SunPower would not file quarterly financials, but also that the allegedly forthcoming restatements were required "as a result of certain misstatements identified by the Company in connection with the preparation of its financial statements."  NC¶29.  These recent revelations are part of the same concerted effort outlined in the FAC—Defendants were actively hiding the poor financial health underlying the covenants and its cash position.  FAC¶¶28-39, 47-95.  That inference is particularly strong given that, on March 20, 204 and May 17, 2024, Defendants revealed that SunPower received two notices deficiency from Nasdaq for failing to issue these required statements.  NC¶30.

Auditor Quits, Citing Management's Misconduct:  On July 3, 2024, an 8-K revealed that, three months earlier, on April 8, 2024, the Company's auditor, Ernst & Young ("EY"), resigned.  In doing so, EY cited "an ineffective [financial] control environment," and that unspecified "information ha[d] come to [EY's] attention that has made EY unwilling to be associated with the financial statements prepared by management."  EY believed that information, "may . . . cause EY to be unwilling to rely on management's representations," and "that allegations of misconduct by senior members of management, who had significant roles in internal control over financial reporting and upon whose representations EY relied, were within the scope of EY's audit."  NC¶¶33-35.  This resignation, accompanied by allegations of management's "misconduct," is further support for the FAC's claims that Defendants were illicitly inflating its financial health and thus its stock price.

SEC Opens Investigation of Defendants' Accounting Practices:  The same July 3, 2024 8-K also revealed that "[o]n February 28, 2024, the SEC issued a document subpoena to the Company, which relates to certain accounting matters, including aspects of the Company's revenue recognition practices, with a focus on the periods" issued over the last two years.  *See* NC¶34.  That the SEC began

investigating SunPower's accounting covering the same years as the FAC is relevant to the FAC's claims that management was misrepresenting the strength of SunPower's finances.

SunPower Abruptly Files Bankruptcy:  The August 5, 2024, bankruptcy supports the FAC's allegations that Defendants' rosy statements about the Company's cash position and financial health (on which the compliance with its financial covenants relied) were inflated.  FAC¶¶28-39, 47-95.

Properly viewed, such new allegations are a "clear continuation of the conduct" alleged in the FAC.  *See Kin-Yip Chun v. Fluor Corp*., 2020 WL 2745527, at \*5-6 (N.D. Tex. May 26, 2020); *Ontario Tchrs.' Pension Plan v. Teva Pharm. Indus*, 2020 WL 1181366, at \*33-34 (D. Conn. Mar. 10, 2020).  Because they are connected, a ruling on Defendants' pending MTD now would waste judicial resources for this additional reason.  The same is true of dismissing these claims without such leave, which (given the severity of SunPower's decline) inevitably would reopen the lead plaintiff process, subject Defendants to new suits based on the same conduct, and delay investors' resolution of these claims.[3]

**B.  LEAVE TO AMEND TO INCLUDE THE LATEST INSTANCES OF THE SAME FRAUD IS WARRANTED.**

As Defendants acknowledge, the liberality of Federal Rule 15 governs leave to amend.[4]  Courts consider whether the amendment would be futile, the prejudice to the opposing party, and any undue delay or bad faith on the part of the moving party in seeking to amend, *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008), but construe "all inferences . . . in favor of granting the motion to amend," *Hofstetter v. Chase Home Fin., LLC*, 751 F. Supp. 2d 1116, 1122 (N.D. Cal. 2010).

**1.  Amending To Add Recent Events Would Not Be Futile, But Rather Would Substantiate The Same Allegations of Fraud in the Initial FAC.**

Because the recent events support the FAC's allegations, an amendment to add them would not be futile, but would substantially bolster those allegations.  Defendants' attempt to dismiss these post-

---

[3] Court thus hold that the mere "expans[ion] of the class period" does not alone create a need to re-publish the notice.  *Thomas v. Magnachip Semiconductor Corp*., 2015 WL 3749784, at \*4 (N.D. Cal. June 15, 2015) ("In general, republication is not required where a complaint expands the class period or includes an additional defendant or a closely related new claim.").

[4] Because Defendants raised the standards for leave to amend, Plaintiffs address them herein.  Br. at 7 & n.3.  That Plaintiffs did not affix a "proposed" draft amended complaint to this motion is not surprising given that the New Action Complaint contains the very allegations Defendants need to "properly evaluate whether amendment is appropriate."  Br. at 4.

5

class period developments as impermissible "fraud by hindsight" irrelevant to showing falsity and scienter (*e.g.*, Br. at 10-11) is wrong.[5]  First, post-class period statements revealing the truth about prior disclosures are not "'fraud by hindsight,' but rather an admission by [defendant] that earlier statements were false when made." *Venkataraman v. Kandi Techs. Grp., Inc.*, 2022 WL 4225562, *6 (S.D.N.Y. Sept. 13, 2022) (post-class period admission that defendant discovered material weaknesses in internal controls during the class period that were not fully remediated).  The same is true of the revelations about the true state of SunPower's financial reporting and financial health.  Indeed, Defendants have *admitted* that such statements are relevant to falsity by using them to argue (before the dire news of bankruptcy broke shortly after) that SunPower's finances were sound.  MTD Br. at 12.[6]  This confirms that SunPower's recent insolvency events are salient facts indicative of Defendants' fraud.[7]

Second, plaintiffs may "rel[y] on post-class period [admissions] to confirm what a defendant should have known during the class period" to support scienter.  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001); *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1231-32 (9th Cir. 2004) (considering post-class period admissions of knowledge to reverse dismissal); *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *13 (N.D. Cal. Jan. 6, 2022) (post-class period admission by executive "contributes to an inference of scienter").  Given the gravity of the recent bombshells, it strains credulity to think that SunPower's key officers were not aware of the Company's

---

[5] More fundamentally, Defendants ignore that such issues are heavily factually driven—making a *grant* of leave to amend all the more important.  A finding of futility is "premature" because they "have not been tested by a motion to dismiss." *Underwriters at Lloyd's v. Abaxis, Inc.*, 2020 WL 3188420, at *4 (N.D. Cal. June 15, 2020).

[6] For instance, in contending statements about SunPower's "going concern" over the next 12 months were not false, Defendants argued that given "it has been more than 12 months since the first challenged statement and nearly 12 months since the second, and yet ***SunPower has continued as a going concern***," "Plaintiffs cannot plead fraud where statements are false only in hindsight," and "this Plaintiff should certainly not be permitted to plead fraud where the statements are ***true in hindsight***." MTD Br. at 12.

[7] Defendants out-of-circuit authorities (Br. at 10) are not to the contrary.  In *Rabbani v. DryShips Inc.*, 2012 WL 5395787, at *6 (E.D. Mo. Nov. 6, 2012), Plaintiffs "provid[ed] no facts contemporaneous" to the challenged statement to show it was false, and in *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 210 (S.D.N.Y. 2020), "Plaintiffs fail[ed] to plead any facts in support of the allegation that the company's statements were false at the time they were made," but here, Plaintiffs show that as of October 1, 2023, Defendants were in breach of those covenants.  FAC¶¶28-39, 47-95.

financial freefall when making prior statements assuring investors to the contrary. *Hall v. Children's Place Retail Stores*, 580 F. Supp. 2d 212, 227, 233 (S.D.N.Y. 2008) (holding later admissions, "coupled with defendants' continuous intimate knowledge of company affairs," supports scienter).[8]

### 2.      Amendment Would Leave No Doubt Regarding Lead Plaintiff's Standing.

An amendment is futile only if it is "clear . . . the complaint could not be saved" by the amendment. *Krainski v. Nev. ex rel. Bd. of Regents*, 616 F.3d 963, 972 (9th Cir. 2010) (citation omitted). Defendants' main futility contention is that LP "lacks standing to pursue the claims alleged in the FAC because he sold all his SunPower stock by August 7, 2023" before the first alleged corrective disclosure "on November 15, 2023." Br. at 8. But Plaintiffs' opposition to Defendants' motion to dismiss explained how an amendment would clarify that July 26, 2023 was a corrective disclosure plainly conferring standing. MTD Opp. at 15.[9] Before that date, on July 18, 2023, LP purchased over $1 million of SunPower shares on the basis of Defendants' false statements about the strength of its financial health on May 3, 2023, the start of the FAC's class period. That LP incurred $360,000 in losses by selling them on July 28, 2023, after the July 26, 2023 revelation that SunPower was forced to revised downward its financial projections, confirms his injury here. FAC¶¶48-49.

This also confirms LP's ability to represent the class. "Simply because certain class members were injured by misrepresentations that came after the [LP] had already acquired [SunPower] stock

---

[8] Defendants admit that these new events are not futile so far as the "subsequent events could become additional corrective disclosures" to bolster loss causation. Br. at 10-11. Defendants instead contend that "further allegations of loss causation cannot fix the FAC's failure to plead the separate elements of falsity and scienter," and "[b]ecause Plaintiff makes no effort to explain why amendment would not be futile, amendment should be denied." *Id*. As discussed, that is false; recent events provide "further allegations" on all prongs. *Supra* at 5-7.

[9] For this reason, such amendment would not "contradict" any prior factual statements. *Contra* Br. at 9 (citing *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc*., 744 F.3d 595, 600 (9th Cir. 2014); *Reddy v. Litton Indus., Inc*., 912 F.2d 291, 296 (9th Cir. 1990); *Oliver v. Luner*, 2018 WL 5919471, at *6-7 (C.D. Cal. Aug. 3, 2018)). Defendants' authorities also confirm that denying leave to amend is premature before the Court has had an opportunity to test the fulsome allegations on a motion to dismiss. Br. at 11 (citing *Police Ret. Sys. v. Intuitive Surgical, Inc*., 2012 WL 1868874, at *25 (N.D. Cal. May 22, 2012) (denying leave to amend only after court's prior order directed plaintiffs to deficiencies, which they failed to cure); *Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017) (affirming denial on same grounds: "[d]espite [the court's] explicit warnings, Plaintiffs[] . . . failed to remedy the [identified] deficiencies")).

does not mean that the [LP] cannot represent the class"; "Defendants' argument conflates Article III's standing requirements with [Rule] 23's class action requirements." *In re VeriSign*, 2005 WL 88969, at *4 (N.D. Cal. Jan. 13, 2005). Defendants do not dispute that Suarez and Rodrigues have standing as to the later corrective disclosures, and LP can represent their interests in recovering those later losses.

Contrary to Defendants' claim that the "recent events" in "a SAC would only exacerbate the standing issue raised in the MTD by extending the Class Period even further past when [LP] sold his stock" (Br. at 7-8), those events instead leave no doubt that the July 26, 2023 losses are related to Defendants' scheme to hide the true state of its financials. For instance, on April 23, 2024—nearly a month after the FAC was filed—Defendants revealed that all financial statements from 2023 could "no longer be relied upon" due to "material weakness" over "financial reporting," forcing further restatement of those faulty reports. NC¶¶25-27. And, on July 3, 2024, Defendants admitted that EY resigned because "information has come to its attention that has made EY unwilling to be associated with the financial statements prepared by management," for 2023, citing possible management "misconduct" in reporting. NC¶¶33-35. These recent revelations are more evidence that that the projections on which LP relied when purchasing in July 2023 were tainted by reporting "misconduct" of SunPower's management. Thus, "because it is not legally implausible for [LP] to allege standing," "the Court [should] give[] [LP] the opportunity to amend." *Leong*, 2010 WL 11519184, at *5.[10]

Even crediting *arguendo* that such amendment would be futile to prove *loss causation* as to LP (it is not), the July 26 disclosure is, at minimum, a partial disclosure that confers LP with *Article III standing*. *Mehedi v. View, Inc.*, 2024 WL 2969982, at *4 (N.D. Cal. June 12, 2024) (reversing order dismissing complaint for lack of LP standing given LP suffered some losses in the class period from a "partial" disclosure of the fraud; "loss causation and the Article III standing analysis" are "distinc[t]" such that where the complaint contains "factual allegations that may establish an injury that is fairly

---

[10] Defendants' authorities at (Br. at 8) are not to the contrary. As an initial matter, none are securities cases addressing leave to amend under the PSLRA, where courts recognize, "[i]n this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." *Eminence Cap.*, 316 F.3d at 1052. And, in those cases, plaintiffs lacked standing due to failure to plead any injury; here, however, LP has losses in the class period. This confers on him standing and leave to amend will make clear that he also pleads loss causation.

traceable to Defendants' conduct for Article III purposes but are not sufficient to plead loss causation," the lead plaintiff has standing).[11]  That precludes dismissal without leave to amend.[12]

### 3.    Defendants Will Suffer No Prejudice From Amendment.

"Prejudice is the touchstone of the [Rule 15] inquiry," *Eminence Cap.*, 316 F.3d at 1052 (citation and internal quotation marks omitted), and the party opposing "bears the burden of showing prejudice" that is "substantial," *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987); *Watson v. Ford Motor Co.*, 2018 U.S. Dist. LEXIS 138324, at *6 (N.D. Cal. Aug. 15, 2018).  Here, Defendants all but concede the lack of prejudice here, citing only to the purported burden of "requir[ing] Defendants to oppose a new complaint that is defective as a matter of law."  Br. at 6.  Of course, this relies on the success of Defendants cries of futility, and as shown above, *supra* at 5-9, amendments would not be futile here.  Moreover, unlike in Defendants' only authority, there has been no ruling determining that the "Court already knows [the FAC] to be wholly defective as a matter of law," Br. at 6, and thus no rehashing of claims that have "already been decided in a prior stage."[13]

---

[11] That this case has been requested for certification is more reason to grant leave to amend and wait to see if the Court of Appeals provides further clarification on standing.  *Mehedi v. View, Inc.*, 2024 WL 3748012, at *2 (N.D. Cal. Aug. 8, 2024).

[12] Even should the Court later truncate the class period, and it appears that a lead plaintiff lacks standing, the Court may appoint a new lead plaintiff even though the litigation has already commenced. "Defendants ignore the fact that [Suarez, the additional plaintiff] remains a named Plaintiff and since there has been no challenge to his standing to sue, the Court currently has subject matter jurisdiction over this action."  *See, e.g.*, *In re Impax Laboratories, Inc. Sec. Litig.*, 2008 WL 1766943, at *8 (N.D. Cal. Apr. 17, 2008) (original lead plaintiff found to lack standing, permitting fourth amended complaint to substitute new lead plaintiff).  This further confirms no futility here.

[13] There is no basis for other prejudice here.  Such prejudice can be shown where a party alleges new theories late in a case, significantly increases discovery burdens, or forces a defendant to re-litigate claims that have already been decided in a prior stage.  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953-54 (9th Cir. 2006).  The amendments do not include new theories or claims underlying of the case, but instead "conform the pleadings to the evidence" and put "meat on the bone" of a "recurring issue in this action."  *In re AST Rsch. Sec. Litig.*, 887 F. Supp. 231, 236 (C.D. Cal. 1995).  For the same reason, any proposed additions here would not significantly increase discovery burdens.  Any potential prejudice "cannot be equated with the sort of prejudice that defeats a Rule 15 motion, particularly when this case remains at an early stage of litigation"; rather, "[i]ssues of prejudice that arise when a motion to amend comes after significant discovery has been undertaken, or when the case is approaching the expiration of case management deadlines, are not implicated here."  *Cabell v. Zorro Prods. Inc.*, 2016 WL 9180435, at *4 (N.D. Cal. Sept. 23, 2016).  If the Court grants Plaintiffs leave to amend, Defendants can easily incorporate the new revelations into its pending motion to dismiss.

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CONSOLIDATION- 3:23-cv-05544-RFL

**4.    There is No Basis to Find Plaintiffs' Undue Delay Or Bad Faith.**

There is no basis for finding undue delay here.  Defendants intimate that "[LP] did not indicate why amendment was suddenly necessary at this juncture . . . when he has known about many of the cited events since before he filed his [June 18] Opposition."  Br. at 6.  But LP requested leave to amend mere weeks after the largest summer 2024 bombshells emerged, *A.C. ex rel. Calhoun v. City of Santa Clara*, 2014 WL 1678004, at *3 (N.D. Cal. Apr. 28, 2014) (seven months not undue), and granting leave because of new information is "common and well established," *Fru-Con Const. Corp. v. Sacramento Mun. Util.*, 2006 WL 3733815, at *5 (E.D. Cal. Dec. 15, 2006).  In any event, Defendants cannot claim Plaintiffs were dilatory when the new revelations were leaking forth over several months.

The opposing party must provide substantial competent evidence of bad faith, *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), and Defendants' baseless speculation of "bad faith" falls far short.  Defendants appear to suggest that—after Defendants refused to consent to a briefing schedule for an amended complaint—counsel for Plaintiffs from both actions supposedly colluded "to use the filing of the *Rodrigues II* Action to obtain the same relief."  Br. at 6.  Factually, that is blatantly wrong.  Paskowitz Declaration ¶¶6-8.  Counsel for LP had no communication with Counsel for Rodrigues until a few days before the Rodrigues action was filed, and at that time, the New Action Complaint had been fully drafted.  *Id*. ¶7.  Logically, it makes little sense for LP to procure "the filing of a . . . tardy copycat class action . . . to circumvent the Court's adjudication of Defendants' MTD" (Br. at 6), given LP could simply file a motion for leave to amend to get that relief—*and* avoid sharing any damages with another law firm.[14]  That Defendants resorted to such unsubstantiated accusations is indicative of Plaintiffs' lack of bad faith—and Defendants' desperation to avoid facing the latest consequences of the same fraud.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an Order consolidating the Related Actions and granting leave to file a Consolidated Amended Complaint.

---

[14] For the same reason, Plaintiff thus is not attempting "'to expand the procedural rights he would have otherwise enjoyed.'"  Br. at 6 (quoting *Russ v. Standard Ins. Co*., 120 F.3d 988, 990 (9th Cir. 1997)).

PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CONSOLIDATION- 3:23-cv-05544-RFL

Dated:  September 5, 2024

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Austin P. Van*

Austin P. Van
(*pro hac vice*)
Samantha Daniels
(*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
avan@pomlaw.com
sdaniels@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Plaintiffs*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Bezeyem Lemou*

11

PROOF OF SERVICE

I hereby certify that on September 5, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Austin P. Van*
Austin P. Van

12

PLAINTIFF'SREPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CONSOLIDATION- 3:23-cv-05544-RFL