**CHART SUMMARIZING INFORMATION REQUIRED**
**BY 15 U.S.C. §§ 78u-4(b)(1) and (2), PURSUANT TO COURT'S STANDING ORDER**

*In re SunPower Corporation Securities Litigation*, No. 3:23-cv-05544-RFL (N.D. Cal)

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| No. 1 AC ¶149 | **When:** February 15, 2023 **Where:** Q4 and full-year 2022 earnings call **Speakers:** Defendant CEO Faricy[1] | EBITDA guidance was "*meant to be conservative*," reflecting "*some uncertainty in the economy*." | SunPower subsequently admitted in April 2024 that "any previously issued or filed reports, press releases, earnings releases, investor presentations or other communications of the Company describing the Company's financial results or other financial information relating to the periods covered by the Affected Financial Statements [i.e., from January 2022 through October 2023] should no longer be relied upon." | Defendants Faricy held himself out in their public statements as personally familiar with the Company's financial performance and regularly spoke to investors and securities analysts regarding the Company's financial metrics, cash position, lending agreements, and financial covenants. Having spoken on these subjects so many times, Defendants Faricy and Eby knew, or were deliberately reckless in not knowing, that the statements about SunPower's cash position were false and misleading and omitted material information. |
| No. 2 AC ¶151 | **When:** May 3, 2023 **Where:** Quarterly Report for Q1 2023, filed on Form 10-Q with the SEC **Speakers:** | "*We currently anticipate that our cash and cash equivalents will be sufficient to meet our obligations over the next 12 months from the date of issuance of our financial statements.*" | The statement was materially false and misleading and omitted material facts when made because at the time SunPower did not have "cash and cash equivalents," and did not anticipate having "cash and cash equivalents sufficient to meet [its] obligations over the next 12 months." In fact, by the time this statement was made, SunPower already lacked sufficient cash to pay Maxeon, a key supplier. In a November 15, 2023, press release, Maxeon explained that it had suspended shipments to SunPower starting in July | Defendants Faricy and Eby held themselves out in their public statements as personally familiar with the Company's financial performance. Defendants Faricy and Eby regularly spoke to investors and securities analysts regarding the Company's financial metrics, cash position, lending agreements, and financial covenants. Having spoken on these subjects so many times, Defendants Faricy and Eby knew, or were deliberately reckless in not knowing, that the statements about SunPower's cash position were false |

[1] By identifying a speaker, Plaintiffs do not intend to disclaim that others may be liable as control persons or otherwise for the actionable misleading statements and omissions.

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | Defendant CFO Eby, Defendant CEO Faricy | | 2023 because SunPower had fallen behind on payments, so SunPower could not reasonably have anticipated as of May 2023 that its "cash and cash equivalents" would be "sufficient to meet [its] obligations over the next 12 months."<br><br>Former employees related that throughout 2022 and 2023 SunPower had been unable to pay many suppliers to the point those suppliers threatened legal action or delivery cancellation.<br><br>Former employees related that SunPower suffered chronic cash problems starting at least as early as 2022, which were only getting more dire throughout 2023.<br><br>SunPower subsequently admitted in April 2024 that "any previously issued or filed reports, press releases, earnings releases, investor presentations or other communications of the Company describing the Company's financial results or other financial information relating to the periods covered by the Affected Financial Statements [i.e., from January 2022 through October 2023] should no longer be relied upon."  As later revealed in April 2024 and July 2024, all the Company's financial statements and accounting disclosures for the past two years had been compromised by accounting errors, including those supposedly hidden by management, | and misleading and omitted material information.<br><br>SunPower admitted, in the Q1 and Q2 2023 10-Q quarterly reports signed by Defendant Eby, that, "We continuously evaluate our liquidity and capital resources, including our access to external capital, to ensure we can finance our future capital requirements."  As the Company's CEO and CFO, Defendants Faricy and Eby understood that (a) Maxeon, as its key supplier of solar panels, would demand to be paid pursuant to the operative master supply agreement, and (b) SunPower's possession of cash sufficient to meet its obligations, both to Maxeon and to its other suppliers, was a fact material to markets. Before signing the Q2 2023 Form 10-Q, Defendants Faricy and Eby certainly would have known that the Company was delinquent in its payments to its most important supplier.<br><br>Former employees have confirmed that SunPower's longstanding—and worsening—liquidity problems were well known to management, including CEO Faricy and CFO Eby.<br><br>Former employees have confirmed that SunPower's inability to pay suppliers was well known to management, including CEO Faricy and CFO Eby. |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | forcing the Company's own auditor to resign given the lack of transparency and alleged gamesmanship and misconduct. | |
| No. 3 AC ¶151 | **When:** August 2, 2023 **Where:** Quarterly Report for Q2 2023, filed on Form 10-Q with the SEC **Speakers:** Defendant CFO Eby, Defendant CEO Faricy | "*We currently anticipate that our cash and cash equivalents will be sufficient to meet our obligations over the next 12 months from the date of issuance of our financial statements*." | The statement was materially false and misleading and omitted material facts when made because at the time SunPower did not have "cash and cash equivalents," and did not anticipate having "cash and cash equivalents sufficient to meet [its] obligations over the next 12 months." In fact, by the time this statement was made, SunPower already lacked sufficient cash to pay Maxeon, a key supplier. On an August 10, 2023 earnings call, Maxeon CEO William P. Mulligan revealed that Maxeon had "notified SunPower, in writing, that it ha[d] failed to pay approximately $29 million of past due invoices." In a November 15, 2023, press release, Maxeon explained that it had suspended shipments to SunPower starting in July 2023 because SunPower had fallen behind on payments, so SunPower could not reasonably have anticipated as of August 2023 that its "cash and cash equivalents" would be "sufficient to meet [its] obligations over the next 12 months." Former employees related that throughout 2022 and 2023 SunPower had been unable to pay many suppliers to the point those | Defendants Faricy and Eby held themselves out in their public statements as personally familiar with the Company's financial performance. Defendants Faricy and Eby regularly spoke to investors and securities analysts regarding the Company's financial metrics, cash position, lending agreements, and financial covenants. Having spoken on these subjects so many times, Defendants Faricy and Eby knew, or were deliberately reckless in not knowing, that the statements about SunPower's cash position were false and misleading and omitted material information. SunPower admitted, in the Q1 and Q2 2023 10-Q quarterly reports signed by Defendant Eby, that, "We continuously evaluate our liquidity and capital resources, including our access to external capital, to ensure we can finance our future capital requirements." As the Company's CEO and CFO, Defendants Faricy and Eby understood that (a) Maxeon, as its key supplier of solar panels, would demand to be paid pursuant to the operative master supply agreement, and (b) SunPower's possession of cash sufficient to meet its obligations, both to Maxeon and to its other suppliers, was a fact material to markets. Before signing the Q2 2023 Form 10-Q, |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | suppliers threatened legal action or delivery cancellation. | Defendants Faricy and Eby certainly would have known that the Company was delinquent in its payments to its most important supplier. |
| | | | Former employees related that SunPower suffered chronic cash problems starting at least as early as 2022, which were only getting more dire throughout 2023. | Former employees have confirmed that SunPower's longstanding—and worsening—liquidity problems were well known to management, including CEO Faricy and CFO Eby. |
| | | | SunPower subsequently admitted in April 2024 that "any previously issued or filed reports, press releases, earnings releases, investor presentations or other communications of the Company describing the Company's financial results or other financial information relating to the periods covered by the Affected Financial Statements [i.e., from January 2022 through October 2023] should no longer be relied upon." As later revealed in April 2024 and July 2024, all the Company's financial statements and accounting disclosures for the past two years had been compromised by accounting errors, including those supposedly hidden by management, forcing the Company's own auditor to resign given the lack of transparency and alleged gamesmanship and misconduct. | Former employees have confirmed that SunPower's inability to pay suppliers was well known to management, including CEO Faricy and CFO Eby. |
| No. 4 AC ¶126 | **When:** October 24, 2023 **Where:** | "The Company and Bank of America, N.A., the administrative agent and collateral agent for the lenders (the 'Agent') under the Credit Agreement dated | The statement was materially false and misleading and omitted material facts when made because: The statement leads investors to believe that SunPower was not yet in breach of its financial covenants—and was seeking | Defendants Faricy and Eby held themselves out in their public statements as personally familiar with the Company's financial performance. Defendants Faricy and Eby regularly spoke to investors and securities analysts regarding the Company's financial |

4

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | Form 8-K<br><br>**Speakers:**<br><br>Defendant CFO Eby, Defendant CEO Faricy | as of September 12, 2022 (as amended by the First Amendment, dated as of January 26, 2023, the 'Credit Agreement'), among the Company, the lenders party thereto from time to time, and the Agent ***are currently negotiating the terms and conditions of a consent and waiver to address the effects of the Restatement under the Credit Agreement***." | waivers to avoid such breach and default when it issued its restatement—when in fact SunPower was already in breach of its financial covenants, permitting lenders to demand immediate repayment of loans.<br><br>Indeed, SunPower's Q3, filed on December 18, 2023, admitted that SunPower had been in breach of its financial covenants as of October 1, 2023, the close of Q3 2023.<br><br>By referencing "effects of the Restatement," which "restated" the Company's "disclosure controls and procedures," SunPower created the impression that the Company was only potentially in breach of reporting covenants, when in fact the Company was in breach of more serious covenants related to SunPower's financial condition.<br><br>While the statement reported certain facts required to be reported in a current report on Form 8-K, it misleadingly omitted other required facts, including that it was in breach of financial covenants as required under S-K Item 2.04 (requiring an 8-K for "Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement").<br><br>SunPower subsequently admitted in April 2024 that "any previously issued or filed reports, press releases, earnings releases, | metrics, cash position, lending agreements, and financial covenants.  Having spoken on these subjects so many times, Defendants Faricy and Eby knew, or were deliberately reckless in not knowing, that the statements about SunPower's compliance with its financial covenants and cash position were false and misleading and omitted material information.<br><br>SunPower admitted, in the Q1 and Q2 2023 10-Q quarterly reports signed by Defendant Eby, that, "We continuously evaluate our liquidity and capital resources, including our access to external capital, to ensure we can finance our future capital requirements."  As the Company's CEO and CFO, Defendants Faricy and Eby understood that (a) Maxeon, as its key supplier of solar panels, would demand to be paid pursuant to the operative master supply agreement, and (b) SunPower's possession of cash sufficient to meet its obligations, both to Maxeon and to its other suppliers, was a fact material to markets. Before signing the Q2 2023 Form 10-Q, Defendants Faricy and Eby certainly would have known that the Company was delinquent in its payments to its most important supplier. |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | investor presentations or other communications of the Company describing the Company's financial results or other financial information relating to the periods covered by the Affected Financial Statements [i.e., from January 2022 through October 2023] should no longer be relied upon." As later revealed in April 2024 and July 2024, all the Company's financial statements and accounting disclosures for the past two years had been compromised by accounting errors, including those supposedly hidden by management, forcing the Company's own auditor to resign given the lack of transparency and alleged gamesmanship and misconduct. | |
| No. 5 AC ¶131 | **When:** November 1, 2023 **Where:** Q3 2023 Investor Call **Speakers:** Defendant CFO Eby | Question – Brian Lee: I know, Beth, you're still working with your creditors on the waivers and what have you, but could you remind us what the actual covenants are? I believe there might be some either minimum cash and/or EBITDA coverage covenants. Could you remind us what those are, where you stand relative to those today? Answer – Elizabeth Eby: So, the covenant – there is four | The statement was materially false and misleading and omitted material facts when made because Defendant Eby's statement misleadingly suggested that SunPower was not yet in breach of its financial covenants and was seeking waivers to avoid such breach and default when it issued its restatement, when in fact it was already in breach of its financial covenants. By the time this statement was made, SunPower already admitted that it was in breach of its financial covenants as of October 1, 2023, and as such, the Company's compliance with its financial covenants was not "fine in Q3." | As the Company's CFO, Defendant Eby knew that SunPower's compliance with its financial covenants was material to its ability to continue as a going concern and, therefore, was material to investors. She also understood how close the Company was to violating those covenants, especially as SunPower repeatedly reduced its guidance throughout 2023. Thus, Defendant Eby understood the importance of speaking accurately and truthfully when describing SunPower's compliance with its financial covenants. Her knowledge of the significance of SunPower's financial covenants creates an inference that she spoke intentionally and deliberately when |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | covenants. One is a net debt-to-EBITDA with all the adjustments of 4.5x, and that's all the non-recourse. If you take out the non-recourse groups, there's a interest coverage and there's a minimum liquidity, not minimum cash, and an asset covenant.<br><br>Question – Brian Lee: Okay. And...<br><br>Answer – Elizabeth Eby: *And we reached on all of those*.<br><br>Question – Brian Lee: Yes. And given the...<br><br>Answer – Elizabeth Eby: Well, pending final adjustments. *But yes*.<br><br>Question – Brian Lee: Understood. Sorry, I cut you off there. So it sounds like even given the negative EBITDA outlook here that you updated the market on this morning, you still plan to be in compliance with all | The Company's compliance was not "fine in Q3," and SunPower had not "reached on all of those" financial covenants as of November 1, 2023. Rather, SunPower later admitted that it was in breach of its financial covenants as of October 1, 2023, the end of SunPower's Q3. And, in stating that SunPower had "reached on all of those" financial covenants but that nevertheless SunPower was "talking to the banks about waivers for the restatement," Eby gave the false impression that SunPower was seeking waivers only to address its reporting covenants, not the financial covenants related to financial health such as EBITDA or cash that it had purportedly "reached." On December 18, 2023, SunPower admitted it had been in breach of its financial covenants as of October 1, 2023. This impression was all the more misleading given SunPower's prior statements touting its sufficient cash position.<br><br>SunPower subsequently admitted in April 2024 that "any previously issued or filed reports, press releases, earnings releases, investor presentations or other communications of the Company describing the Company's financial results or other financial information relating to the periods covered by the Affected Financial Statements [i.e., from January 2022 through October 2023] | she said that the Company was "fine" in Q3 2023. If she knew when she spoke that the Company was not "fine," then her misstatement was knowing. If Defendant Eby stated that the Company's compliance with its financial covenants was "fine" in Q3 2023 without actually knowing whether the Company was in fact fine with its compliance with its financial covenants during that period, she acted at a minimum with severe recklessness in making up an answer on a matter that she knew was highly material to markets.<br><br>Eby was aware of SunPower's precarious financial position when she spoke on the November 1, 2023, earnings call. She either knew for a fact that the Company was not "fine" with its financial covenants in Q3 2023, or she was severely reckless in stating definitively that the Company was "fine" in Q3 2023 if she did not have the numbers to answer the question one way or another. Eby certainly understood that the Company's non-compliance with its financial covenants, and its attendant risk of bankruptcy or other material negative consequences, was material to investors. |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | those covenants through year-end? <br><br> Answer – Elizabeth Eby: *We need to get to the final phase of they're always the backward looking and we're fine in Q3 and we're talking to the banks about waivers for the restatement and anything else we need.* <br><br> Question – Brian Lee: Okay. Understood. Helpful. | should no longer be relied upon." As later revealed in April 2024 and July 2024, all the Company's financial statements and accounting disclosures for the past two years had been compromised by accounting errors, including those supposedly hidden by management, forcing the Company's own auditor to resign given the lack of transparency and alleged gamesmanship and misconduct. | |
| No. 6 <br><br> AC ¶¶158 -63, 179 | **When:** <br> February 15, 2024 <br><br> **Where:** <br> Q4 and full-year 2022 and press release <br><br> **Speakers:** <br> Defendant CFO Eby, Defendant CEO Faricy | On February 15, 2024, SunPower announced encouraging and optimistic fourth quarter and full year 2023 financial results and an infusion of additional capital. The press release touted: <br><br> **SunPower Reports Fourth Quarter and Full Year 2023 Results** <br><br> • Added 16,000 customers in Q4, 75,900 new customers in FY2023 <br> • Reported Q4 revenue of $357 million; FY 2023 Revenue of $1.7 billion | As later revealed in April 2024 and July 2024, all the Company's financial statements and accounting disclosures for the past two years had been compromised by accounting errors, including those supposedly hidden by management, forcing the Company's own auditor to resign given the lack of transparency and alleged gamesmanship and misconduct. <br><br> That these statements were false and misleading is further revealed by the Company's imminent ceasing of operations and eventual bankruptcy, revealed only months later in July and August 2024. | These revelations came after repeated reassurances that all that was needed to file a valid and reliable Form 10-K and other filings was a bit more time, and that prior issues had been put to bed. And yet, Defendants were plainly aware of new issues, were working on these issues, and knew that they would very likely not be able to file the required reports, despite their indications otherwise. This knowledge could not have dawned on them suddenly but likely was known many weeks earlier than revealed. <br><br> Defendants, because of their positions with SunPower, controlled the contents of SunPower's public statements during the Class Period. The Defendants were each provided with or had access to the |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | • Reported Q4 GAAP Net Loss of ($124) million and Adjusted EBITDA of ($68) million; FY 2023 GAAP Net Loss of ($247) million and Adjusted EBITDA of ($84) million<br>• Announced $175 million of additional capital and $25 million of additional revolving debt capacity<br><br>The FY 2024 Guidance also bespoke optimism and did not hint at any further accounting issues:<br><br>**FY 2024 Guidance**<br><br>Net Loss (GAAP)　　($160) million – ($80) million<br><br>Gross Margin (Non-GAAP)　　17%-19%<br><br>Free Cash Flow　　Positive in second half 2024 | In addition, former employees have confirmed that SunPower was in dire financial health starting as early as 2022.<br><br>Defendants had employed qualitative accounting practices inconsistent with GAAP, requiring the restatement. Indeed, adhering to GAAP ensures that financial information is consistently and accurately reported, and Defendants failed miserably in this regard.<br><br>***Defendants issued assurances in connection with the huge Sol Holdings financing as to the January 1, 2023 financials and the July 2, 2023 financials that were simply untrue.*** To put a fine point on the matter, while Management and the Special Committee were meeting on a near daily basis during January and February 2024 to close the financing transaction with Sol Holding, the Company was simultaneously in the midst of preparing of its financial statements for the fiscal year ended December 31, 2023 during which time, unbeknownst to SunPower's investors, it had identified misstatements and material deficiencies in the Company's disclosure controls and internal controls over financial reporting. It was also dealing with an undisclosed SEC investigation. | information alleged herein to be false and misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected. Because of their positions and access to material, non-public information, the Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the investing public and that the positive representations that were being made were false and misleading. As a result, Defendants are responsible for the accuracy of SunPower's corporate statements and are therefore responsible and liable for the representations contained therein.<br><br>Defendants Faricy and Eby knew, or were deliberately reckless in not knowing, that the statements about SunPower's financial health, including compliance with its financial covenants and cash position, were false and misleading and omitted material information.<br><br>Each of the Defendants were motivated by the desire to buoy investor confidence through the class period and secure an enormous capital infusion from majority shareholder, Sol Holding. |

9

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | "*For 2024, we are focused on profitability and free cash flow, and we expect to be cash flow positive in the second half of 2024 and beyond*," stated Defendant Eby, SunPower CFO, regarding the results. The Company further announced a significant infusion of capital.<br><br>In the February 15, 2024 press release attached as Exhibit 99.1 to the Form 8-K filed that day, Defendant Faricy lauded the recent capital raise: "*With the recent infusion of capital, SunPower is focused on driving positive free cash flow and profitability*." "*This is a new opportunity for SunPower to reinforce our strong foundation as we continue to navigate an uncertain market in early 2024. With this funding and industry tailwinds of extended tax credits and lower equipment costs, we believe SunPower is positioned to execute on maximizing the value* | | |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | *proposition of solar and storage for our customers*."<br><br>Then-CEO Peter Faricy emphasized: "*With this infusion of extra liquidity and working cash-flow to our monetary record, combined with significant expense decreases, SunPower is finding sure ways to situate itself to prevail in 2024 and then some*."<br><br>In addition, and very germane to the issues presented herein, SunPower, in order to obtain the February 14, 2024 Sol Holding Financing agreement, covenanted as follows in Section 5.05 at pp. 64-65 (emphasis added):[2]<br>(a)   *The audited consolidated balance sheet of the Borrower and its consolidated Subsidiaries for the fiscal year ended January 1, 2023*, and the related consolidated | | |

---

[2] https://www.sec.gov/ix?doc=/Archives/edgar/data/0000867773/000086777324000015/spwr-20240214.htm

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | statements of income or operations, shareholders' equity and cash flows for such fiscal year of the Borrower and its consolidated Subsidiaries, including the notes thereto, (i) *were prepared in accordance with GAAP* consistently applied throughout the period covered thereby, except as otherwise expressly noted therein; (ii) *fairly present the financial condition of the Borrower and its consolidated Subsidiaries as of the date thereof and their results of operations, cash flows and changes in shareholders' equity for the period covered thereby in accordance with GAAP consistently applied throughout the period covered thereby, except as otherwise expressly noted therein*; and (iii) | | |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | *show all material indebtedness and other liabilities, direct or contingent, of the Borrower and its consolidated Subsidiaries as of the date thereof, including liabilities for Taxes, material commitments and Indebtedness*. (b) *The unaudited consolidated balance sheet of the Borrower and its consolidated Subsidiaries dated July 2, 2023*, and the related consolidated statements of income or operations, shareholders' equity and cash flows for the fiscal quarter ended on that date (i) *were prepared in accordance with GAAP consistently applied throughout the period covered thereby*, except as otherwise expressly noted therein, and (ii) *fairly present the financial condition of the Borrower and its* | | |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | *consolidated Subsidiaries as of the date thereof and their results of operations, cash flows and changes in shareholders' equity for the period covered thereby*, subject, in the case of clauses (i) and (ii), to the absence of footnotes and to normal year-end audit adjustments. <br><br> (c) The projected consolidated balance sheets, statements of operations and cash flows for the Borrower and its Restricted Subsidiaries and any other projections and budget that have been delivered to the Administrative Agent *were prepared by the Borrower in good faith and were based on assumptions that the Borrower believed were reasonable when made*, it being understood, that actual results during the | | |

14

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | periods covered thereby may differ from the projected results.<br><br>(d) Since *the Closing Date, there has been no event or circumstance, either individually or in the aggregate, that has had or would reasonably be expected to have a Material Adverse Effect.*<br><br>(e) *Neither the Borrower nor any of its Restricted Subsidiaries has, on the Closing Date, any contingent liabilities, liabilities for taxes, unusual forward or long-term commitments or unrealized or anticipated losses from any unfavorable commitments in each case that are material and would need to be disclosed on financial statements in accordance with GAAP*, except (i) as referred to or reflected or provided for in the | | |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | financial statements described in this Section 5.05, (ii) as set forth in Schedule 5.05, or (iii) as otherwise permitted pursuant to this Agreement. | | |
| No. 7 AC ¶169 | **When:** March 14, 2024 **Where:** Press release **Speakers:** Defendant CEO Werner | "*SunPower made great strides to improve our financial footing and we remain laser focused on achieving profitability and cash flow generation*. As a part of this imperative, we're pleased to welcome Tony back to SunPower as our first Chief Revenue Officer," said Tom Werner, Executive Chairman of the Board and Principal Executive Officer of SunPower. "*With Tony's deep expertise in residential renewable energy and exceptional track record working with our valued network of independent solar dealers, we believe his leadership will help put SunPower in a strong position to nurture the Dealer Network and expand its reach, further our market* | | Defendant Werner, because of his positions with SunPower, controlled the contents of SunPower's public statements during the Class Period. Defendant Werner was provided with or had access to the information alleged herein to be false and misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected. Because of their positions and access to material, non-public information, Defendant Werner knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the investing public and that the positive representations that were being made were false and misleading. As a result, Defendant Werner is responsible for the accuracy of SunPower's corporate statements and are therefore responsible and liable for the representations contained therein. Defendant Werner knew, or were deliberately reckless in not knowing, that |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | *leading position in New Homes, and dramatically improve the customer experience.* | | the statements about SunPower's financial health, including compliance with its financial covenants and cash position, were false and misleading and omitted material information.<br><br>Defendant Werner was motivated by the desire to buoy investor confidence through the class period and secure an enormous capital infusion from majority shareholder, Sol Holding. |
| No. 8<br><br>AC ¶172 | **When:**<br><br>March 19, 2024<br><br>**Where:**<br><br>Information Statement on Schedule 14C for purposes of Nasdaq Rule 5635(d)<br><br>**Speakers:**<br><br>Defendant CFO Eby, Defendant CEO Faricy | "Nothing came to Houlihan's attention in the course of this engagement which would lead it to believe that (i) any information provided to Houlihan or assumptions made by Houlihan were insufficient or inaccurate in any material respect or (ii) it was unreasonable for Houlihan to use and rely upon such information or make such assumptions." In other words, neither Management, nor the unnamed members of the Special Committee which surely included members of the Audit Committee, apprised Houlihan of any inquiries, investigations, or ongoing concerns regarding | As later revealed in April 2024 and July 2024, all the Company's financial statements and accounting disclosures for the past two years had been compromised by accounting errors, including those supposedly hidden by management, forcing the Company's own auditor to resign given the lack of transparency and alleged gamesmanship and misconduct, and at the time, the SEC had initiated an investigation into Defendants' accounting practices at least as early as February 28, 2024. | Each of the Defendants were motivated by the desire to buoy investor confidence through the class period and secure an enormous capital infusion from majority shareholder, Sol Holding. They also were motivated to deceive financial advisor Houlihan and conceal facts from Houlihan. They also desired to reassure customers with falsely bullish pronouncements for as long as possible.<br><br>Defendants were working directly with its now-resigned auditor, E&Y, to restate, again and again, the Company's financials from the last two years. There is no way that the Defendants would not have understood and appreciated the importance of issuing those restatements and conveying this financial information accurately to its auditor and the public. That its auditor, E&Y, felt compelled to resign amid allegations of misconduct by management before completing the restatements raises |

17

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | the accuracy of 2022 financials. | | more inferences that the Defendants misled their own auditor as well as the public when relaying information about the Company's financial health. The SEC's ongoing investigation into the Company's accounting practices, initiated as early as February 28, 2024, further aids an inference that the Defendants recklessly, knowingly, or intentionally mislead its auditor and the public. The timing of SunPower's dramatic and apparently sudden decline, culminating in bankruptcy, occurred so soon after these statements is further evidence of scienter. |
| No. 9 AC ¶174 | **When:** March 21, 2024 **Where:** Form 8-K **Speakers:** Defendant CFO Eby | *"[w]hile the Company can provide no assurances as to timing, the Company is working diligently to finalize the Form 10-K and plans to file the Form 10-K as soon as practicable, including to regain compliance with the Listing Rule."* | As Defendants withheld from the market, the SEC had initiated an investigation into Defendants' accounting practices at least as early as February 28, 2024. And as later revealed in April 2024 and July 2024, all the Company's financial statements and accounting disclosures for the past two years had been compromised by accounting errors, including those supposedly hidden by management, forcing the Company's own auditor to resign given the lack of transparency and alleged gamesmanship and misconduct. | Defendant Eby knew, or was deliberately reckless in not knowing, that the statements about SunPower's financial health, including compliance with its financial covenants and cash position, were false and misleading and omitted material information. Defendant Eby was working directly with its now-resigned auditor, E&Y, to restate, again and again, the Company's financials from the last two years. There is no way that Defendant Eby would not have understood and appreciated the importance of issuing those restatements and conveying this financial information accurately to its auditor and the public. That its auditor, E&Y, felt compelled to resign amid allegations of misconduct by management |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | | before completing the restatements raises more inferences that the Defendant Eby misled its own auditor as well as the public when relaying information about the Company's financial health. The SEC's ongoing investigation into the Company's accounting practices, initiated as early as February 28, 2024, further aids an inference that the Defendants recklessly, knowingly, or intentionally mislead its auditor and the public. The timing of SunPower's dramatic and apparently sudden decline, culminating in bankruptcy, occurred so soon after these statements is further evidence of scienter. |
| No. 10 AC ¶149 | **When:** May 13, 2024 **Where:** Form 12b-25 **Speakers:** Defendant CFO Eby, CEO Werner | The Company was "***working diligently and plans to restate the Affected Prior Period Financial Statements and file the 2023 Form 10-K and Q1 2024 Form 10-Q as soon as practicable***." | SunPower's situation was much worse than Defendants were letting on, that the Company had been the subject of an SEC investigation ***for nearly three months—since at least as early as February 28, 2024***, that Management and the Audit Committee had withheld disclosure of allegations of wrongdoing by certain current or former members of Management from the Company's outside auditor, E&Y, that E&Y was on the verge of resigning as auditor as a result paralyzing the Company's efforts to complete the restatement, and finally, that the Company was on the verge of collapse. | Defendants knew, or were deliberately reckless in not knowing, that the statements about SunPower's financial health, including compliance with its financial covenants and cash position, were false and misleading and omitted material information. Defendants were working directly with its now-resigned auditor, E&Y, to restate, again and again, the Company's financials from the last two years. There is no way that the Defendants would not have understood and appreciated the importance of issuing those restatements and conveying this financial information accurately to its auditor and the public. That its auditor, E&Y, felt compelled to resign amid |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | | allegations of misconduct by management before completing the restatements raises more inferences that the Defendants misled their own auditor as well as the public when relaying information about the Company's financial health.<br><br>The SEC's ongoing investigation into the Company's accounting practices, initiated as early as February 28, 2024, further aids an inference that the Defendants recklessly, knowingly, or intentionally mislead its auditor and the public.<br><br>The timing of SunPower's dramatic and apparently sudden decline, culminating in bankruptcy, occurred so soon after these statements is further evidence of scienter. |
| No. 11<br><br>AC ¶185 | **When:**<br><br>May 20, 2024<br><br>**Where:**<br><br>Form 8-K<br><br>**Speakers:**<br><br>Defendant CFO Eby, CEO Werner | "While the Company can provide no assurances as to timing, *the Company is working diligently and plans to restate the Affected Prior Period Financial Statements and file the 2023 Form 10-K and Q1 2024 Form 10-Q as soon as possible*" to regain compliance with Nasdaq listing rules. | SunPower's situation was much worse than Defendants were letting on, that the Company had been the subject of an SEC investigation *for nearly three months— since at least as early as February 28, 2024*, that Management and the Audit Committee had withheld disclosure of allegations of wrongdoing by certain current or former members of Management from the Company's outside auditor, E&Y, that E&Y was on the verge of resigning as auditor as a result paralyzing the Company's efforts to complete the restatement, and finally, that the Company was on the verge of collapse. | Defendants knew, or were deliberately reckless in not knowing, that the statements about SunPower's financial health, including compliance with its financial covenants and cash position, were false and misleading and omitted material information.<br><br>Defendants were working directly with its now-resigned auditor, E&Y, to restate, again and again, the Company's financials from the last two years. There is no way that the Defendants would not have understood and appreciated the importance of issuing those restatements and conveying this financial information accurately to its auditor and the public. That its auditor, |

20

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | | E&Y, felt compelled to resign amid allegations of misconduct by management before completing the restatements raises more inferences that the Defendants misled their own auditor as well as the public when relaying information about the Company's financial health.<br><br>The SEC's ongoing investigation into the Company's accounting practices, initiated as early as February 28, 2024, further aids an inference that the Defendants recklessly, knowingly, or intentionally mislead its auditor and the public.<br><br>The timing of SunPower's dramatic and apparently sudden decline, culminating in bankruptcy, occurred so soon after these statements is further evidence of scienter. |
| No. 12<br><br>AC ¶187 | **When:**<br>June 3, 2024<br>**Where:**<br>Press release<br>**Speakers:**<br>Defendant CEO Werner | "*Today's announcement demonstrates the continued support of our majority shareholders in the long-term value proposition of residential solar and SunPower's commitment to operating a financially sound business,*" "*In addition to this funding, in recent months, we have worked to reduce overall costs and increase the proportion of our costs that* | | Defendant Werner knew, or was deliberately reckless in not knowing, that the statements about SunPower's financial health, including compliance with its financial covenants and cash position, were false and misleading and omitted material information.<br><br>Defendant Werner was working directly with its now-resigned auditor, E&Y, to restate, again and again, the Company's financials from the last two years. There is no way that Defendant Werner would not have understood and appreciated the |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | *vary with changes in volume as we aim to build a more resilient business that can deliver consistent positive free cash flow in the future*." | | importance of issuing those restatements and conveying this financial information accurately to its auditor and the public. That its auditor, E&Y, felt compelled to resign amid allegations of misconduct by management before completing the restatements raises more inferences that Defendant Werner misled its own auditor as well as the public when relaying information about the Company's financial health. The SEC's ongoing investigation into the Company's accounting practices, initiated as early as February 28, 2024, further aids an inference that Defendant Werner recklessly, knowingly, or intentionally mislead its auditor and the public. The timing of SunPower's dramatic and apparently sudden decline, culminating in bankruptcy, occurred so soon after these statements is further evidence of scienter. |
| No. 13 AC ¶192 | **When:** July 3, 2024 **Where:** Press release **Speakers:** Defendant CEO Werner | Company stated that it was "*working to secure a new independent registered public accounting firm*" and that the "*development has no material impact on SunPower's current cash position or continued focus on delivering for its customers*." | | Defendant Werner knew, or was deliberately reckless in not knowing, that the statements about SunPower's financial health, including compliance with its financial covenants and cash position, were false and misleading and omitted material information. Defendant Werner was working directly with its now-resigned auditor, E&Y, to |

| No. (AC ¶) | Speakers, Date(s), and Medium | False and Misleading Statements | Reasons Statements Were False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|---|
| | | | | restate, again and again, the Company's financials from the last two years.  There is no way that Defendant Werner would not have understood and appreciated the importance of issuing those restatements and conveying this financial information accurately to its auditor and the public. That its auditor, E&Y, felt compelled to resign amid allegations of misconduct by management before completing the restatements raises more inferences that Defendant Werner misled its own auditor as well as the public when relaying information about the Company's financial health.<br><br>The SEC's ongoing investigation into the Company's accounting practices, initiated as early as February 28, 2024, further aids an inference that Defendant Werner recklessly, knowingly, or intentionally mislead its auditor and the public.<br><br>The timing of SunPower's dramatic and apparently sudden decline, culminating in bankruptcy, occurred so soon after these statements is further evidence of scienter. |