KATHERINE L. HENDERSON, State Bar No. 242676
DYLAN G. SAVAGE, State Bar No. 310452
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: khenderson@wsgr.com
        dsavage@wsgr.com

JOHN I. KARIN (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com

*Attorneys for Defendants Peter Faricy,
Elizabeth Eby, and Thomas Werner*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SUNPOWER CORPORATION SECURITIES LITIGATION<br><br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No.: 3:23-cv-05544-RFL<br><br>CLASS ACTION<br><br>DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>Hearing Date: February 4, 2025<br>Hearing Time: 10:00 a.m.<br>Dept.: Courtroom 15, 18th Floor<br>Judge: Hon. Rita F. Lin |

Defendants' MTD Reply                                           Case No.: 3:23-cv-05544-RFL

**TABLE OF CONTENTS**

**Page**

ARGUMENT ...........................................................................................................................1

I.      THE SAC SHOULD BE DISMISSED FOR LACK OF STANDING. ..............................1

II.     THE SAC FAILS TO STATE A RULE 10b-5(b) CLAIM. ...............................................2

        A.     The SAC fails to plead the required element of falsity. .........................................2

               1.     February 2023 Guidance .............................................................................2

               2.     Going Concern Statements ..........................................................................3

               3.     Loan Covenant Statements ..........................................................................6

               4.     Post-February 2024 Statements ...................................................................7

        B.     The SAC fails to plead the required element of scienter. .......................................10

               1.     No Contemporaneous Contradictory Knowledge ......................................10

               2.     FE Allegations and the Going Concern Statements ...................................11

               3.     "As of October 1, 2023" and the Covenant Statements .............................12

               4.     SEC Subpoena ...........................................................................................12

               5.     Restatements ..............................................................................................13

               6.     EY's Resignation .......................................................................................14

               7.     Lack of Motive ..........................................................................................14

        C.     The SAC fails to plead the required element of loss causation. .............................15

CONCLUSION ......................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
785 F. Supp. 2d 799 (N.D. Cal. 2011) ................................................................................ 13

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ......................................................................................... 7, 11

*Brendon v. Allegiant Travel*,
412 F. Supp. 3d 1244 (D. Nev. 2019) ............................................................................... 11

*Brown v. Papa Murphy's Holdings*,
2021 U.S. Dist. LEXIS 12250 (W.D. Wash. Jan. 12, 2021) ................................................ 5

*City of Pontiac v. First Solar, Inc.*,
2023 U.S. Dist. LEXIS 5136 (D. Ariz. Jan. 11, 2023) ...................................................... 15

*Colyer v. AcelRx Pharms., Inc.*,
2015 U.S. Dist. LEXIS 159640 (N.D. Cal. Nov. 25, 2015) ............................................... 14

*Cont'l Gen. Ins. Co. v. Olafsson*,
2024 WL 4263211 (D.N.J. 2024) ....................................................................................... 8

*Cork v. CC-Palo Alto, Inc.*,
534 F. Supp. 3d 1156 (N.D. Cal. 2021) .............................................................................. 2

*De Vito v. Liquid Holdings Grp., Inc.*,
2018 WL 6891832 (D.N.J. Dec. 31, 2018) .......................................................................... 8

*Emps.' Ret. Sys. of Gov. of the V.I. v. Blanford*,
794 F.3d 297 (2d Cir. 2015) ............................................................................................. 14

*EnSource Invs. LLC v. Tatham*,
2017 WL 10648061 (S.D. Cal. Mar. 9, 2017) ............................................................... 8, 11

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) ............................................................................................. 2

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
270 F.3d 645 (8th Cir. 2001) ............................................................................................. 2

*Gammel v. Hewlett-Packard Co.*,
2013 WL 1947525 (C.D. Cal. May 8, 2013) ..................................................................... 14

*Glazer v. Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .............................................................................................. 4

*Hacker v. Elec. Last Mile Sols., Inc.*,
687 F. Supp. 3d 582 (D.N.J. 2023) ................................................................................... 11

*Hammer v. Frontier Fin. Corp.*,
2011 WL 13229260 (W.D. Wash. Sept. 7, 2011) ............................................................... 5

*Hatamian v. Advanced Micro Devices, Inc.*,
87 F. Supp. 3d 1149 (N.D. Cal. 2015) ........................................................................ 7, 11

*Hemmer Grp. v. SW Water Co.*,
527 F. App'x 623 (9th Cir. 2013)........................................................................ 6

*Herremans v. BMW of N. Am., LLC*,
2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014) .................................................. 6

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000)........................................................................ 11

*In re Bear Stearns Comp., Inc.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011) ........................................................................ 12

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008)........................................................................ 4

*In re Cylink Sec. Litig.*,
178 F. Supp. 2d 1077 (N.D. Cal. 2001) .................................................................. 6, 13

*In re Diamond Foods, Inc., Sec. Litig.*,
2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) .................................................................. 11

*In re Elan Corp. Sec. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008) ........................................................................ 14

*In re Emergent BioSolutions*,
2023 WL 5671608 (D. Md. Sept. 1, 2023) ........................................................................ 11

*In re Grand Casinos, Inc., Sec. Litig.*,
988 F. Supp. 1273 (D. Minn. 1997) ........................................................................ 13

*In re IBM Corp. Sec. Litig.*,
163 F.3d 102 (2d Cir. 1998)........................................................................ 10

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) ........................................................................ 11

*In re Impax Lab'ys*,
2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) .................................................................. 2

*In re LDK Solar*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) ........................................................................ 14

*In re LendingClub Sec. Litig.*,
254 F. Supp. 3d 1107 (N.D. Cal. 2017) ........................................................................ 11

*In re Maxwell Techs., Inc., Sec. Litig.*,
18 F. Supp. 3d 1023 (S.D. Cal. 2014) ........................................................................ 12

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
982 F. Supp. 2d 277 (S.D.N.Y. 2013)........................................................................ 5, 8

Defendants' MTD Reply                    -iii-                    Case No.: 3:23-cv-05544-RFL

*In re NTL, Inc. Sec. Litig.*,
347 F. Supp. 2d 15 (S.D.N.Y. Dec. 6, 2004) ........................................................................ 7

*In re OfficeMax, Inc. Sec. Litig.*,
2002 U.S. Dist. LEXIS 28060 (N.D. Ohio July 26, 2022).................................................... 12

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010)............................................................................................... 14

*In re Pac. Gateway Exch., Inc. Sec. Litig.*,
2002 U.S. Dist. LEXIS 8014 (N.D. Cal. Apr. 30, 2002)....................................... 3, 5, 8, 14

*In re Pareteum Sec. Litig.*,
2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021) ..................................................................... 13

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017).......................................................................................... 3, 5

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022) .................................................................................. 7

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ...................................................................... 8

*In re Silver Wheaton Corp. Sec. Litig.*,
2019 U.S. Dist. LEXIS 59428 (C.D. Cal. Mar. 25, 2019) .................................................... 6

*In re Splunk Inc.*,
592 F. Supp. 3d 919 (N.D. Cal. 2022) ........................................................................... 11, 14

*In re Stone & Webster, Inc., Sec. Litig.*,
414 F.3d 187 (1st Cir. 2005) ................................................................................................. 3

*In re Syntex Corp. Sec. Litig.*,
95 F.3d 922 (9th Cir. 1996).................................................................................................... 6

*In re Tesla, Inc. Sec. Litig.*,
477 F. Supp. 3d 903 (N.D. Cal. 2020) ................................................................................. 13

*In re Thornburg Mortg., Inc. Sec. Litig.*,
695 F. Supp. 2d 1165 (D.N.M. 2010) .................................................................................. 14

*In re Tower Auto. Sec. Litig.*,
483 F. Supp. 2d 327 (S.D.N.Y. 2007)................................................................................... 12

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ................................................................................. 14

*In re VEON Ltd. Sec. Litig.*,
2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ..................................................................... 14

*In re Williams Sec. Litig.*,
339 F. Supp. 2d 1206 (N.D. Okla. 2003) ............................................................................. 14

*In re Zoran Corp. Derivative Litig.*,
511 F. Supp. 2d 986 (N.D. Cal. 2007) ................................................................................. 11

*Johnson v. Manhattan R. Co.*,
289 U.S. 479 (1933) ........................................................................................................ 2

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994) ........................................................................................... 2

*Karimi v. Deutsche Bank Aktiengesellschaft*,
607 F. Supp. 3d 381 (S.D.N.Y. 2022) ............................................................................ 12

*Karri v. Oclaro, Inc.*,
2020 WL 5982097 (N.D. Cal. Oct. 8, 2020) .................................................................... 4

*M&M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
2017 U.S. Dist. LEXIS 222201 (C.D. Cal. Aug. 20, 2017) .............................................. 6

*Mehedi v. View, Inc.*,
2024 U.S. Dist. LEXIS 64818 (N.D. Cal. Apr. 9, 2024).............................................. 1, 2

*Mehedi v. View, Inc.*,
2024 WL 2969982 (N.D. Cal. June 12, 2024) ................................................................. 1

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) ........................................................................... 13

*Nguyen v. Radient Pharm. Corp.*,
2011 WL 5041959 (C.D. Cal. Oct. 20, 2011) ................................................................. 14

*Noto v. 22nd Century Grp., Inc.*,
2023 WL 122305 (W.D.N.Y Jan. 6, 2023) ..................................................................... 11

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
780 F. App'x 480 (9th Cir. 2019)..................................................................................... 5

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007).......................................................................................... 15

*Resh v. China Agritech, Inc.*,
2019 WL 1055240 (C.D. Cal. Jan. 8, 2019).................................................................... 14

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ......................................................................................... 8, 9

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001)........................................................................................... 13

*S. Ferry LP No. 2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009) ...................................................................... 11

*SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc.*,
2019 U.S. Dist. LEXIS 244309 (N.D. Cal. Oct. 10, 2019) ............................................. 6

*Shenwick v. Twitter, Inc.*,
282 F. Supp. 3d 1115 (N.D. Cal. 2017) .......................................................................... 11

*Slayton v. Am. Express*,
604 F.3d 758 (2d Cir. 2010) .......................................................................................................... 8

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...................................................................................................... 4

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
672 F. Supp. 2d 596 (S.D.N.Y. 2009) .......................................................................................... 6

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ...................................................................................................... 3

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ...................................................................................................... 13

**STATUTES**

15 U.S.C. § 78u–4(b)(1) ................................................................................................................ 10

In his Opposition (Dkt. 90, "Opp.") to Defendants' Motion to Dismiss (Dkt. 88, "Br."), Plaintiff tries to salvage his SAC by ignoring his actual allegations, mischaracterizing Defendants' statements, and pretending Defendants hid information that was disclosed. Plaintiff's position—that the Court should ignore the entirety and context of Defendants' disclosures as well as the lack of any contemporaneous facts contradicting the purported misstatements or concerning the Defendants' knowledge—inverts the law.[1] The SAC should be dismissed with prejudice.

## ARGUMENT

## I.    THE SAC SHOULD BE DISMISSED FOR LACK OF STANDING.

Lemou lacks standing because he sold his shares before the purported "truth" was revealed. Br. at 6. His many contortions to save the case fail. As explained, he cannot add a new corrective disclosure allegation that contradicts the FAC, nor challenge statements predating the Class Period or absent from the prior complaints—the Opposition provides no real response to these basic failings. §§II.A.1, II.C; Opp. at 23-25. Even if his new "corrective" July 2023 disclosure (lowering guidance) were considered, the case should still be dismissed for lack of standing because that disclosure did not correct anything. §II.C. Indeed, it is entirely irrelevant to the topic of Defendants' only challenged statement (about going concern) prior to July. Opp. at 24. Thus, unlike in *Mehedi v. View, Inc.*, 2024 WL 2969982, *4 (N.D. Cal. June 12, 2024) (which has been certified to the Ninth Circuit for review), the July disclosure does not and cannot establish that Plaintiff suffered an injury that is "fairly traceable to Defendants' conduct." Opp. at 24-25. The Opposition concedes the point by discussing disclosures from 2024, consistent with his original allegation that the falsity of Defendants' challenged statements was not known as of July and thus that Plaintiff cannot allege an injury fairly traceable to Defendants' conduct. *Id.*

Nor can Plaintiff save the case by relying on the standing of others. Opp. at 25. The Opposition ignores the critical distinction between preexisting named plaintiffs and new plaintiffs added through later amendment to "cure" a standing issue. *Id.*; *Mehedi v. View, Inc.*, 2024 U.S. Dist. LEXIS 64818, *33 (N.D. Cal. Apr. 9, 2024), *vacated on other grounds*, 2024 U.S. Dist. LEXIS 104897 (N.D. Cal. June 12, 2024). "Ninth Circuit precedent is clear that a new plaintiff ...

---

[1] The request for judicial notice and incorporation should be granted as unopposed. Dkt. 88-1.

cannot be added to save a lawsuit from dismissal where the sole named plaintiff never had standing." *Id.* at \*7, 26 (rejecting similar attempt).  Plaintiff's cited cases are either not about standing (*Johnson*) or involve at least one preexisting plaintiff who did have standing (*Impax*), unlike here.  That Rodrigues and Orr filed a separate copycat case is irrelevant.  Their case is now closed (Dkt. 78), and they were added to this case by amendment.

**II.      THE SAC FAILS TO STATE A RULE 10b-5(b) CLAIM.**

**A.      The SAC fails to plead the required element of falsity.**

**1.      February 2023 Guidance**

Plaintiff does not even try to address Faricy's pre-Class Period statement that guidance was meant to be "conservative" in the falsity section (Opp. at 7-17), conceding that the SAC does not adequately allege falsity and this statement is not properly before the Court.  Br. at 7; Opp. at 24 n.28.  Plaintiff also does not dispute that the statement is protected under the safe harbor and as puffery.  Br. at 8; Opp. at 24 & n.28.  Either ground, standing alone, is sufficient for dismissal.

Because his standing argument rests on a false statement in February, however, Plaintiff tries to argue in a footnote that the 2023 guidance itself is "actionable" and thus should be considered in the standing context.[2]  Plaintiff's arguments fail.  Guidance is forward-looking and

---

[2] Because, as Plaintiff concedes, the February 2023 statement is outside the Class Period (making it inactionable) and Plaintiff decided not to seek leave to expand the Class Period (as required by the Court's Order), he argues the "guidance issued in February and May 3, 2023" should be considered in the standing context because the "May 3, 2023 reiteration of the February 2023 guidance falls squarely within the Class Period."  Opp. at 24 n.28.  But neither the February numerical guidance itself, nor the May 3 "reiteration" is challenged in the SAC (*see* Dkt. 79, 85), and a "complaint may not be amended by the briefs," *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 & n.8 (N.D. Cal. 2021).  Similarly, Plaintiff's new claims in the Opposition that these "projections were unreasonable given supply chain disruptions, NE[M] 3.0 implementation, and higher interest rates" and that "the Company withdrew this guidance mere months after securing its first credit increase" (Opp. at 24 n.28) should also be disregarded and are factually unsupported at any rate.  SunPower disclosed several reasons why it lowered guidance on July 26, 2023 (Ex. 8 at 5-6), and Plaintiff does not address a single one. Plaintiff's cited cases are either inapposite or support Defendants.  *See Fecht v. Price Co.*, 70 F.3d 1078, 1082-83 (9th Cir. 1995) (termination of program "very shortly after" optimistic statements, without "any indication" of other factors, one of multiple allegations considered as "circumstantial evidence" of falsity); *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 666 (8th Cir. 2001) (involving scienter allegations showing defendants had "knowledge of facts" undermining "crucial information"); *Kaplan v. Rose*, 49 F.3d 1363, 1373 (9th Cir. 1994) (rejecting argument as fraud by hindsight).

protected under the safe harbor, and Plaintiff fails to plead falsity (either for the "conservative" description or the projections).  The Opposition cites to the 2024 restatement and argues, without citation, that "[i]f the financial statements are false, the projections may be inferred to lack a sufficient basis."  Opp. at 24; Dkt. 85 No. 1.  Plaintiff identifies no particularized facts showing how specific inaccuracies from the restatement would have impacted the 2023 guidance, that those issues were known at the time, or that they rendered the guidance not "conservative."  Plaintiff does not even attempt to distinguish Defendants' cited authority showing a restatement is insufficient to plead falsity of projections.  Br. at 8; Opp. at 24 & n.28.

### 2.    Going Concern Statements

Plaintiff does not dispute that the going concern statements incorporate classic forward-looking language or address Defendants' cases finding that similar statements were protected by the safe harbor.  Br. at 9-10.  Instead, Plaintiff tries to side-step the safe harbor by interjecting the standard for opinions, claiming they are nonetheless actionable because "management is expressing a *current* belief in the accuracy of forecasts" that he alleges (without facts) "was not genuinely held."  Opp. at 10.  But the safe harbor would be meaningless if that were the standard, as all predictions involve some element of current belief.  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) ("The statutory safe harbor would cease to exist if it could be defeated simply by showing that a statement has the sort of features that are inherent in *any* forward-looking statement.").  Plaintiff ignores Defendants' authority rejecting this very argument.  Br. at 10; *In re Pac. Gateway Exch., Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 8014, *27-37 (N.D. Cal. Apr. 30, 2002) (rejecting that going concern statements were "designed to reassure investors ... that PGEX *presently* had enough cash to meet its needs").  Plaintiff's cited cases involve present statements of current fact not analogous to those at issue here.[3]

---

[3] *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 211-13 (1st Cir. 2005) (statement concerned "present fact" "of the quantity of cash on hand" at time CWs described contradictory internal reports reviewed by defendants with specific list of accounts 600-700 days overdue and liens filed by vendors; general allegations company was previously "strapped for cash" insufficient); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142-43 (9th Cir. 2017) (addressing standard for "mixed" statements and comments about present or retrospective "state of

Plaintiff also claims that any cautionary language was ineffective because the warned-of risks had already transpired, pointing to SunPower's purported lack of "cash to pay key vendors." Opp. at 10. That conclusory allegation fails for the reasons below. Moreover, meaningful cautionary language about going concern projections does not require that every detail of a company's present finances be disclosed. Plaintiff ignores the relevant portions of multiple cases finding similar language sufficient. Br. at 3, 9-10. And Plaintiff relies on cases that do not involve going concern statements, with particularized allegations that material warned-of risks had already occurred (*Countrywide*) or had been specifically threatened when described as hypothetical (*Glazer*); no such facts are present here.

Even if not protected under the safe harbor, the Opposition fails to identify particularized facts showing the statements were false when made. Br. at 9-12. Plaintiff reiterates that SunPower lacked the cash to pay Maxeon (Opp. at 8 & n.3), ignoring that the disclosures he references attribute SunPower's non-payment to a contractual dispute and confirm that SunPower ***resumed payment*** as part of the parties' resolution. *Id.* Plaintiff also mischaracterizes that "a FE confirmed SunPower lacked the cash to pay Maxeon." Opp. at 8 n.3. The first cited paragraph merely alleges that FE1 said "SunPower 'lost [its] contract' with Maxeon" (contrary to the SAC and Maxeon's disclosures) because of unspecified "payment issues" (¶¶110, 154), while the second includes quotations that do not even mention "Maxeon" or state that SunPower withheld payment because it lacked the cash to pay. ¶117; *see also* Opp. at 8 (misdescribing FEs as "confirm[ing]" SunPower was "unable to pay its current bills").[4]

Plaintiff likewise repeats the SAC's FE allegations concerning SunPower's "chronic cash problem" (Opp. at 8), but largely ignores the deficiencies (and cases) Defendants raised. Br. at 9-

---

[company's] sales pipeline" where executives had inconsistent real time information); *Karri v. Oclaro, Inc.*, 2020 WL 5982097, *5 (N.D. Cal. Oct. 8, 2020) (involving non-forward looking calculation of "present value of … Oclaro stock").

[4] Defendants are not "insert[ing] their own version of the facts" or raising "alternative interpretations." Opp. at 8 n.3. Rather, Plaintiff misrepresents what the documents say and Ninth Circuit precedent requires consideration of the documents. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("we are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

12.  Plaintiff's only response, in a footnote, is the conclusory assertion that the FEs "possess the requisite personal knowledge" "[g]iven their day-to-day roles." Opp. at 8 n.4.  More is needed to survive a motion to dismiss (Br. at 9-12), as Plaintiff's own authority confirms.  Opp. at 8 n.4 (citing *LifeLock* and *Quality Sys.*, where FEs' personal knowledge included statements they heard the defendants make or reports they heard the defendants had received).  The assertion is also false.  For instance, FE3 could not have personal knowledge of SunPower's forecasted cash position when she left months before the statements were made.  Nor does Plaintiff address that the SAC alleges SunPower operated under cash constraints for years (¶¶102-22) without failing as a going concern, or that time proved Defendants' anticipations to be true.

No case Plaintiff cites involves similar circumstances.  *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 290, 299, 318 (S.D.N.Y. 2013) (statements concerned company's "strong" liquidity position and strategies while defendants hid cash threats from high-risk investments through undisclosed "intra-company transfers"); *Brown v. Papa Murphy's Holdings*, 2021 U.S. Dist. LEXIS 12250, *11-17 (W.D. Wash. Jan. 12, 2021) (specific citations to internal plan and positive statements suggested that lower projections used in merger were unreasonable); *Hammer v. Frontier Fin. Corp.*, 2011 WL 13229260, *1-2, 5 (W.D. Wash. Sept. 7, 2011) (statements regarding present adequacy of capitalization despite contrary regulatory determination).  Meanwhile, Plaintiff ignores or barely addresses Defendants' on-point caselaw. Br. at 9-10; *Pac. Gateway*, 2002 U.S. Dist. LEXIS 8014, at *38-52 (going concern statements not misleading despite undisclosed nonpayment of vendors).

Finally, Plaintiff articulates no connection between the allegations regarding 2024 events and the going concern statements in 2023 (there is none).  Br. at 12; Opp. at 8-9.  Supported by nothing, Plaintiff asserts that EY resigned because SunPower hid an "ongoing liquidity crisis" and lacked "candor in reporting financials" (Opp. at 8); in actuality, EY's letter did not mention "liquidity" (let alone in 1H23) and rather said that the "allegations [of misconduct] did ***not*** expressly assert that there were errors in the Company's financial statements." Ex. 31 at 5 (emphasis added).  Plaintiff also points to SEC and AUSA subpoenas (the latter of which is not mentioned in the SAC), but the SAC does not and cannot allege that they concerned the going

concern projections.  Br. at 22; Ex. 30 at 3; *SunPower*, No. 24-11649-CTG (Bankr. D. Del.), Dkt. 515 at 32 n.18.  That the restatement and subpoenas may concern "a time period … encompassing these statements" (Opp. at 8-9), does not supply the required missing link.  Plaintiff's other cases (*id.* at 9 n.5) are inapposite.  *Hemmer*, *Cylink*, and *Varghese* involved restatements of the exact allegedly false line items.  *Silver*, *Babywatch*, and *BMW* did not evaluate whether a statement was false due to a subsequent admission of accounting inaccuracies.

### 3.       Loan Covenant Statements

Oct. 24, 2023 8-K.  Plaintiff abandoned this claim.  Br. at 12-13; Opp. at 10-12.

Nov. 1, 2023 Call.  Plaintiff concedes the SAC fails to allege facts showing that SunPower had determined it was "in breach of its covenants on November 1, 2023."  Opp. at 11.  Without this critical allegation, Plaintiff cannot show falsity.  Br. at 12-14; *M&M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 U.S. Dist. LEXIS 222201, *25-26 (C.D. Cal. Aug. 20, 2017) (complaint "does not allege facts to suggest that the later-disclosed weaknesses existed ... at that time").  Plaintiff argues "we're fine in Q3" was misleading regardless.  But Eby did not say what Plaintiff strains to claim:  that the Company had made a final "determin[ation] by that date that it was not in breach."   Opp. at 11 (emphasis omitted).  Nor did she "specifically and directly assure[] investors" that she was providing some type of guarantee that the Company would be deemed to be in compliance "through year end" after the restatement was finalized.  *Id*.

To the contrary, when considered in context, the only reasonable "impression" (*id.*) of Defendants' statements is the opposite:  that "historical period financial information" was a "preliminary estimate" "pending the outcome" of the 2023 restatement, that SunPower "has not fully completed its review" and "subsequent discovery of additional adjustments" could have adverse results, that compliance with covenants was "pending final adjustments," and that SunPower "need[ed] to get to the final phase" of the 2023 restatement because the covenants, which would be evaluated based on the final financials as of the end of Q3, were "backward looking."  Br. at 13-14; Ex. 13 at 2; Ex. 15 at 2; ¶131.  Plaintiff does not dispute that a challenged statement must be "[v]iew[ed] ... in full and in context at the time it was made" (*In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 929 (9th Cir. 1996); Br. at 13-14), but ignores the "specific and direct"

qualifications Eby provided regarding her commentary about being "fine in Q3," substituting his own gloss on what that vague phrasing meant and contradicting what she actually said. Opp. at 11.[5]  Plaintiff attempts to support his misreading of Eby's statements with an analyst report (Opp. at 12 n.7), but the report does not help him—it hedges on compliance ("appears"), acknowledges the restatement may have impacts, and does not distinguish between financial and reporting covenants—and cannot support a claim regardless.  *See* ¶59; *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 36 (S.D.N.Y. Dec. 6, 2004) (rejecting claim that defendants "intentionally fostered mistaken beliefs that later were incorporated into analysts' reports").  Nor do Plaintiff's cited cases support his claims, as they involve statements made "without qualification," *Hatamian v. Advanced Micro Devices, Inc.*, 87 F. Supp. 3d 1149, 1159 (N.D. Cal. 2015); qualifications so technical that their import "could only be determined by the combination of experts and confidential informants," *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 732-35 (N.D. Cal. 2022); or qualifications framed in purely hypothetical terms despite well-pled facts showing the risks had already materialized, *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986-87 (9th Cir. 2008).

### 4.    Post-February 2024 Statements

Plaintiff does not address the alleged falsity of Statements 9-11 ("working diligently"), or Defendants' arguments regarding the fairness opinion (Statement 8) and the covenants in SunPower's agreement with Sol Holding (Statement 6).  Br. at 18; Opp. at 13-14 & n.10.  As to Statements 6, 7, and 12 relating to the Company's outlook and cost reduction efforts following the Sol Holding financing, Plaintiff appears to abandon the majority of the challenged statements, addressing only two purported misstatements relating to future expectations.  Opp. at 13.  Plaintiff should be deemed to have abandoned those claims.

Regardless, Plaintiff fails to refute that the challenged statements are all inactionable on

---

[5] The Opposition also misconstrues other aspects of what Eby said.  Plaintiff contends that Eby "confirm[ed]" she had "all relevant 'backward looking' information" to assess compliance, but the quoted phrase simply describes the covenants as "backward looking."  Plaintiff claims that "Eby gave the false impression that SunPower was seeking waivers only to address its ***reporting*** covenants," but her statement makes no such distinction and that allegation contradicts the SAC. Plaintiff alleges that Eby stated SunPower would need to get "to the final ***quarter***" of the year, when she referenced the "final ***phase***" of the restatement.  Opp. at 10-11; Br. at 13-14.

Defendants' MTD Reply                    -7-                    Case No.: 3:23-cv-05544-RFL

one or more grounds.  Br. at 15.  Regarding puffery, Plaintiff cites distinguishable cases involving misleading descriptions of concrete financial metrics, such as "repeated[]" representations about a "strong" current liquidity position (*MF Glob.*, 982 F. Supp. 2d at 317), specific "reassur[ances]" that credit quality remained "healthy and strong," "in response to direct questions" about the company's credit portfolio (*In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, *12 (S.D.N.Y. Nov. 26, 2018)), or statements that "today" the company has "significant liquidity" and "meaningful cash flows" (*Cont'l Gen. Ins. Co. v. Olafsson*, 2024 WL 4263211, *7 (D.N.J. 2024)).  SunPower's vague expectations of optimism, by contrast, were made against the backdrop of a going concern warning and an expected net loss.  Br. at 17.[6]

As for the portions that are opinions (Br. at 16), Plaintiff argues the statements "'involved the representation of existing facts' about the Company's current financial health" (Opp. at 15).  But Plaintiff does not identify any such "existing facts," much less allegations showing falsity.  Nor does Plaintiff explain what "facts about … liquidity and credit" were "omitted" when the opinions were formed.  *Id.*  Plaintiff's cited cases are distinguishable (*id.* at 15 n.14) because they involve allegations of contemporaneous undisclosed facts that undermined the opinions.

Except to state without specification that the statements "are not forward looking" and "do not contain sufficient cautionary language" (Opp. at 16), Plaintiff also does not respond to Defendants' arguments that Statements 6 and 12 encompass remarks protected under the safe harbor.  *Compare* Br. at 16, *with* Opp. at 16 (citing standards without application and ignoring Defendants' cases).  In fact, two of Plaintiff's cited cases help Defendants. In *Slayton v. Am. Express*, the Second Circuit **rejected** an argument that the warned-of risk had already transpired.  604 F.3d 758, 770 (2d Cir. 2010).  In *Rombach v. Chang*, plaintiffs challenged statements alleged to be "misleading because they failed to disclose … liquidity problems" prior to bankruptcy filing,

---

[6] Plaintiff's effort to distinguish *Pacific Gateway* fails.  Opp. at 15 n.12.  There and here, the struggles were generally known.  Plaintiff fails to cite any "public denial of [SunPower's] struggles" (*id.*) because there was no such denial.  Plaintiff's cited cases are clearly distinguishable on this basis.  *See EnSource Invs. LLC v. Tatham*, 2017 WL 10648061, *5 (S.D. Cal. Mar. 9, 2017) (company failed to disclose insolvency when soliciting investment); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, *1 (D.N.J. Dec. 31, 2018) (misrepresentations concerned "self-dealing, undisclosed insider transactions, inflated customer counts, reliance on capital infusions from insiders, and dependence on a single related-party customer").

Defendants' MTD Reply                    -8-                    Case No.: 3:23-cv-05544-RFL

where plaintiffs had "identif[ied] a handful of incidents in which [the company] did not pay creditors," but the Second Circuit affirmed dismissal because a large company "is bound … to have disputes over payments with vendors and landlords, and to have some bills unpaid by reason of contested amounts or spot episodes of illiquidity."  355 F.3d 164, 172-74 (2d Cir. 2004).

Plaintiff further fails to allege falsity because the SAC lacks allegations contradicting SunPower's vaguely optimistic expectations.  For example, there are no facts showing SunPower did not "expect to be cash flow positive in the second half of 2024 and beyond," or did "expect ... to have a going concern provision"[7] in the upcoming 10-K, at the time the statements were made.  Opp. at 13 (emphasis omitted).  Plaintiff relies exclusively on subsequent events (*i.e.*, fraud by hindsight), such as SunPower's later draw on the second loan tranche, identification of a material weakness, second restatement, and SEC subpoena.  Plaintiff neither connects these events to the challenged statements nor alleges when they arose.[8]  Plaintiff's new allegation (not in the SAC), that "breaches of [SunPower's] … covenants" due to the April 2024 restatement "precluded new draws on existing or future credit" (Opp. at 13-14 & n.9), proves these points.  The SAC contains no facts regarding the assumptions underlying SunPower's expectations, that they depended on continued "access to any more credit," or when the specified "preclu[sion]" occurred.

In response to Defendants' argument that none of the FEs opined on SunPower's post-February 2024 outlook, Plaintiff contends that "FE4 worked at SunPower from Feb 2022 to February 2024, and conveyed during the entire tenure that SunPower could not pay suppliers and that 'every aspect' of SunPower's obligations were 'overdue.'"  Opp. at 13 n.8.  But the SAC does not allege when during February 2024 FE4 left SunPower, nor does any allegation attributed to FE4 refer to the period after SunPower obtained financing from Sol Holding (the generic

---

[7] This statement does not appear in Plaintiff's chart.  *Compare* Opp. at 13 ("we do not expect at the moment to have a going concern provision in our 10-K that's coming out" (emphasis omitted)), *with* Dkt. 85.  Regardless, it is protected by the safe harbor and otherwise inactionable for the reasons explained above and elsewhere.  Br. at 15-18; Ex. 20 at 4.

[8] Plaintiff cites a law firm article for his speculation that Defendants "would have known" of an SEC investigation "by late 2023 or early 2024" due to an "informal inquiry."  Opp. at 14 n.11.  But the SAC does not allege any informal inquiry existed, and the article concedes the SEC makes informal inquiries only "*[o]ccasionally*."

allegations about cash concerns are unchanged from the FAC which did not address this period). *Compare* FAC ¶¶82-88, *with* SAC ¶¶116-22.  Because the challenged statements refer to SunPower's outlook in the months *after* February, FE4's presence at SunPower for only part of February means he does not and cannot establish those statements were false.

Finally, as to Statement 13 that SunPower's effort to secure a new auditor "has no material impact on SunPower's *current* cash position or continued focus on delivering for its customers," it is Plaintiff, not Defendants, who failed to offer any explanation as to why the statement was misleading.  Dkt. 85 No. 13 (falsity column empty); Br. at 18 (noting falsity column was empty); ¶192 (no explanation of falsity).  Plaintiff has the burden to "specify … reasons why the statement is misleading."  15 U.S.C. § 78u–4(b)(1); Judge Lin's Civil Standing Order at 10.  Having failed to do so, this claim should be dismissed.

Regardless, Plaintiff's new unsupported theory—that "lack of an auditor" "blocked" SunPower from obtaining credit because SunPower could not "file the audited financials" without one—fails to show the statement was false when made.  Opp. at 16-17.  The statement did not opine on future potential impacts to credit access and merely confirmed SunPower's current cash position was not impacted.  ¶192.  Plaintiff offers no facts specifying SunPower's then current cash position, how or if it had been impacted, then current knowledge of any potential impacts from these developments whatsoever, or whether SunPower expected a new auditor would be quickly retained.  *See In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 108 (2d Cir. 1998) (statement that "company was not 'concerned' about covering the dividend for this quarter" "contains no long-term guarantee" and was not false due to dividend cut in the next quarter).  By contrast, Plaintiffs' cited cases are inapposite because plaintiffs there did allege *undisclosed* material *facts*, such as a criminal price-fixing conspiracy or hidden software designed to evade detection by regulators.

**B.      The SAC fails to plead the required element of scienter.**

**1.      No Contemporaneous Contradictory Knowledge**

The Opposition points to no contemporaneous contradictory internal documents.  Br. at 19-20.  Plaintiff argues that "the EY resignation and the SEC subpoena are 'documents'" (Opp. at 19 n.18), but they were received after most of the challenged statements were made, were not

internal, and are not contradictory for the reasons explained below.

Plaintiff claims that the FE allegations confirm management was aware of issues relating to "liquidity and inability to raise equity" (Opp. at 17), ignoring that does not undermine the purported misstatements as discussed in Defendants' Brief.  Br. at 20.  Plaintiff also tries to explain away that the FE allegations relate solely to the "going concern" statements by claiming they also "reinforce an inference" that "SunPower could not fix the breaches of its financial covenants" and knew "the new credit from its majority shareholder was not a long-term solution." Opp. at 18.  But the FEs say nothing about the covenants, SunPower's outlook following its February 2024 financing, or any cash impact from EY's resignation, which Plaintiff's chart concedes.  ¶¶102-22; Dkt. 85 Nos. 4-13.  If anything, Plaintiff's allegations acknowledge the opposite—that compliance with the financial covenants depends on many variables other than cash (¶¶33-37) and no facts suggest cash was involved with the alleged covenant breach. Plaintiff's cited cases about "witnesses that are not employed during the class period" are inapposite.  Opp. at 18 n.16.  Unlike in those cases, a major event occurred after the FEs left SunPower—the Sol financing—and the FEs do not even purport to speak about its impact.

Defendants' alleged "familiar[ity] with" "credit and liquidity," generic "access to information," and responding to analyst questions (Opp. at 17-21) are insufficient to find scienter because these are always the case.  Br. at 24.  Consistent with this principle, Plaintiff's cited cases affirm scienter based on a host of factors indicating contemporaneous knowledge of the specific issues, including:  CW allegations that defendants were told of, approved, or admitted the issues; internal records that provided red flags; or defendants' admissions of improper behavior.  Opp. at 17-21 (citing *Advanced Micro Devices*; *Allegiant Travel*; *Diamond Foods*; *LendingClub*; *Howard*; *Immune Response*; *Emergent*; *Splunk*; *Noto*; *Zoran*; *Twitter*; *Hacker*; *EnSource*; *Applied Signal*; *Killinger*).  No such facts are well-pled here as to any statement or issue.

### 2.    FE Allegations and the Going Concern Statements

Plaintiff concedes that none of the FEs claim to have had direct contact with Werner (who was not even at SunPower when the going concern statements were made), and the only two FEs who claim to have attended meetings with Eby or Faricy do not allege that the going concern

Defendants' MTD Reply                    -11-                    Case No.: 3:23-cv-05544-RFL

analyses were discussed at those meetings or that they had any knowledge of those analyses whatsoever.  Plaintiff fails to distinguish *Tower Auto* and *OfficeMax*, which upheld liquidity statements notwithstanding allegations of vendor nonpayment.

### 3. "As of October 1, 2023" and the Covenant Statements

The Opposition identifies no facts regarding Eby's knowledge when the covenant statements were made, which is fatal.  Opp. at 20-21; Br. at 21. Plaintiff raises a strawman argument that "*if Eby did not know* whether SunPower was in compliance as of October 1, 2023, then Eby was at minimum *severely reckless*."  Opp. at 20.  But Plaintiff cannot rely on hypotheticals; he must allege ***particularized facts demonstrating that she was reckless given what she knew at the time***.  No facts in the SAC show Eby "fabricated a position on the fly" or suggest the information she had at the time was inconsistent with her statements.  *Id.*  Instead, Plaintiff concedes that the final restatement issued several weeks later identified new issues that were not in the preliminary estimate, suggesting Eby later received new information, consistent with the qualifications and warnings that Defendants included with their statements. Br. at 4-5, 21; Opp. at 20-21.  Plaintiff also ignores Defendants' authority establishing that when there are intervening events, the more plausible inference is not fraud.  Br. at 21.

### 4. SEC Subpoena

The SEC subpoena (which Plaintiff concedes was not required to be disclosed, Br. at 14-15, and is hardly surprising given the restatement) does not raise "red flags" (Opp. at 21) due to its timing and content.  Br. at 22; *In re Maxwell Techs., Inc., Sec. Litig.*, 18 F. Supp. 3d 1023, 1042 (S.D. Cal. 2014) (no scienter despite government investigations triggered by restatement).  As to timing, SunPower received the subpoena on February 28, 2024 (¶189)—*after* Statements 1 to 6 were made and *after* Houlihan's fairness opinion was delivered (Statement 8).  Dkt. 85 Nos. 1-6, 8.  As to content, the only well-pled allegation of the subpoena's content is that it "relates to certain accounting matters, including aspects of the Company's revenue recognition practices." ¶189 (quoting Ex. 30 at 3).  But the SAC does not challenge revenue recognition practices or any financial statements issued after SunPower received the subpoena.  Dkt. 85.  Plaintiff's cited cases are thus distinguishable.  In *Deutsche Bank* and *Bear Stearns*, internal audits, government

investigations, and settlements warned of the improper practices before the statements were made. In *Cylink*, *Merrill Lynch*, and *Tesla*, the courts did not infer scienter based on an investigation.

### 5.     Restatements

The restatements do not establish a strong inference of scienter because the SAC does not plead facts showing Defendants had undisclosed knowledge of the accounting issues when any challenged statements were made. The Opposition claims, without support, that "SunPower's independent auditor had identified material misrepresentations in the Company's financials" "while it was negotiating the [financing] transaction" (Opp. at 2), but does not explain why the auditor would have remained silent if that were true. Largely ignoring Defendants' contrary authority, Plaintiff cites cases highlighting what is missing here. Br. at 22-23; Opp. at 17-20. For example, in *Mulderrig v. Amyris, Inc.*, CWs alleged the defendants "were themselves reviewing" the contested revenue numbers "monthly or weekly." 492 F. Supp. 3d 999, 1025-27 (N.D. Cal. 2020); *see also In re Pareteum Sec. Litig.*, 2021 WL 3540779, *9, 15-17 (S.D.N.Y. Aug. 11, 2021) ("42% reduction in revenue reported in 1H19"). Here, no FEs allege that Defendants regularly reviewed the issues leading to the second restatement: "capitalization of certain deferred costs" or "classification of certain sales commissions" (Ex. 25 at 2), "largely definitional" line items for which "falsity of the original representations would not be immediately obvious to corporate management" and which Plaintiff fails to connect to any challenged statement, which notably do not include the financials themselves. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009). Plaintiff further argues that "the timing of the [2024] restatement (announced shortly after securing the new financing) suggests Defendants knew those financials were false." Opp. at 18-19. But accounting errors can surface in short order, unlike "multi-million dollar … cost overruns, major delays," and "construction difficulties," which "develop over time." *In re Grand Casinos, Inc., Sec. Litig.*, 988 F. Supp. 1273, 1283 (D. Minn. 1997); *compare Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) ("five week period between the optimistic statements and the below-expectation earnings report is not enough"). Defendants also agree that "the impact of one restatement on fundraising efforts is less serious than two or more" (Opp. at 20), which is precisely why no company would conceal known accounting deficiencies

Defendants' MTD Reply                    -13-                    Case No.: 3:23-cv-05544-RFL

by splitting them into two restatements.   Plaintiff's cited case says nothing of the sort.  *See In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, *10 (S.D.N.Y. Sept. 19, 2017) (imputing scienter where executives "orchestrated a bribery scheme that violated the FCPA").

### 6.    EY's Resignation

Plaintiff does not dispute that the allegations of misconduct cited by EY were never proven, that EY did not claim to have any evidence to support the allegations, or that he fails to connect those allegations to the alleged fraud at issue here.  He does not even address most of Defendants' cited cases.  Br. at 23.  Plaintiff baldly asserts that SunPower "withheld facts" about "misconduct" regarding "reporting financials," but neither SunPower's nor EY's disclosures say any financial information was withheld.  Exs. 30, 31.  Plaintiff also cites analyst speculation not referenced in the SAC, which does not say SunPower withheld financial information from EY and is based on nothing more than the same public disclosures.  Opp. at 22.  Plaintiff relies on cases where the plaintiffs did what he cannot—connect the auditor allegations to the alleged fraud.  In *Blanford*, CWs alleged defendants hid inventory from their auditors to further misstatements about the company's growth for personal gain.  794 F.3d 297, 303 (2d Cir. 2015).  In *Resh*, the company "fraudulently created nearly all" its revenue and terminated its auditors after they "informed the Audit Committee of serious problems with [the] financial[s]."  2019 WL 1055240, *1, 5 (C.D. Cal. Jan. 8, 2019).  Finally, Plaintiff tries to link the departures of two officers to EY's audit, but no factual allegations support the link.  Opp. at 22; *compare In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 974-76 (N.D. Cal. 2009) (CW connected departures to the alleged fraud).

### 7.    Lack of Motive

Plaintiff's motive allegation—that Defendants wanted to avoid bankruptcy—is common to all companies and therefore given little to no weight.  Br. at 24.  Plaintiff does not respond to Defendants' cited cases on this point (*Elan*; *Colyer*; *Pac. Gateway*), and all of Plaintiff's cases (*LDK Solar*; *Radient*; *Oracle*; *Thornburg*; *Williams*; *Gammel*; *Splunk*) support that courts require more.  Plaintiff ignores Defendants' lack of stock sales (Br. at 24) and that Defendants repeatedly disclosed bad news throughout the Class Period.  *See, e.g.*, ¶65 (going concern warning); ¶158 (net loss and negative adjusted EBITDA for FY23); ¶159 (projected net loss for FY24).  These well-

worn principles (plus the rule against fraud by hindsight) are hardly attempting to "raise the standard for scienter." Opp. at 23. That SunPower's business strategy ultimately failed does not mean that Defendants knew it would fail when the statements were made. Br. at 23. Viewed holistically, nothing in the Opposition undermines what is by far the most plausible inference—that Defendants disclosed what they knew when they knew it. *Id.* at 24.

###### C.    The SAC fails to plead the required element of loss causation.

Plaintiff half-heartedly responds to Defendants' loss causation arguments (Br. at 24-25) in footnotes. As to the July 2023 "corrective" disclosure, Plaintiff's argument was not "always" that "July 26 [w]as a loss causation date." Opp. at 23 n.27. The FAC alleged "[i]nvestors *remained unaware* that SunPower had made false and misleading statements and omissions in its SEC filings *until November 15, 2023*," which directly contradicts the SAC. FAC ¶11 (emphases added). Plaintiff's only cited case declines to strike amendments as "sham" where they "might not conflict at all," and in that context observes that successive pleadings may be "irreconcilably at odds with each other" given "uncertain[ty] … about the facts" as a plaintiff "learn[s] more about the available evidence." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007). But nothing new has been learned about these disclosures since the FAC was filed. Plaintiff also cannot reconcile that the July disclosure (reduced guidance) did not correct the only challenged statement within the Class Period that precedes it (going concern). Plaintiff's response, pointing to disclosures about SunPower's financials in 2024, demonstrates there was no revelation of fraud in July 2023. Opp. at 24-25. The Court should reject Plaintiff's new allegation pursuant to Ninth Circuit authority postdating *PAE* (Br. at 24-25) that he fails to address.

With respect to the November 15, 2023 disclosure, Plaintiff concedes that Maxeon disclosed the same fact months earlier. Opp. at 8 n.3. His only response is to call it "a 'truth on the market' defense" (*id.*), ignoring Defendants' authority that it also undermines loss causation, particularly where the disclosure occurs in the same public forum. Br. at 25 (citing *First Solar*).

###### CONCLUSION

Plaintiff does not dispute that he misattributes many statements and that all claims must be dismissed with the Rule 10b-5(b) claims. Br. at 25. The SAC should be dismissed with prejudice.

Dated: December 18, 2024                    Respectfully submitted,

                                            WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation

                                            By: /s/ *Katherine L. Henderson*
                                               Katherine L. Henderson

                                            *Attorneys for Defendants Peter Faricy,*
                                            *Elizabeth Eby, and Thomas Werner*