# EXHIBIT 41

KATHERINE L. HENDERSON, State Bar No. 242676
DYLAN G. SAVAGE, State Bar No. 310452
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: khenderson@wsgr.com
        dsavage@wsgr.com

JOHN I. KARIN (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com

*Attorneys for Defendants
Peter Faricy, Elizabeth Eby,
and Thomas Werner*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SUNPOWER CORPORATION SECURITIES LITIGATION | Case No.: 3:23-cv-05544-RFL |
| | CLASS ACTION |
| This Document Relates to: | DECLARATION OF JOHN ZAVAGLIA |
| ALL ACTIONS | Dept.: Courtroom 15, 18th Floor<br>Judge: Hon. Rita F. Lin |

Zavaglia Declaration

Case No.: 3:23-cv-05544-RFL

I, John Zavaglia, declare:

1. I was previously employed by SunPower Corporation ("SunPower") as a Vice President of Finance, Treasury and Project Finance from December 2023 to August 2024. I have personal knowledge about the facts contained herein and could and would testify competently as to these facts if asked to do so. The following statements are true to the best of my recollection.

2. I have reviewed the Consolidated Third Amended Class Action Complaint (the "Complaint"), and believe that I am FE6 in the Complaint.

3. I spoke with an individual who identified himself as an investigator. The Complaint selectively quotes and misrepresents my statements in a way that I do not believe is fair.

4. Paragraph 144 of the Complaint alleges that I stated "SunPower's cash position was a 'constant theme' throughout [my] tenure with the Company", "[t]here was the need and the desire for more cash", and "I believe everyone was aware that we needed some additional cash." These allegations omit important context, which was discussion of the need for additional financing leading up to the February 2024 transaction with the Company's majority shareholders. I emphasized that my involvement was more operational, as opposed to strategic initiatives. I explained to the investigator that SunPower's majority shareholders, TotalEnergies and GIP, their appointees to SunPower's Board of Directors, and their chosen consultant, Alvarez & Marsal, were deeply involved with and knowledgeable about SunPower's financials and overall financial condition. I contrasted SunPower to typical companies where the CEO/CFO control more of the decision-making. I noted that TotalEnergies and GIP made the decisions about how and when to arrange for additional financing for SunPower and that Peter Faricy, Elizabeth Eby, and Thomas Werner did not have any different or special knowledge about the Company's financials and did not make the ultimate, strategic decisions about financings.

5. Paragraph 145 alleges that I "said that even after securing funding from Sol Holding in February 2024, 'the big worry then is will we get the next tranche of lease financing?

Zavaglia Declaration                    -1-                    Case No.: 3:23-cv-05544-RFL

And if we get the next one, will we get the one after that?'" This allegation misconstrues my statement as it conflates operational funding (from Sol Holdings) with "lease financing," which is entirely distinct and permits SunPower's customers to purchase SunPower's products. I believed that the funding from Sol Holding in February 2024 would be sufficient for SunPower to fund its operations. I did not tell the investigator that I believed SunPower was going to run out of corporate cash.

6. On the other hand, SunPower—like its competitors—had a continual need for customer financing. SunPower would set up a financing facility, exhaust it through sales to customers, and then set up another financing facility to enable more sales. To remain competitive in the industry, it is necessary for companies to offer financing to customers because most customers want to purchase solar products on credit. Therefore, when I said that SunPower needed another tranche of lease financing, I was not referring to corporate financing for SunPower itself, but to financing for SunPower's customers, such as the more than $300 million in project financing commitments that SunPower obtained shortly after the corporate financing from Sol Holding in February 2024.

7. To be clear, I have no reason to believe that any of the Defendants lied to investors and I do not support the claims alleged in Plaintiffs' Complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 8th day of May 2025 in _Sammamish_, _Wa_.

Signed by:

John Zavaglia

22B69A245GB5413...

John Zavaglia

Zavaglia Declaration                    -2-                    Case No.: 3:23-cv-05544-RFL