KATHERINE L. HENDERSON, State Bar No. 242676
DYLAN G. SAVAGE, State Bar No. 310452
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: khenderson@wsgr.com
        dsavage@wsgr.com

JOHN I. KARIN (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: jkarin@wsgr.com

*Attorneys for Defendants Peter Faricy,*
*Elizabeth Eby, and Thomas Werner*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SUNPOWER CORPORATION SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No.: 3:23-cv-05544-RFL<br><br>CLASS ACTION<br><br>DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT<br><br>Hearing Date: September 2, 2025<br>Hearing Time: 10:00 a.m.<br>Dept.: Courtroom 15, 18th Floor<br>Judge: Hon. Rita F. Lin |

Defendants' MTD TAC Reply                              Case No.: 3:23-cv-05544-RFL

**TABLE OF CONTENTS**

Page

ARGUMENT ..............................................................................................................................1

I.  THE TAC FAILS TO STATE A CLAIM AS TO SUNPOWER'S MAY 3, 2023
    GUIDANCE "REITERAT[ION]" (STATEMENT 2). .......................................................1

    A.  Statement 2 should be dismissed as an improper amendment. ...............................1

    B.  Statement 2 is protected by the first prong of the safe harbor...............................1

    C.  The TAC fails to plead falsity and scienter because it does not allege facts
        showing that Faricy actually knew the guidance was false when
        "reiterated." ...........................................................................................................2

II. THE TAC FAILS TO STATE A CLAIM AS TO SUNPOWER'S MAY 3, 2023
    AND AUGUST 2, 2023 GOING CONCERN STATEMENTS
    (STATEMENTS 1, 3). ......................................................................................................4

    A.  The TAC fails to plead falsity and scienter because it does not allege facts
        that undermine the analyses supporting the going concern statements...................4

    B.  The FE and other allegations do not change the result. ..........................................7

        1.  The TAC adds no new facts supporting a strong inference that
            Faricy actually knew the May going concern statement was false. ............7

        2.  The Maxeon and FE allegations do not support a strong inference
            that Faricy or Eby knew the August going concern conclusion was
            false. ..........................................................................................................9

    C.  The Court's prior ruling does not preclude dismissal of Statement 3...................10

III. THE TAC FAILS TO STATE A CLAIM AS TO SUNPOWER'S FEBRUARY
     15, 2024 POSITIVE CASH FLOW PREDICTIONS (STATEMENTS 4-9). ..................10

    A.  Plaintiffs did not seek leave to add Statements 5-9..............................................10

    B.  Statements 4-9 are protected by the first prong of the safe harbor.......................10

    C.  The TAC does not plead Defendants actually knew Statements 4-9 were
        false. .....................................................................................................................11

IV. THE TAC FAILS TO STATE A CLAIM AS TO STATEMENT 10. ..............................13

    A.  The TAC fails to plead attribution of the July 3, 2024 press release. ...................13

    B.  The TAC fails to plead falsity or scienter. ...........................................................15

CONCLUSION .........................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alger Dynamic Opportunities Fund v. Acadia Pharm. Inc.*,
       756 F. Supp. 3d 852 (S.D. Cal. 2024) ...................................................................................... 14

*Askins v. U.S. Dep't of Homeland Sec.*,
       899 F.3d 1035 (9th Cir. 2018)................................................................................................. 10

*Bartlet v. Affymax, Inc.*,
       2014 WL 231551 (N.D. Cal. Jan. 21, 2014) ........................................................................... 15

*Boba Inc. v. Blue Box OPCO*,
       2019 WL 3082021 (S.D. Cal. July 15, 2019)............................................................................ 6

*Brendon v. Allegiant Travel Co.*,
       412 F. Supp. 3d 1244 (D. Nev. 2019) ..................................................................................... 12

*Brown v. Papa Murphy's Holdings, Inc.*,
       2021 WL 235865 (W.D. Wash. Jan. 12, 2021).......................................................................... 6

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
       527 F. Supp. 3d 1151 (N.D. Cal. 2021) ..................................................................................... 4

*Coble v. Broadvision Inc.*,
       2002 WL 31093589 (N.D. Cal. Sept. 11, 2002)......................................................................... 5

*Cont'l Gen. Ins. Co. v. Olafsson*,
       2024 WL 4263211 (D.N.J. Sept. 23, 2024)......................................................................... 5, 12

*Cornwell v. Credit Suisse Grp.*,
       689 F. Supp. 2d 629 (S.D.N.Y. 2010) ..................................................................................... 12

*De Vito v. Liquid Holdings Grp., Inc.*,
       2018 WL 6891832 (D.N.J. Dec. 31, 2018) ............................................................................. 12

*Emps.' Ret. Sys. v. Blanford*,
       794 F.3d 297 (2d Cir. 2015)..................................................................................................... 13

*EnSource Invs. LLC v. Tatham*,
       2017 WL 10648061 (S.D. Cal. Mar. 9, 2017)......................................................................... 12

*Gammel v. Hewlett-Packard Co.*,
       2013 WL 1947525 (C.D. Cal. May 8, 2013).......................................................................3, 12

*Glazer Cap. Mgmt., LP v. Magistri*,
       549 F.3d 736 (9th Cir. 2008).................................................................................................... 14

*Hacker v. Elec. Last Mile Sols. Inc.*,
       687 F. Supp. 3d 582 (D.N.J. 2023) ............................................................................................ 3

*Hammer v. Frontier Fin. Corp.*,
　　2011 WL 13229260 (W.D. Wash. Sept. 7, 2011) ......................................................... 6, 9

*Hampton v. Aqua Metals, Inc.*,
　　2020 U.S. Dist. LEXIS 214010 (N.D. Cal. Nov. 16, 2020) ............................................. 13

*Hemmer Grp. v. SW Water Co.*
　　527 F. App'x 623 (9th Cir. 2013)...................................................................................... 7

*Herremans v. BMW of N. Am., LLC*,
　　2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ...................................................................... 6

*Howard v. Everex Sys., Inc.*,
　　228 F.3d 1057 (9th Cir. 2000).......................................................................................... 14

*In re Alphabet Sec. Litig.*,
　　1 F.4th 687 (9th Cir. 2021).............................................................................................. 11

*In re Alstom SA Sec. Litig.*,
　　406 F. Supp. 2d 433 (S.D.N.Y. 2005) .............................................................................. 12

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
　　741 F. Supp. 2d 511 (S.D.N.Y. 2010).............................................................................. 11

*In re Apple Computer Sec. Litig.*,
　　886 F.2d 1109, 1113 (9th Cir. 1989) ................................................................................. 2

*In re Apple Inc. Sec. Litig.*,
　　2020 WL 6482014 (N.D. Cal. Nov. 4, 2020)................................................................ 3, 15

*In re Arlan's Dep't Stores, Inc.*,
　　615 F.2d 925 (2d Cir. 1979)............................................................................................. 15

*In re Banco Bradesco S.A. Sec. Litig.*,
　　277 F. Supp. 3d 600 (S.D.N.Y. 2017) .............................................................................. 15

*In re Bear Stearns Comput., Inc.*,
　　763 F. Supp. 2d 423 (S.D.N.Y. 2011).............................................................................. 12

*In re Biogen Inc. Sec. Litig.*,
　　857 F.3d 34 (1st Cir. 2017) ............................................................................................... 8

*In re Celgene Corp.*,
　　741 F. Supp. 3d 217 (D.N.J. 2024) .................................................................................. 13

*In re ChinaCast Educ. Corp. Sec. Litig.*,
　　809 F.3d 471 (9th Cir. 2015)............................................................................................ 14

*In re City of Vallejo*,
　　2008 WL 4180008 (Bankr. E.D. Cal. Sept. 5, 2008) ....................................................... 15

*In re eHealth Inc. Sec. Litig.*,
　　2021 WL 5855864 (N.D. Cal. Aug. 12, 2021).................................................................... 3

*In re Emergent BioSolutions Inc Sec. Litig.*,
　　2023 WL 5671608 (D. Md. Sept. 1, 2023) ........................................................................ 5

*In re Grand Casinos, Inc., Sec. Litig.*,
       988 F. Supp. 1273 (D. Minn. 1997) ................................................................................... 3

*In re Illumina, Inc. Sec. Litig.*,
       2018 WL 500990 (S.D. Cal. Jan. 22, 2018) ........................................................................ 5

*In re InterMune, Inc. Sec. Litig.*,
       2004 WL 1737264 (N.D. Cal. July 30, 2004) ................................................................... 15

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
       982 F. Supp. 2d 277 (S.D.N.Y. 2013) ...................................................................... 5, 6, 11

*In re Mullen Auto. Sec. Litig.*,
       2023 WL 8125447 (C.D. Cal. Sept. 28, 2023) .................................................................... 2

*In re Quality Sys., Inc. Sec. Litig.*,
       865 F.3d 1130 (9th Cir. 2017) ............................................................................................ 6

*In re QuantumScape Sec. Class Action Litig.*,
       580 F. Supp. 3d 714 (N.D. Cal. 2022) ............................................................................. 11

*In re Rocket Fuel, Inc. Sec. Litig.*,
       2015 WL 9311921 (N.D. Cal. Dec. 23, 2015) .................................................................. 13

*In re Seagate*,
       No. 3:23-cv-03431-RFL, Dkt. 113 (N.D. Cal. May 12, 2025) ........................................... 5

*In re Sipex Corp. Sec. Litig.*,
       2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) .................................................................... 7

*In re Skechers U.S.A., Inc. Sec. Litig.*,
       2004 WL 1080174 (C.D. Cal. May 7, 2004) ...................................................................... 2

*In re Splunk Inc. Sec. Litig.*,
       592 F. Supp. 3d 919 (N.D. Cal. 2022) ............................................................................... 6

*In re Stone & Webster, Inc., Sec. Litig.*,
       414 F.3d 187 (1st Cir. 2005) .............................................................................................. 5

*In re Syntex Corp. Sec. Litig.*,
       95 F.3d 922 (9th Cir. 1996) ............................................................................................... 5

*In re Thornburg Mortg., Inc. Sec. Litig.*,
       695 F. Supp. 2d 1165 (D.N.M. 2010) ................................................................................ 4

*In re Tibco Software, Inc. Sec. Litig.*,
       2006 WL 1469654 (N.D. Cal. May 25, 2006) .................................................................... 8

*In re Tower Auto. Sec. Litig.*,
       483 F. Supp. 2d 327 (S.D.N.Y. 2007) ................................................................................ 8

*In re VEON Ltd. Sec. Litig.*,
       2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ................................................................... 4

*J. Edwards Jewelry Distrib., LLC v. Wells Fargo & Co.*,
       2019 WL 2329248 (N.D. Cal. May 31, 2019) .................................................................... 8

*Janus Cap. Grp., Inc. v. First Derivative Traders,*
        564 U.S. 135 (2011) ...................................................................................................... 15

*Karimi v. Deutsche Bank Aktiengesellschaft,*
        607 F. Supp. 3d 381 (S.D.N.Y. 2022) ........................................................................... 12

*Kingston v. FCA US LLC,*
        2020 WL 2845282 (C.D. Cal. Mar. 25, 2020) ................................................................. 8

*Kipling v. Flex Ltd.,*
        2020 WL 7261314 (N.D. Cal. Dec. 10, 2020) ............................................................... 10

*M&M Hart Living Tr. v. Glob. Eagle Entm't, Inc.,*
        2017 WL 5635424 (C.D. Cal. Aug. 20, 2017) ................................................................. 4

*Mandalevy v. Bofi Hldg.,*
        2021 WL 794275 (S.D. Cal. Mar. 2, 2021) ................................................................... 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
        540 F.3d 1049 (9th Cir. 2008) ........................................................................................ 4

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC,*
        2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) ............................................................... 14

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.,*
        2024 WL 4353049 (N.D. Cal. Sept. 30, 2024) .............................................................. 14

*Pino v. Cardone Cap., LLC,*
        139 F.4th 1102 (9th Cir. 2025) ..................................................................................... 12

*Roberti v. OSI Sys., Inc.,*
        2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ................................................................. 6

*Ronconi v. Larkin,*
        253 F.3d 423 (9th Cir. 2001) .......................................................................................... 3

*SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc.,*
        2019 WL 13203776 (N.D. Cal. Oct. 10, 2019) ............................................................... 6

*Schechter v. Smith,*
        2011 U.S. Dist. LEXIS 5329 (C.D. Cal. Dec. 6, 2011) ................................................... 5

*Schueneman v. Arena Pharms., Inc.,*
        840 F.3d 698 (9th Cir. 2016) .......................................................................................... 5

*Sneed v. AcelRx Pharms., Inc.,*
        2023 WL 4412164 (N.D. Cal. July 7, 2023) ................................................................. 13

*Todd v. STAAR Surgical Co.,*
        2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ................................................................. 6

*Vanleeuwen v. Keyuan Petrochemicals, Inc.,*
        2013 WL 2247394 (C.D. Cal. May 9, 2013) ................................................................. 10

*Wang v. Zymergen Inc.,*
        744 F. Supp. 3d 995 (N.D. Cal. 2024) .......................................................................... 15

Defendants' MTD TAC Reply                    -v-                    Case No.: 3:23-cv-05544-RFL

*Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*,
        2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) .................................................................. 6

*Wochos v. Tesla, Inc.*,
        985 F.3d 1180 (9th Cir. 2021) .................................................................................. 1, 11

*Zucco Partners, LLC v. Digimarc Corp.*,
        552 F.3d 981 (9th Cir. 2009) ......................................................................................... 14

Plaintiffs' Opposition (Dkt. 112 or "Opp.") largely ignores the arguments and authorities in Defendants' Motion to Dismiss (Dkt. 110 or "Br."), choosing simply to repeat the unfounded allegations from the TAC without addressing the dispositive problems Defendants identified. These many concessions are determinative, and Plaintiffs' futile efforts to compensate for them fail. Plaintiffs try again for a lower standard of recklessness when the law is clear actual knowledge applies, a high bar Plaintiffs come nowhere close to clearing. For the May going concern statement, Plaintiffs rearrange old allegations from the SAC and delete unhelpful admissions, adding nothing beyond the same generic allegations of longstanding cash problems that the Court found insufficient to allege falsity or scienter. Plaintiffs concede they allege nothing about the analyses underlying the going concern expectations at all, nor the projections supporting other challenged statements. Plaintiffs' attempt to transform a statement about current cash position into one about future cash flow and attribute it to persons not named in the release is the inverse of what the law requires. The action should be dismissed with prejudice.

## ARGUMENT

### I.    THE TAC FAILS TO STATE A CLAIM AS TO SUNPOWER'S MAY 3, 2023 GUIDANCE "REITERAT[ION]" (STATEMENT 2).

#### A.    Statement 2 should be dismissed as an improper amendment.

Plaintiffs concede the SAC did not challenge Statement 2 but argue in a footnote it is "not a new claim" because it "reiterat[es]" the February 2023 guidance. Opp. at 12 n.10 (citing inapposite authority regarding standards for relation back and *res judicata*). As the Court dismissed that February claim as new (Op. at 11 n.2), Statement 2 should also be dismissed.

#### B.    Statement 2 is protected by the first prong of the safe harbor.

Despite conceding elsewhere that Statement 2 "merely" "reiterate[s]" guidance, Plaintiffs contend, contrary to Ninth Circuit authority, that Faricy's indication he "remain[ed] confident" in that guidance transforms the forward-looking statement into one of present fact. Opp. at 14. The Court rejected this argument in its Order on the SAC. Op. at 13 (under *Tesla*, that a "statement refers to SunPower's present view of its future ability to meet" financial metrics is "legally [in]sufficient" to establish it is not forward-looking).

Plaintiffs also claim the cautionary language accompanying Statement 2 is ineffective. Plaintiffs rely on authority applying the wrong standard (bespeaks caution, not safe harbor), which in any event is distinguishable. *See In re Mullen Auto. Sec. Litig.*, 2023 WL 8125447, *12 (C.D. Cal. Sept. 28, 2023) (summary judgment case where cautionary language was "not specific" to subject of alleged falsehoods). Plaintiffs admit the language here warned of the specific risks, including the NEM 3.0 change, featured in the TAC. Opp. at 15. Plaintiffs aver that the risk factors are nevertheless insufficient because they "employ speculative language" when Faricy "already" knew the "full impact" of NEM 3.0 would be worse than the forecast. *Id.* But Plaintiffs' allegations do not and cannot establish such knowledge; NEM 3.0 was only two weeks in and SunPower disclosed the potential risk of future declines. *See In re Skechers U.S.A., Inc. Sec. Litig.*, 2004 WL 1080174, *5 (C.D. Cal. May 7, 2004) (allegation "Defendants already knew" demand for back half of year was decreasing insufficient where "cautionary statements specifically reference the potential for declining demand" during same period).

**C.     The TAC fails to plead falsity and scienter because it does not allege facts showing that Faricy actually knew the guidance was false when "reiterated."**

Plaintiffs admit the TAC pleads nothing about the internal forecasts underlying the projections or how the effects of NEM 3.0 lined up with those forecasts as of May 3. Opp. at 13; Br. at 5. Plaintiffs' efforts to compensate for this insurmountable defect fail.[1]

***First***, Plaintiffs argue that by May, NEM 3.0 "had already devastated" customer demand, and "Faricy would have had real time access" to reports showing as much. Opp. at 12-13. But Plaintiffs fail to identify any such contemporaneous reports (relying solely on recklessness and retrospective third-party articles not specific to SunPower, ¶51) or explain how NEM 3.0 could possibly have "already devasted" demand just two weeks in. Regardless, decreased demand would only matter if the projections (fraudulently) failed to account for it; here, Plaintiffs concede Faricy "admitted" SunPower had "expect[ed] a decline in new bookings under NEM

---

[1] Plaintiffs argue Defendants "misrepresent" that actual knowledge is the standard for forward-looking statements (Opp. at 14), erroneously arguing that an outdated version of the test for opinion statements should govern (citing *Apple*), seemingly misunderstanding the Court's use of the word "projections" in that case (which did not refer to financial forecasts). Opp. at 15.

3.0" (Opp. at 13), *i.e.*, that the Company accounted for (not omitted) such projected "decline[s]." Plaintiffs offer no specific contrary facts and rather concede that SunPower had only "[p]reliminary NEM 3.0 sales" data as of May 3, which was "tracking in line with expectations"; that forecasts had assumed a "500 basis point" YOY reduction; and that "after Q1," SunPower was still "closer to the high end of the guidance."  Br. at 5.

*Second*, Plaintiffs claim SunPower's reduction to projected EBITDA months later in July pleads falsity and scienter.  Opp. at 13-14.  Plaintiffs' own case shows temporal proximity does not satisfy either element.  *See Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, *20 (C.D. Cal. May 8, 2013) (temporal proximity may "bolster" well-pleaded, specific allegations of scienter but alone is "insufficient") (cited in Opp. at 13).  And here the timing is not even that close.  *See Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) (shorter period of five weeks "between ... optimistic statements and [a] below-expectation earnings report is not enough").  Nor does the "magnitude" of the reduction suffice, particularly given Plaintiffs' failure to address the factors SunPower indicated had a more significant impact on the guidance miss (Br. at 7); Plaintiffs rely almost exclusively on cases not involving a downward revision to forward-looking projections.  *See Hacker v. Elec. Last Mile Sols. Inc.*, 687 F. Supp. 3d 582, 600 n.38 (D.N.J. 2023) (GAAP violations for stock sales); *In re eHealth Inc. Sec. Litig.*, 2021 WL 5855864, *11 (N.D. Cal. Aug. 12, 2021) (misstatements of "operational expenses"); *In re Grand Casinos, Inc., Sec. Litig.*, 988 F. Supp. 1273, 1282-83 (D. Minn. 1997) (misstatements of past construction problems).  Unlike here, *Apple* involved an "I knew it all along" admission from the CEO about the precise issue that undermined the company's projections.  *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, *9-10 (N.D. Cal. Nov. 4, 2020).

*Third*, Plaintiffs assert that Defendants "admitted" the "underpinnings" of the guidance "were false," by virtue of restating (or announcing the need to restate) certain aspects of SunPower's historical financials.  Opp. at 13.  The restatement announcements and the December 2023 restatement do not mention the guidance, and the second restatement pertained to "capitalization" and "classification" issues unrelated to forecasting.  ¶93.  The TAC does not explain how the restatements were connected to the guidance assumptions or rendered them false

Defendants' MTD TAC Reply                     -3-                     Case No.: 3:23-cv-05544-RFL

in any material way, as the TAC alleges nothing about the guidance assumptions—period. Plaintiffs' unsubstantiated assertion that "metrics underlying the guidance ... undoubtedly are linked to the Company's liquidity crisis" (Opp. at 13), not forecasts, does nothing to fill this gap. Moreover, since the law is clear that the fact of a restatement does not plead scienter even for the affected financials, it certainly does not for projections. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068-69 (9th Cir. 2008) (no scienter where "the TAC does not tie" restatements "to the TAC's more general theory" of fraud); *M&M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*, 2017 WL 5635424, *10 (C.D. Cal. Aug. 20, 2017) (statement that "investors should no longer rely upon any previous estimates" did not show falsity of projections).

*Finally*, Plaintiffs point to Faricy's supposed "motive" "to keep his job a few months longer." Opp. at 14, 8-9. Such generic allegations of motive alone do not plead scienter. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1192 (N.D. Cal. 2021) (motive "to enhance a company's business prospects" insufficient); *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1188, 1202 (D.N.M. 2010) (motive of "self-preservation" insufficient); *In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, *10 (S.D.N.Y. Sept. 19, 2017) (not involving motive; defendants disguised illegal payments as legitimate).

## II.   THE TAC FAILS TO STATE A CLAIM AS TO SUNPOWER'S MAY 3, 2023 AND AUGUST 2, 2023 GOING CONCERN STATEMENTS (STATEMENTS 1, 3).

### A.   The TAC fails to plead falsity and scienter because it does not allege facts that undermine the analyses supporting the going concern statements.

Plaintiffs agree that actual knowledge of falsity for the going concern statements requires facts showing Defendants were "aware of a significant likelihood that the risk [of insolvency] would materialize" in the specified 12-month period. Opp. at 9. As Plaintiffs concede they allege nothing about the insolvency analysis or any risks it identified, and insolvency did not actually materialize for either period, that should be the end of the inquiry. Br. at 7-10. The hodgepodge of distractions Plaintiffs offer do not alter this basic pleading failure.

- Plaintiffs contend they "need not allege how the analyses were created" because going concern statements are "a representation of financial health and liquidity, which the TAC's

allegations about the ongoing dire cash crisis ... undermine." Opp. at 10. Plaintiffs offer no support for the notion that a company's specific going concern expectation equates to a general warranty of "financial health" or that allegations about unspecified cash constraints and late payments necessarily show a "significant risk of insolvency." Plaintiffs do not dispute Statements 1 and 3 report the results of a specific accounting analysis pursuant to GAAP, ASC, and SEC regulations. The analyses are incorporated by reference and support Defendants' statements, and no facts are pleaded regarding the analyses that refute their conclusions. *Id.* at 11-2; Br. at 8. Plaintiffs attempt to address only one case (*Seagate*) out of Defendants' multiple authorities, a half-hearted effort that does not dispute that case's on-point central tenet. Opp. at 10 n.5 (not disputing that misstatement premised on GAAP error must allege an actual violation). No case Plaintiffs cite even opines on the meaning of a "going concern" statement, let alone "endorse[s]" their interpretation (or misread of the law). *Id.* at 10 & n.6; *see, e.g.*, *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 210-13 (1st Cir. 2005) ("lying about the Company's present access to funds" and "strong financial condition" misleading, but alleged fraud was not about "underestimating … future cash needs"); *Cont'l Gen. Ins. Co. v. Olafsson*, 2024 WL 4263211, *2-3, 8 (D.N.J. Sept. 23, 2024) (statements as to current "strong foundation" and "significant liquidity" misleading where second bankruptcy on the horizon "right after filing for bankruptcy").[2]

- Plaintiffs' featured case, *MF Global*, does not involve remotely similar circumstances or even going concern analyses. There, defendants falsely assured investors about the company's "strong" liquidity position and risk management policies while engaging in a strategy to move

---

[2] Plaintiffs barely address Defendants' mountain of relevant cases, including binding Ninth Circuit caselaw. Opp. at 9 & n.3 (omitting *Syntex*, *Broadvision*, and *Schechter*). The weak attempts Plaintiffs do make at distinction ironically highlight that courts require particularized allegations of actual knowledge about severe, irremediable problems—precisely what is missing here. Plaintiffs' cited cases highlight the same. *See In re Illumina, Inc. Sec. Litig.*, 2018 WL 500990, *5 (S.D. Cal. Jan. 22, 2018) (specific allegations defendants actually knew about undisclosed sales declines that contradicted projections, which defendants later admitted caused projections miss); *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 709 (9th Cir. 2016) (specific allegations defendants actually knew FDA disagreed with study results and lodged concerns, contradicting non-forward looking statements to investors about approval, preclinical studies, and drug's safety); *In re Emergent BioSolutions Inc Sec. Litig.*, 2023 WL 5671608, *21-24 (D. Md. Sept. 1, 2023) (specific allegations defendants actually knew about contamination and other severe problems at facility, plus negative FDA reports, contradicted non-forward looking statements "tout[ing]" the facility's "capacity to produce vaccines").

risky assets off the balance sheet and artificially report those transactions as gains, all while leaving the company exposed to capital calls defendants knew could not be covered.  982 F. Supp. 2d 277, 298, 320 (S.D.N.Y. 2013) (internal reports noted failure to follow internal controls related to liquidity controls); *see also In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1138-39, 1145-46 (9th Cir. 2017) (particularized allegations of contemporaneous financial information directly contradicted the challenged statements); *Brown v. Papa Murphy's Holdings, Inc.*, 2021 WL 235865, *4-5 (W.D. Wash. Jan. 12, 2021) (using lower "base case" projections for a merger despite specific allegations management indicated the numbers were unreasonable); *Hammer v. Frontier Fin. Corp.*, 2011 WL 13229260, *1-2, 5 (W.D. Wash. Sept. 7, 2011) (statements assured present adequacy of capitalization despite contrary regulatory determination); *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 939 n.5, 947-48 (N.D. Cal. 2022) (CW allegations of undisclosed hiring freeze and investment cuts in business plan, which defendants denied).

- Plaintiffs claim that even if the going concern statements are forward-looking, the safe harbor does not apply because Defendants failed to disclose "present" unspecified problems "plaguing the Company's liquidity."  Opp. at 10.[3]  But SunPower did disclose the Company's cash challenges, including the need for multiple restructurings (*see* App'x A; Br. at 15-17; *infra* p. 7-8), which in any event does not render Statements 1 or 3 knowingly misleading because Plaintiffs admit the TAC lacks allegations showing that, contrary to the Company's  disclosures, the going concern analyses neglected to account for the cash issues.  Br. at 8.  Plaintiffs' authority is not to the contrary.  Opp. at 10 (citing *Staar* and *Roberti*, both involving undisclosed violations identified by the government which contradicted statement of present fact); *Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, *3 (N.D. Cal. Sept. 4, 2012) (defendants allegedly knew, but failed to forecast, that company's "single largest source of cash income stopped sending payments altogether").

- Plaintiffs contend that SunPower's survival for twelve months after the challenged statements is not probative because the "continuation was artificially prolonged by fraud" (Opp.

---

[3] Plaintiffs argue a relaxed pleading standard governs their omissions theory, but cite cases involving state law claims not subject to the PSLRA. Opp. at 11 (*Babywatch*, *BMW*, and *Boba*).

at 7-8 (emphasis omitted)), but cite only the December 2023 going concern warning (which resulted from the restatement and covenant breaches) and procuring of additional cash from Sol (which was publicly foreshadowed and necessitated by later events). Plaintiffs fail to refute multiple of Defendants' arguments, including the lack of any allegation SunPower was in breach of the loan covenants by May or August and that no "substantial doubt" disclosure appeared in EY's Q1 or Q2 2023 opinions. Br. at 9-10. Plaintiffs' conclusory proclamation that EY's "resignation letter plainly included the May statement" has no support in the TAC or document.

- Plaintiffs assert EY's resignation and the SEC and AUSA investigations evidence "managerial misconduct." Opp. at 11-12. Plaintiffs misrepresent what the resignation said (disagreement over audit scope, not "due to management's lack of candor and cooperation," *id*. at 12) and do not dispute the TAC lacks facts connecting investigations about "revenue recognition practices" to Statements 1 and 3. ¶¶103, 116. Plaintiffs have no response to Defendants' cases stating resignations and investigations do not plead scienter. Br. at 7 n.7.

- Plaintiffs also cite the restatements, which never mention the going concern projections and fail for the reasons above. *See* p. 3-4; Opp. at 11-12 & n.7 (citing *Sipex* and *Hemmer*, which challenged the financials that were restated—not a separate forward-looking analysis).

**B.    The FE and other allegations do not change the result.**

**1.    The TAC adds no new facts supporting a strong inference that Faricy actually knew the May going concern statement was false.**

The TAC simply realleges that "SunPower was tight on cash and regularly failed to pay suppliers on time," which is insufficient to allege falsity or scienter for Statement 1. Op. at 11.

Plaintiffs claim the TAC "clarifies that by the May 3, 2023 Q1 report," the Company was in an "unprecedented, acute liquidity crisis" such that Faricy knew SunPower could not meet its cash obligations over the next 12 months. Opp. at 6 (emphasis omitted). Not so. First, Plaintiffs admit that none of the FEs were involved with the overall liquidity analysis and thus were not positioned to know about any such crisis, but ignore Defendants' cases rejecting allegations from FEs who were not involved in the relevant analysis. Br. at 14-15. Plaintiffs also fail to explain how the FE allegations are inconsistent with Defendants' public disclosures (*id.* at 15-16; App'x

Defendants' MTD TAC Reply                    -7-                    Case No.: 3:23-cv-05544-RFL

A), which as Defendants' authority establishes (*Biogen*; *Tibco*; *Tower Auto*) renders the challenged statements not misleading as a matter of law and certainly not knowingly fraudulent.

More critically, the actual FE allegations do not show that the Company was in an "unprecedented acute liquidity crisis" in Q1 but rather that the Company had experienced similar cash constraints for years prior to and throughout the Class Period. Op. at 11. The FE allegations Plaintiffs call out in the Opposition are largely the same as those the Court found deficiently pleaded in the SAC. *Compare* Opp. at 6-8, *with* SAC ¶¶44-46, 48 (discussing NEM 3.0), ¶¶103-10 (mostly same allegations from FE1), ¶¶113-15 (same allegations from FE3), ¶¶111-12 (same allegations from FE2), ¶¶116-22 (mostly same allegations from FE4); *see also* Opp. at 8 (claiming FE4 raised "cash issues directly with Faricy," but TAC ¶130 does not allege that). The changes Plaintiffs made to the TAC were to delete some unhelpful admissions from the FEs supporting the Court's conclusion that "SunPower ... operated in [a] cash-strapped state for multiple years." Op. at 11; *see, e.g.*, Dkt. 103-2 at 39 ("**chronic** financial problems"); *id.* at 42 ("All throughout the three years of FE3's tenure"); *id.* ("lack of cash … surfac[ed] in 2022"). Two examples are particularly egregious. The SAC alleged FE4 stated there was no longer "enough cash" to pay some suppliers "'starting mid-way through' 2022" (Dkt. 103-2 at 48) and that FE2 said "cash was always an issue" during his "entire tenure," which began in January 2019. *Id.* at 40. In the TAC, both dates have magically been changed to "Q1 2023." *Id.* at 40, 42. Plaintiffs cannot state a claim by removing these unhelpful factual admissions. *J. Edwards Jewelry Distrib., LLC v. Wells Fargo & Co.*, 2019 WL 2329248, *4 (N.D. Cal. May 31, 2019) (plaintiff cannot delete factual admissions to avoid dismissal); *Kingston v. FCA US LLC*, 2020 WL 2845282, *3 (C.D. Cal. Mar. 25, 2020) (same).

To the extent Plaintiffs added any new "facts," Plaintiffs do little (if anything) to refute the myriad issues Defendants raised with these revisions. Plaintiffs ignore multiple factors undermining FE4's credibility, such as providing a wrong date for the retention of Alvarez & Marsal, lack of insight into SunPower's ability to raise additional capital, and inadequate specificity about the supposedly delinquent payments. Br. at 14-15 & n.12. Plaintiffs similarly ignore that FE3 could not possibly comment on the state of the Company in May when she left in

January.  *Id.* at n.8.  And Plaintiffs barely address the problems with FE1 (a throwaway response demoted to a footnote), attempting to dismiss her flat-out error about "cancellation" of the Maxeon contract as "immaterial" and asserting with no facts she was nonetheless "squarely positioned to know" about "missed Maxeon payments."  Opp. at 6-7 n.2.  The latter assertion is particularly specious, given Plaintiffs allege FE1 could not even say with certainty when any "missed" payments started, guessing they were "probably" months late but never specifying when.[4]  ¶122.  These allegations certainly do not provide a compelling inference that "'Faricy w[as] allegedly aware that SunPower was in a severe liquidity crisis that resulted in SunPower already defaulting on its payment obligations to Maxeon'" as of May 3.  Opp. at 9.

Elsewhere, Plaintiffs added their own qualifiers—but not quotes that they could attribute to the FEs.  *See, e.g.*, Dkt. 103-2 at 39 (changing FE statements about "summer" to "during the first quarter of 2023 and after"); *id.* at 40 ("meaning that the nonpayment started" months before the "July" cancellation where FE said it was Q2 or Q3); *id.* (changing FE statement about "entire tenure" to "In the months leading up to" Statement 1); *id.* at 42 ("During this timeframe and after"); *id.* ("starting in early 2023"); *id.* at 43 ("Throughout these cash problems in 2023"); *id.* ("throughout 2023").  Self-serving descriptions are not well-pleaded facts and do not alter the substance of what was previously before the Court.  *See Hammer*, 2011 WL 13229260, at *8 (rejecting "unsupported assertions" added to CW quotes).

In short, as before, all Plaintiffs can muster are vague allegations of delayed payments to unspecified vendors, cost cutting, and negative impacts of NEM 3.0 untethered to SunPower's actual projections or May 3 going concern analysis.  Statement 1 should again be dismissed.

**2.    The Maxeon and FE allegations do not support a strong inference that Faricy or Eby knew the August going concern conclusion was false.**

While the Maxeon allegations were critical to the Court's analysis in its Order, they now take a backseat in the Opposition in light of Plaintiffs' concession that SunPower was entitled to

---

[4] Plaintiffs' revisions to FE1's and FE4's allegations regarding "motive" fail for the reasons above (*see supra* p. 4), and Dundas's resignation does not "add" anything.  Opp. at 9.  It is not even mentioned in the TAC, not alleged to be connected to Statements 1 and 3, and even less suspicious because he was an "***Interim*** CFO."  ¶123 (emphasis added).

Defendants' MTD TAC Reply                    -9-                    Case No.: 3:23-cv-05544-RFL

delay payment under the parties' contract; that SunPower paid off nearly all of its balance before settling with Maxeon; that SunPower's audited cash on hand remained over $100 million through Q3; and that SunPower's issuance of warrants was not in lieu of cash payment for past products and thus does not suggest that SunPower was unable to pay Maxeon.  Br. at 11-14. Without Maxeon providing specific support for Plaintiffs' conclusory allegation that SunPower lacked sufficient cash to continue for 12 months, the remaining allegations fail.  Aside from Plaintiffs' anemic attempt to defend FE1, shunted to a footnote (*see supra* p. 8-9), the Opposition ignores Statement 3, hoping the Court will not scrutinize the TAC's lack of factual support.

C.      **The Court's prior ruling does not preclude dismissal of Statement 3.**

In another footnote argument Plaintiffs plainly know they will lose, the Opposition claims the Court's order on the August going concern statement is "law of the case and may not be revisited."  Opp. at 5 n.1.  Plaintiffs do not mention the binding Ninth Circuit law Defendants cite (Br. at 16-17), which holds that the "district court is not … bound by any law of the case" upon the filing of an amended complaint, and is "free to correct any errors or misunderstandings without having to find that its prior decision was 'clearly erroneous,'" such as on the Maxeon payments.  *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). Plaintiffs rely on outdated authority (*Keyuan*) that predates *Askins*, and *Kipling* is inapposite because it discusses a plaintiff's inability to amend around nonactionable puffery.

III.    **THE TAC FAILS TO STATE A CLAIM AS TO SUNPOWER'S FEBRUARY 15, 2024 POSITIVE CASH FLOW PREDICTIONS (STATEMENTS 4-9).**

A.      **Plaintiffs did not seek leave to add Statements 5-9.**

Plaintiffs conceded Statements 5-9 are improper amendments and should be dismissed.

B.      **Statements 4-9 are protected by the first prong of the safe harbor.**

Plaintiffs argue that three statements are not forward-looking because they "address the *present* status of the Company's financial health" (Opp. at 20), but statements regarding the "expect[ation]" for no going concern provision and financing "put[ting] [SunPower] in a position" to meet liquidity needs for next year (*id.*) are forward-looking because they "refer[] to SunPower's present view of its future ability to meet its" cash flow predictions.  Op. at 13 (citing

Defendants' MTD TAC Reply                   -10-                   Case No.: 3:23-cv-05544-RFL

*Tesla*).  While the statement about "cost reductions" might not appear forward-looking on its face, Plaintiffs do not theorize it is false because reductions had not "been implemented" as of February.  Opp. at 4.  Rather, Plaintiffs construe that language as implying cost reductions would not be needed in the *future*, rendering it forward-looking.  Dkt. 103-1 at 14.

Plaintiffs complain the accompanying cautionary language was ineffective because it spoke of liquidity risks as hypothetical when they had already transpired.  Opp. at 20.  Unlike in Plaintiffs' cited cases (*Alphabet*; *MF Global*; *AIG*), Plaintiffs do not plead facts showing that Defendants knew—as of February 15—about, for example, the second restatement, EY's resignation, or eventual bankruptcy.  Br. at 18-20; Op. at 17 ("that SunPower eventually declared bankruptcy by August 2024" "does not indicate that insolvency was apparent" in February).  This case is also nothing like *QuantumScape*, which involved "hyper-technical" disclosures difficult for investors to appreciate.  580 F. Supp. 3d 714, 733-34 (N.D. Cal. 2022).

**C.  The TAC does not plead Defendants actually knew Statements 4-9 were false.**

 In granting Defendants' prior motion to dismiss Statement 4, the Court found the SAC failed to plead facts showing the "$125 million cash infusion [from Sol] would not have mitigated SunPower's existing cash flow issues," including because no FE "commented on the effect of the capital infusion on the company's cash position."  Op. at 17.  The same problem remains in the TAC for all of the February statements.  Plaintiffs do not dispute the TAC alleges nothing about the internal analyses underlying SunPower's expectation to be cash flow positive in the future.  Plaintiffs' approach is simply to recount at length the TAC's allegations about the Henry Declaration and FEs 4, 5, 6, and 10, and argue, without factual support, that the February tranche from Sol plus previous cost reductions could not have supported Defendants' expectations.  Opp. at 16-17.  Defendants pointed out numerous fundamental inaccuracies in Plaintiffs' recitation of the Henry Declaration as well as multiple problems with the FE allegations, citing authority demonstrating why such allegations fail to show actual knowledge and should be disregarded.  Br. at 18-20 & n.13.  Plaintiffs dispute only the arguments as to FE6.

As to FE6, Plaintiffs start with a concession that he was referring to lease (not operational) financing when he stated additional funds would be needed after the February

Defendants' MTD TAC Reply                    -11-                    Case No.: 3:23-cv-05544-RFL

tranche from Sol. Opp. at 19. Plaintiffs argue the allegation nevertheless remains relevant because lease financing, too, was "impossible" to raise given the Company's breach of its financial and reporting covenants. *Id.* But the TAC acknowledges that SunPower "obtained permanent waivers of" those breaches such that they were not "ongoing" (¶212), and SunPower thereafter proceeded to raise more than $300 million in lease financing (Ex. 29).[5]

Instead of grappling with any of the foregoing, Plaintiffs repeat three meritless arguments: that courts "do not require" allegations about internal projections, and that they have alleged facts showing motive and temporal proximity. Opp. at 17, 19-20. Regarding the first, their authority confirms Plaintiffs must plead particularized facts showing actual knowledge (Br. at 18), including the financial analyses regarding future cash flows, when challenging such forward-looking statements.[6] The motive and temporal proximity arguments are the same as elsewhere and fail for the reasons above (*see supra* p. 3-4). Plaintiffs' additional suggestion that

---

[5] Later access to additional funds disproves two others of Plaintiffs' premises: that Defendants knew a breach of SunPower's covenants would foreclose "access to other forms of credit or cash," or that an SEC investigation would render all "further capital raises dead in the water." Opp. at 18-19. On the former, Plaintiffs have no response to Defendants' point that Sol had already proven willing to invest more notwithstanding a lack of financials. Br. at 24. Plaintiffs' cases on the latter point say no such thing. Opp. at 19 (citing *Deutsche Bank* and *Bear Stearns*, where audits, investigations, and settlements warned of the improper practices before the statements were made); *id.* at 19 n.12 (citing *Pino*, involving SEC letter (not investigation) stating "projections lacked backing and should be removed from offering materials," and which does not hold that companies have a duty to disclose SEC investigations). Plaintiffs additionally obfuscate the timeline. The TAC alleges that SunPower received the SEC subpoena (¶103), the Audit Committee determined to restate financials (¶93), and EY resigned (¶102), weeks to months *after* Statements 4-9 were made on February 15. ¶¶162-68.

[6] Plaintiffs rely on inapposite cases, some of which do not even involve forward-looking statements, and which to the extent relevant at all emphasize the need for specific allegations regarding the defendants' knowledge. *See Cont'l*, 2024 WL 4263211, at *10 (declaration described analysis showing company was insolvent at time defendants touted adequacy of liquidity); *Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629, 636-67 (S.D.N.Y. 2010) (allegations through an "array" of CWs that executives "reviewed specific reports" alerting them to the problems they misrepresented); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 504 (S.D.N.Y. 2005) (considering "culpable participation" element of Section 20(a) claim, not falsity or scienter); *Gammel*, 2013 WL 1947525, at *16-22 (considering scienter for statements not subject to safe harbor); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1258-61, 1263 (D. Nev. 2019) (same, under core operations doctrine); *EnSource Invs. LLC v. Tatham*, 2017 WL 10648061, *5 (S.D. Cal. Mar. 9, 2017) (company failed to disclose it was already insolvent when soliciting investment); *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, *8 (D.N.J. Dec. 31, 2018) (fraud surrounding failed relationship with single related-party customer "on which [company's] forecasts and business prospects had been built").

Defendants were motivated to deceive Sol into "'throw[ing] good money after bad'" (Opp. at 19 (emphasis omitted)) ignores Sol's controlling insider status.[7]

## IV.    THE TAC FAILS TO STATE A CLAIM AS TO STATEMENT 10.

### A.    The TAC fails to plead attribution of the July 3, 2024 press release.

The TAC does not adequately allege that Werner or Eby "made" the unsigned July 3 press release as required by Section 10(b).  Br. at 20-22; Op. at 18.  Plaintiffs again point to Defendants' roles (Opp. at 23) but ignore clear case law (including this Court's Order and *Aqua*) holding that mere status as an officer or executive is insufficient to attribute a press release—as well as the fact that Werner was not CEO, but principal executive officer, an error they repeat in the Opposition.  *Id.*  Plaintiffs also assert that Eby made Statement 10 because she signed a separate 8-K discussing other "matters," but cite no authority suggesting that a defendant's signature on one statement shows her ultimate authority over another.  *Id.*

Plaintiffs next repeat the TAC's (inapposite) FE speculation, which even in the Opposition is recounted as what "would have been likely" or what "typically" occurs.  Opp. at 23.  Plaintiffs concede that no FE alleges Werner or Eby even reviewed the press release, much less had actual authority, or was a member of the team that coordinated the review process (Br. at 21), further admitting that *Celgene* states a defendant is not a maker where, as here, there is "'no proof'" she "'directed anyone about what to say or how to say it'" (Opp. at 24 n.13). Plaintiffs' cited cases, by contrast, involved allegations that the individuals "weighed in" or "provided input" about the purported misstatements.  *Sneed v. AcelRx Pharms., Inc.*, 2023 WL 4412164, *6 (N.D. Cal. July 7, 2023); *see also In re Rocket Fuel, Inc. Sec. Litig.*, 2015 WL 9311921, *10 (N.D. Cal. Dec. 23, 2015) (plaintiffs could "attribute the statement to the company itself"); *Mandalevy v. Bofi Hldg.*, 2021 WL 794275, *7 (S.D. Cal. Mar. 2, 2021) (conclusory allegation that "Defendants possess the power and authority to, and did, control the contents of ...

---

[7] Here and elsewhere, Plaintiffs invent reasons for EY's resignation that are not alleged and contradict the public disclosures.  *See* Opp. at 20 (claiming EY cited management's "repeated failure to accurately provide financials to audit"); *id.* at 1, 2, 4 (attributing resignation to "failing to provide accurate financials," withholding of "financial information," and "accounting improprieties").  That distinguishes this case from *Blanford*, which did not even involve an auditor resignation but CW allegations that the defendants hid information from the auditors in order to perpetuate their financial fraud, unlike here.  794 F.3d 297, 301-02 (2d Cir. 2015).

press releases" insufficient, and chairman not a "maker" given generalized allegations). None says that being a member of an executive committee with diffuse leadership responsibilities is sufficient.[8] As there continues to be "no allegations linking any of the Defendants to the press release" (Op. at 19), the primary claim is not adequately pleaded.

The TAC also fails to adequately allege control person liability against Werner or Eby. Br. at 20-22. The Opposition claims that SunPower's "role as a primary violator is alleged" (Opp. at 25 (citing ¶3)), but Plaintiffs' own case demonstrates the TAC fails to plead an underlying claim with respect to the unattributed press release. In *ChinaCast*, the parties agreed that the CEO had committed fraud, and the question was whether his fraud could "be imputed to" the company. 809 F.3d 471, 473, 475-76 (9th Cir. 2015) ("'employer ... liable for the torts of his employee[s]'"). Plaintiffs attempt to do the opposite: allege SunPower as an entity issued a fraudulent press release, then impute it to individuals against whom they have stated no claim. A corporation, however, "can ... only have scienter" through its employees; Plaintiffs identify none. *Id.* at 475; *see also Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) ("PSLRA requires [plaintiff] to plead scienter with respect to those individuals who actually made the false statements"). No case Plaintiffs cite holds "a Section 20(a) claim is stated" so long as the press release "addresses a crucial matter, is material, and is within the controllers' sphere of expertise." Opp. at 25 (citing *ChinaCast* and *Alger*, which upheld Section 20(a) claim based on primary violation and confirmed primary claim against corporation requires alleging "officers or agents acted with scienter"); *see also Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060, 1065 (9th Cir. 2000) (not involving pleading standard but confirming, per *Zucco*, Section 20(a) requires allegations "defendant exercised actual power or control over the primary violator" meaning actual authority over the statement at issue); *Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2024 WL 4353049, *19 (N.D. Cal. Sept. 30, 2024) (20(a) claims derivative of 10(b) claims; not discussing press release, and no governance by committee); *Oaktree*

---

[8] While this claim can be dismissed on the lack of allegations connecting the individuals to the press release alone, it also bears mentioning that the FE declarations precipitating Plaintiffs' correction of the TAC (which they aver in the corresponding stipulation are "incorporate[d]" into the pleading), clarified that no FE linked either Defendant to the actual release at issue.

*Principal Fund V, LP v. Warburg Pincus LLC*, 2017 WL 3187688, \*22 (C.D. Cal. Jan. 17, 2017) (it "would be illogical for the Court to conclude that [he] was not in control of his own potential Exchange Act violations"); *Apple*, 2020 WL 6482014, at \*14 (controller "co-hosted the ... call where the challenged statements were made"); *Wang v. Zymergen Inc.*, 744 F. Supp. 3d 995, 1010-13 (N.D. Cal. 2024) (addressing investor control).[9]

### B.    The TAC fails to plead falsity or scienter.

Plaintiffs admit that "cash position" and "cash flow" are distinct concepts. Opp. at 22. In rambling, circular logic that erroneously conflates the two, Plaintiffs contend the difference is immaterial here because a lack of cash flow would impact SunPower's cash position in the future. *Id.* The press release, however, specifically mentioned only "***current* cash position**," and no reasonable investor would interpret "current" to mean "future." Br. at 22-24. The FE allegations and Henry Declaration (Opp. at 22) focus on future ability to obtain more cash and thus are inapposite. Plaintiffs' cited cases (*Arlan's* and *Vallejo*) are not even about the securities laws, and regardless say nothing about how a reasonable investor would interpret "current" or "cash position" in this press release, as to which Plaintiffs offer no factual support whatsoever.

Plaintiffs do not dispute that Statement 10 is forward-looking as they interpret it, that they must plead Defendants actually knew investors would construe the remark to reference future cash flow (rather than current cash position), and that EY's resignation would devastate SunPower's future cash flow. Br. at 24. Plaintiffs respond to none of Defendants' arguments regarding scienter (*see id.* at 24-25), including that investors already knew a lack of audited financials would prevent the Company from obtaining outside financing, and that the TAC concedes the Company was in continued discussions with Sol and no facts suggest Defendants knew as of July 3 that Sol would not commit additional funds, as Sol had repeatedly in the past.

### CONCLUSION

Plaintiffs did not address the last section of the Brief and thus concede it as well. Br. at 25. Having afforded Plaintiffs four opportunities, dismissal should be with prejudice.

---

[9] Plaintiffs try to distinguish Defendants' cases (*Affymax*, *InterMune*, and *Banco Bradesco*) on the grounds they do not mention, or discuss other portions of, *Janus*. But Plaintiffs do not dispute the central premise of those cases: roles and responsibilities alone do not plead control.

Dated: August 4, 2025

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Katherine L. Henderson*
     Katherine L. Henderson

*Attorneys for Defendants Peter Faricy,
Elizabeth Eby, and Thomas Werner*

Defendants' MTD TAC Reply                    -16-                    Case No.: 3:23-cv-05544-RFL